**EXHIBIT A**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 2743582 (E.D.Pa.), 34 Employee Benefits Cas. 1915
**(Cite as: 2004 WL 2743582 (E.D.Pa.))**
<RED FLAG>

Motions, Pleadings and Filings

United States District Court,
E.D. Pennsylvania.
PRESSMAN-GUTMAN CO., INC.,
Employer/Sponsor of the Pressman-Gutman Co., Inc.
Profit Sharing Plan, Plaintiff,
v.
FIRST UNION NATIONAL BANK and Forefront Capital Advisors, LLC, Defendants,
FIRST UNION NATIONAL BANK, Third-Party Plaintiff,
v.
Alvin GUTMAN and James Gutman, Third-Party Defendants.
No. Civ.A. 02-8442.

Nov. 30, 2004.

James P. Golden, Michael E. Sacks, Hamburg & Golden PC, Christopher M. Tretta, Yost and Tretta, Philadelphia, PA, for Plaintiff.

Erin Elizabeth Floyd, Joseph G. Derespino, Derespino & Dougher PC, Laurence A. Mester, Grossman Law Firm PC, Zachary L. Grayson, Alvin P. Gutman, Philadelphia, PA, for Defendants.

*OPINION*

STENGEL, J.

*1 Pressman-Gutman Co., Inc. ("Pressman-Gutman"), plaintiff, brought this ERISA action on behalf of its employee profit-sharing plan, claiming that First Union National Bank ("First Union") and Forefront Capital Advisors, LLC ("Forefront"), defendants, mismanaged its investments. First Union filed a third-party complaint against Alvin and James Gutman ("the Gutmans"), individually and as officers of Pressman-Gutman and its profit-sharing plan. On August 30, 2004, I found that Hamburg and Golden, P.C.'s ("Hamburg and Golden") representation of both the profit-sharing plan and the Gutmans presented a conflict of interest and I disqualified Hamburg and Golden from representing the Gutmans. On September 8, 2004, Forefront and First Union each filed a motion for reconsideration of the August 30, 2004 order, requesting that Hamburg and Golden be completely disqualified from this case. Forefront also filed a separate motion, requesting that an independent party be appointed to replace the Gutmans as a representative of the profit-sharing plan. I will grant all three motions.

I. BACKGROUND

Plaintiff brought this ERISA action on behalf of its profit-sharing plan and all of its participants and beneficiaries against First Union and Forefront to recover losses sustained by the plan. Plaintiff first presents a breach of fiduciary duty claim against First Union, the trustee of the plan, and Forefront, First Union's "sub-advisor." According to plaintiff, First Union and Forefront failed to utilize proper research and analysis in the management of the plan's assets, causing substantial losses. Plaintiff also presents an equitable estoppel claim, claiming reliance on First Union and Forefront's "misrepresentations" that they were skilled, knowledgeable, professional, and conscientious in the management of the plan's assets. Plaintiff alleges that its reliance on First Union and Forefront's misrepresentations resulted in substantial losses.

On April 22, 2003, First Union filed a third-party complaint against Alvin and James Gutman, individually and as officers of Pressman-Gutman and its profit-sharing plan. First Union argues that to the extent its management of the plan was imprudent, the Gutmans breached their fiduciary duties and were negligent by breaching their duties to issue instructions to First Union and Forefront which would not injure, jeopardize, or impair the plan's assets. First Union demands judgment in its favor and against the Gutmans for contribution and/or indemnity in the event that it is found liable to plaintiff.

On August 1, 2003, First Union filed a motion to disqualify Hamburg and Golden from representing both the profit-sharing plan and the Gutmans, alleging that the joint representation presented a conflict of interest. On September 11, 2003, the

Honorable J. Curtis Joyner of the United States District Court for the Eastern District of Pennsylvania denied the motion, indicating that there was insufficient evidence to disqualify counsel at that time. *Pressman-Gutman Co., Inc. v. First Union Nat'l Bank,* No. 02-8442, slip. op. at 2 n.1 (E.D.Pa. Sept. 11, 2003).

*2 On April 6, 2004, the Gutmans filed a motion for summary judgment on the third-party complaint, arguing that First Union is substantially more at fault than they are and thus contribution should not be permitted in this case. The Gutmans also contended that they were not fiduciaries with respect to the investment decisions. On May 13, 2004, Judge Joyner denied the motion, stating:

> Pressman-Gutman Co., Inc. is a named fiduciary of the Plan, who acted at all relevant times by and through Alvin and James Gutman in their capacities as officers and directors. Plf.'s Complaint ¶s 2-3. It is true that the trust and plan documents give the trustees, or an appointed investment manager, sole responsibility for management of the assets. See Document No. 56, Exs. 1, 2. However, to the extent that the Gutmans may have used their positions to cause First Union and/or Forefront to relinquish their independent discretion with respect to management of the assets and exercised actual control over the assets, the Gutmans may be liable as fiduciaries for investment decisions. *See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1459-60 (5th Cir.1986). We find that First Union has established triable issues with respect to the Gutmans['] actual control over plan assets and investment decisions. Genuine issues of material fact still exist on this record, most importantly, identification of the alleged inappropriate stock. In addition, the Gutmans, as agents of the Employer, had the responsibility to appoint and remove the trustee and to periodically review the performance of any fiduciary. To the extent that the Gutmans were aware of, approved, or authorized investment goals or objectives that were imprudent, they may be found to have breached fiduciary duties of the Employer under the plan. We believe that it would be premature for us to decide at this juncture whether one fiduciary is substantially more at fault than the other. We therefore DENY Third Party Defendants' Motion for Summary Judgment as to these claims.

*Pressman-Gutman Co., Inc. v. First Union Nat'l Bank,* No. 02-8442, slip. op. at 2 n. 1 (E.D.Pa. May 13, 2004).

These findings by Judge Joyner, i.e., that there are genuine issues in this case concerning the Gutmans' control over the plan assets and investment decisions, are significant to the disqualification issue. When Judge Joyner first considered the defendants' motion to disqualify, he had not yet considered this case in the summary judgment posture. After the first disqualification motion was decided, the Gutmans' Rule 56 motion was filed and briefed. With the benefit of the Rule 56 papers, Judge Joyner identified substantive issues regarding the actions of the Gutmans in managing the plan. These issues give new and important support to the defendants' disqualification argument.

Forefront then filed a second motion to disqualify Hamburg and Golden from its joint representation of the profit-sharing plan and the Gutmans, indicating that there was sufficient evidence of the Gutmans' liability for this court to find a conflict of interest. On August 30, 2004, I granted Forefront's motion and disqualified Hamburg and Golden from representing the Gutmans as third-party defendants. In granting the motion, I stated:

> *3 This court finds that plaintiff's potential claims against third-party defendants present directly adverse interests. Plaintiff's settlement opportunities may well be adversely affected by joint representation. Plaintiff's avenues of obtaining recovery are adversely affected by Hamburg and Golden's joint representation of plaintiff and third-party defendants because third-party defendants may, in fact, be responsible for the plaintiff plan's losses.
> This court finds it unreasonable for Hamburg and Golden to believe it can adequately represent both plaintiff and third-party defendants. Plaintiff is an employee profit-sharing plan, comprised of a group of employees and former employees. This group has in excess of a hundred members and includes Alvin and James Gutman, the principals of the company. There is no question that the Gutmans worked with defendants on the plan's investments. Defendant First Union has introduced the claim that the Gutmans' investment choices, not defendants' investment choices, are responsible for the plan's alleged losses. The court's review of the record reveals that plaintiff has not consented to Hamburg and Golden's joint representation of plaintiff and third-party defendants. Therefore, Hamburg and Golden is disqualified from representing third-party

defendants in this action.
*Pressman-Gutman Co., Inc. v. First Union Nat'l Bank,* No. 02-8442, slip. op. at 4 (E.D.Pa. Aug. 30, 2004).

On September 8, 2004, Forefront and First Union each filed a motion for reconsideration of the August 30, 2004 order, requesting that Hamburg and Golden be completely disqualified from this action. They contend that the Rules of Professional Conduct required Hamburg and Golden's complete disqualification because the firm's duty to protect confidential information obtained during the course of its representation of the Gutmans would be at odds with the firm's duty to disclose such information for the benefit of the plan. Forefront also filed a motion for the appointment of an independent party to act on behalf of the profit-sharing plan because the Gutmans can not adequately represent the plan.

II. DISCUSSION

A. Defendants' Motions for Reconsideration

A court's power to disqualify an attorney is based on its inherent authority to supervise the professional conduct of attorneys appearing before it. *U.S. v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980) (citations omitted). In considering a motion to disqualify, the court should determine if disqualification "is an appropriate means of enforcing the applicable disciplinary rule." *Id.* The court "should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Id.* (citations omitted). The party seeking to disqualify opposing counsel must clearly demonstrate that continued representation would be impermissible, *Cohen v. Oasin,* 844 F.Supp. 1065, 1067 (E.D.Pa.1994) (citation omitted), but doubts as to the existence of a conflict of interest should be resolved in favor of disqualification. *See Int'l Bus. Mach. Corp. v. Levin,* 579 F.2d 271, 283 (3d Cir.1978) (citations omitted).

*4 The Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania serve as the standards for professional conduct that attorneys appearing before this court must comply with. *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.,* 808 F.Supp. 1200, 1203 (E.D.Pa.1992); E.D.Pa.R. 83.6(IV)(B). Rule 1.7 of the Pennsylvania Rules of Professional Conduct, entitled Conflict of Interest: General Rule, states:
   (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
   (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
   (2) each client consents after consultation.
   (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
   (1) the lawyer reasonably believes the representation will not be adversely affected; and
   (2) the client consents after full disclosure and consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.
   Pa.R.P.C. 1.7. Paragraph (a) precludes representation of opposing parties in litigation. *Id.,* Comment. Simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by paragraph (b). *Id.*

Loyalty is an essential part of a lawyer's relationship with a client. *Id.* If an impermissible conflict of interest arises after representation has been undertaken, "the lawyer should withdraw from the representation." *Id.* (citing Pa.R.P.C. 1.16).
   Loyalty to a client is impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client ... A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.
   *Id.* "An impermissible conflict may exist by reason of substantial discrepancy in the parties' *testimony,* incompatibility in positions in relation to an opposing party or the fact that there are substantially different

possibilities of settlement of the claims or liabilities in question." *Id.*

A client may consent to representation regardless of a conflict. *Id.* However, when a disinterested lawyer would decide that the client should not agree to the representation, the lawyer involved cannot properly provide representation on the basis of the client's consent. *Id.* When there is more than one client involved, the question of a conflict must be decided as to each client. *Id.*

**\*5** In this case, Judge Joyner previously found that the Gutmans may be liable as fiduciaries for investment decisions to the extent that they may have used their positions to cause First Union and/or Forefront to relinquish their independent discretion with respect to management of the assets and exercised actual control over the assets. *Pressman-Gutman Co., Inc. v. First Union Nat'l Bank,* No. 02-8442, slip. op. at 2 n. 1 (E.D.Pa. May 13, 2004). Judge Joyner found that there are triable issues regarding the Gutmans' actual control over plan assets and investment decisions. *Id.* According to Judge Joyner, genuine issues of material fact exist in this case, such as identification of the alleged inappropriate stock. *Id.* Moreover, the Gutmans, as agents of the plan, had the responsibility to appoint and remove the trustee and to periodically review the performance of any fiduciary. *Id.* To the extent that the Gutmans were aware of, approved, or authorized investment goals or objectives that were imprudent, they may be found to have breached fiduciary duties to the plan. *Id.*

Based on Judge Joyner's findings and my independent review of the facts and the arguments advanced by counsel, I concluded on August 30, 2004 that Hamburg and Golden's joint representation of plaintiff and third-party defendants presented a conflict of interest. *Pressman-Gutman Co., Inc. v. First Union Nat'l Bank,* No. 02-8442, slip. op. at 4 (E.D.Pa. Aug. 30, 2004). Specifically, I concluded that the profit-sharing plan's avenues of obtaining recovery were adversely affected by Hamburg and Golden's joint representation of the plan and the Gutmans because the Gutmans may, in fact, be responsible for the plan's losses. *Id.* I found that it was unreasonable for Hamburg and Golden to believe that it could adequately represent both the plan and the Gutmans. *Id.* Furthermore, I found that the plan had not consented to Hamburg and Golden's joint representation of the plan and the Gutmans. *Id.* After further consideration of this issue, I conclude that the decision to disqualify counsel for third-party defendants was correct, but did not go far enough. I had hoped to achieve some efficiency by removing the conflict in a technical sense and allowing plaintiff to proceed with counsel of its choice, who are also very familiar with the case. Yet after an opportunity to review the record again, it appears to me that plaintiff's counsel may well be counsel of the Gutmans' choice, not necessarily of the plan's choice. It further appears to me that removing the conflict of interest in a technical sense, by removing Hamburg and Golden firm from one half of the representation, i.e., third-party defendants, the conflict still remains in a practical sense. It is clear that the Gutmans hired plaintiff's counsel and that plaintiff's counsel are taking their direction from the Gutmans. In fact there is no indication from plaintiff's counsel that they are taking direction or even communicating with the remaining hundred or so members of the plan, the named plaintiff in the case.

**\*6** Upon further review of the record as it existed on August 30, 2004, I conclude that Hamburg and Golden must also be disqualified from representing the profit-sharing plan as plaintiff. Because of Hamburg and Golden's duty of loyalty to the Gutmans, who it represented on August 30, 2004, Hamburg and Golden could not recommend to the plan that it act against the Gutmans, as well as, or instead of, First Union and Forefront. Hamburg and Golden could only recommend to the plan that it proceed only against First Union and Forefront. Based on Hamburg and Golden's duty of loyalty to the Gutmans, who may well be liable for the plan's losses, I conclude that it was unreasonable for Hamburg and Golden to believe that it could adequately represent the plan. Moreover, since only the Gutmans represented the plan in this action, I find that any consent given by the plan to Hamburg and Golden for Hamburg and Golden's continued representation of the plan was invalid.

Hamburg and Golden argues that the purpose of Forefront and First Union's motions for reconsideration is to delay this case from proceeding to trial and that the court should deny the motion on that basis alone. The record, however, reveals that First Union requested that Hamburg and Golden consider disqualifying itself, without this court's involvement, in October 2003, when a conflict of interest became apparent. [FN1] The *record also* reveals that Forefront twice requested that Hamburg and Golden consider disqualifying itself, without the

court's involvement, in February 2004, after the conflict further developed. [FN2] Since the present motions were only filed several months after Forefront and First Union requested that Hamburg and Golden disqualify itself, without the court's involvement, I find that these motions were not filed to delay this case from proceeding to trial.

> FN1. First Union's Memorandum of Law in Support of the Motion for Reconsideration, 9/8/04, Exhibit D.

> FN2. Forefront's Memorandum of Law in Support of the Renewed Motion for Disqualification, 3/4/04, Exhibits 14-15.

Hamburg and Golden also argues that the present motions are actually requests for a preliminary injunction, and defendants cannot carry the burden of proof for a preliminary injunction. A preliminary injunction is proper when a party will suffer immediate irreparable injury "which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle County,* 40 F.3d 645, 653 (3d Cir.1994) (quotation omitted). A party seeking a preliminary injunction must demonstrate: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *KOS Pharmaceuticals, Inc. v. Andrx Corp.,* 369 F.3d 700, 708 (3d Cir.2004) (citation omitted).

In this case, Forefront and First Union do not argue that they will suffer immediate irreparable harm if Hamburg and Golden remains in this case. Instead, defendants contend that the Gutmans may be liable for the profit-sharing plan's losses, and Hamburg and Golden's duty of loyalty to the Gutmans precludes it from recommending to the plan that it seek recovery from the Gutmans. This is not a request for a preliminary injunction. This is a motion for disqualification based upon the Rules of Professional Conduct.

**\*7** Citing *Hamilton v. Merrill Lynch,* 645 F.Supp. 60 (E.D.Pa.1986), and *Altschul v. Paine Webber, Inc.,* 488 F.Supp. 858 (S.D.N.Y.1980), Hamburg and Golden also notes that courts have previously allowed counsel to continue representation of multiple clients in cases where the joint *representation* presented an alleged conflict of interest. In *Hamilton,* plaintiffs, represented by a single attorney, claimed that defendants engaged in fraudulent activities in connection with the sale of securities in drilling operations. One of the defendants later filed a counterclaim against one of the plaintiffs, alleging that the plaintiff was responsible for the injuries to the other plaintiffs. Before discovery was complete, defendants moved to disqualify plaintiffs' counsel because of an alleged conflict of interest in the joint representation. The court, however, denied the motion, noting that plaintiffs were family members and that each plaintiff "consented to joint representation after full disclosure of the possible effect of such representation, and after obtaining the advice of independent counsel." *Hamilton,* 645 F.Supp. at 62.

In *Altschul,* plaintiffs filed a lawsuit against defendants, stating that defendants wrongfully depleted their securities account. One of the defendants later brought a third-party claim against plaintiff's son, who was employed by the defendant as a registered representative to service his parents' account. The defendant claimed that it was entitled to indemnification from plaintiff's son in the even that it was held liable to plaintiffs. Before discovery was complete, the defendant moved to disqualify counsel, who represented plaintiffs as well as their son, because of an alleged conflict of interest. However, the court denied the motion, noting that counsel's clients were family members and that they all consented to counsel's joint representation. *Altschul,* 488 F.Supp. at 859, 861.

I find that this case is distinguishable from *Hamilton* and *Altschul.* Unlike *Hamilton* and *Altschul,* the present motions regarding counsel's disqualification were filed after extensive discovery established that there was a conflict of interest. [FN3] Moreover, the record in this case does not reveal that the Gutmans and the plan participants are all members of the same family. There certainly is no record of disclosure and waiver of a conflict in this case. Despite all the informal and formal requests to have plaintiff's counsel removed, it is noteworthy to this court that plaintiff's counsel has never once produced any evidence that the members of the plan have any idea about a possible conflict, let alone a full disclosure and waiver which might, under certain circumstances, remove the conflict. Thus, this court is not confronted by a unique situation, such as the one presented in *Hamilton* and *Altschul,* which might persuade it to allow such joint representation. Finally, since only the Gutmans represent the plan in

this action, any consent given by the plan to Hamburg and Golden for Hamburg and Golden's continued representation of the plan was invalid. Accordingly, since the circumstances presented in *Hamilton* and *Altschul* are not present here, I will not allow Hamburg and Golden to continue representing the plan.

> FN3. Discovery in this case was ordered to be complete by March 23, 2004. *Pressman-Gutman Co., Inc. v. First Union Nat'l Bank,* No. 02-8442 (E.D.Pa. Nov. 21, 2003).

**\*8** Based on the foregoing, I find that Hamburg and Golden must be disqualified from representing the plan and that new counsel must be appointed to replace Hamburg and Golden.

B. Forefront's Motion for the Appointment of an Independent Party

As administrators of the profit-sharing plan, the Gutmans' primary responsibility is to administer the plan for the exclusive benefit of the participants and their beneficiaries. [FN4] Furthermore, as fiduciaries of the plan, [FN5] the Gutmans must function

> FN4. The Gutmans' Memorandum of Law in Support of the Motion for Summary Judgment, 4/6/04, Exhibit 1.
>
> FN5. *Id.*

solely in the interest of the beneficiaries of the plan and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."
*Ream v. Frey,* 107 F.3d 147, 153 (3d Cir.1997) (citation omitted); 29 U.S.C. § 1104(a)(1)(B).

This court finds that the Gutmans may well not be able to fulfill their duties as administrators and fiduciaries of the plan because of their potential liability. The Gutmans' duty to the plan includes seeking full compensation for the plan's losses. Because the Gutmans may be liable to the plan, the duty to the plan may include presenting claims against the Gutmans. However, because the Gutmans have an interest in protecting themselves from liability, the Gutmans are not likely to act against themselves for the benefit of the plan, and the plan's avenues of obtaining recovery may be adversely affected. Accordingly, I will appoint a guardian ad litem who will replace the Gutmans and serve as administrator of the plan for the limited purpose of this lawsuit. [FN6] The guardian ad litem will, in turn, appoint new counsel for the plan.

> FN6. I note that courts have the power to order the appointment of a representative for a party whose interests may not be adequately represented. *See* F.R.C.P. 17(c)(stating that "[t]he court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action").

III. CONCLUSION

Based on the foregoing, I grant First Union and Forefront's motions for reconsideration and find that Hamburg and Golden must be completely disqualified from this case. I also grant Forefront's motion for the appointment of an independent party. An order granting the motions for reconsideration follows. The appointment of a guardian ad litem will be made in a separate order.

*ORDER*

AND NOW, this 30th day of November, 2004, upon consideration of First Union National Bank and Forefront Capital Advisors, LLC's motions for reconsideration or clarification of the court's August 30, 2004 order, and replies thereto, it is hereby ORDERED that said motions are GRANTED and that this court's order of August 30, 2004 is VACATED. Hamburg and Golden, P.C. is completely disqualified from this case. A guardian ad litem, who will be appointed in a separate order, will have thirty (30) days to appoint new counsel. New counsel shall be paid by the Pressman-Gutman Co., Inc. Profit-Sharing Plan's trust fund. All pending motions shall be STAYED until thirty (30) days after the filing of the order appointing the guardian ad litem. No further motions, briefs, or memoranda shall be filed during that period.

2004 WL 2743582 (E.D.Pa.), 34 Employee Benefits Cas. 1915

Motions, Pleadings and Filings (Back to top)

. 2:02CV08442 (Docket)

(Nov. 13, 2002)

END OF DOCUMENT