**EXHIBIT B**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 870813 (E.D.Pa.)
**(Cite as: 2004 WL 870813 (E.D.Pa.))**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
In the Matter of 22 ACQUISITION CORP., Debtor
No. Civ.A.03-3059, Civ.A.02-907.

Filed May 13, 2003.
March 23, 2004.

represented by Robert J. Lenahan, Robert N. Levin, Adelman Lavine Gold & Levin, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, Thomas W. Coons, Baltimore, MD, Lead Attorney, Attorney to be Noticed, for 22 Acquisition Corp., Debtor-in-Possess.

represented by George M. Conway, Office of the U.S. Trustee, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, for Roberta A. Deangelis, Trustee.

Memorandum and Order

YOHN, J.

*1 Appellant, Roberta A. DeAngelis, Acting United States Trustee, Region Three ("Trustee"), appeals from a final order of the bankruptcy court, wherein the court approved the decision by 22 Acquisition, the debtor, to employ Total Healthcare Consultants of Texas, LLC ("Total Healthcare") as its consultant on a permanent basis. [FN1] On appeal, appellant argues that the bankruptcy court erred by failing to correctly apply the applicable legal standard, which constituted an abuse of discretion. Appellant Br. at 1.

> FN1. Prior to this appeal, on March 8, 2002, Donald F. Walton, Acting United States Trustee, Region Three, filed an appeal before this court contesting the bankruptcy court's decision to allow Total Healthcare to serve as an interim consultant until a final decision on Total Healthcare's eligibility as a permanent consultant could be reached. Civ. No. 02-907. This memorandum and order resolve the issues of both appeals.

The retention of Total Healthcare is supported by the debtor, the primary secured creditor, the unsecured creditor's committee and the independent examiner, and continues an existing pre-petition relationship.

I conclude that the bankruptcy court applied the correct legal standard, that its factual findings were not clearly erroneous, and that it did not abuse its discretion when it approved the application of the debtor to employ Total Healthcare as its consultant. As a result, I will affirm the decision of the bankruptcy court.

Procedural Background

Since April 1, 2001, 22 Acquisition Corporation (the "debtor") has employed Total Healthcare Consultants of Texas, LLC. d/b/a ZA Texas ("Total Healthcare") to provide management-consulting services. Appellant Br. at 1. The debtor filed for Chapter II bankruptcy on November 28, 2001. *Id.* [FN2] On December 4, 2001, the debtor sought authority from the bankruptcy court to employ Total Healthcare as its management consultant. *Id.* [FN3]

> FN2. Debtor filed for bankruptcy after the Center of Medicare and Medicaid Services ("CMS"), an agency of the United States Department of Health and Human Services ("HHS") and one of the debtor's primary sources of revenue, notified the debtor that it was initiating proceedings to recoup $3,000,000 in alleged overpayments by CMS to the debtor.

> FN3. The Office of the United States Trustee filed its objection on December 13, 2001. CMS and the Creditors Committee also filed objections, but these were withdrawn.

After conducting an evidentiary hearing on the issue on January 3, 2002, the bankruptcy court approved

22 Acquisition's retention of Total Healthcare as a consultant through the end of March 2002, and scheduled a hearing for March 26 of that year to consider the debtor's permanent retention of Total Healthcare. After a series of extension orders and a hearing on June 11, 2002, the bankruptcy court approved the debtor's permanent retention of Total Healthcare on September 19, 2002. [FN4]

> FN4. The court relied in part on the May 31, 2002 report conducted by a court-appointed examiner who concluded that Total Healthcare was not an insider and was disinterested and recommended that Total Healthcare be fully retained.

In light of the Third Circuit's decision *In re Pillowtex,* the bankruptcy court conducted another hearing *sua sponte* on March 27, 2003, on the issue as to whether there had been preferential payment to Total Healthcare that would disqualify it from employment as the debtor's consultant. The debtor filed a motion to approve a settlement on the preferential payment issue. [FN5] Total Healthcare offered to give back $30,000 to satisfy any potential preference claim. The bankruptcy court issued a final order on April 10, 2003, approving the debtor's retention of Total Healthcare, subject to the return payment of $30,000 to the debtor as required by the settlement stipulation between Total Healthcare and the debtor.

> FN5. Within 90 days of filing for bankruptcy, debtor paid Total Healthcare $277,354.10 for services. Debtor still owed Total Healthcare $223,205 for services rendered before debtor petitioned for bankruptcy ("pre-petition services"); however, Total Healthcare agreed to waive its claim to this sum upon its appointment as debtor's consultant. Debtor agreed to waive any potential preference claims it may have against Total Healthcare pursuant to § 547 of the Bankruptcy Code. Appellant Br. at 5. The resolution of this issue has not been appealed.

Factual Background

The debtor is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania. Appellant Br. at 2. Debtor operates seven nursing home facilities in Texas. *Id.* [FN6]

> FN6. The debtor continues in possession of its assets as a debtor-in-possession pursuant to § 1107(a) and § 1108 of the Bankruptcy Code. Appellant Br. at 2.

The debtor's sole shareholder is Feld, LCC. Feld, in turn, is jointly owned by Steve Fishman and Frederick Ehmann, each holds a 50% interest. *Id.* at 4. Fishman and Ehmann are also among the shareholders of Philtex Holding, Inc. and Silver Serenity, Inc., two Pennsylvania corporations that lease to debtor six of its seven nursing home facilities. *Id.* [FN7] The shareholders of Philtex and Silver Serenity are the same: Steven Fishman (20%), Frederick Ehmann (50%), Gregory Lentz (10%), Alan Morrison (10%), and Janet Himmelerich (10%) Debtor pays rent to Philtex and Silver Serenity based on the payments due under the purchase money mortgage financing loan due to Heller Healthcare Finance Company, Inc. ("Heller"), the landlords' lender. *Id.* at 5. [FN8] Heller is the primary secured creditor of Philtex and Silver Serenity and holds a first mortgage on the facilities leased to the debtor. *Id.* Thus, rents paid by the debtor for use of the facilities pass through Philtex and Silver Serenity and go toward servicing the landlords' mortgage loans; these loans are cross-collateralized with Heller's loans to the debtor. *Id.* at 5-6. [FN9] Heller is the debtor's primary creditor. [FN10] Heller holds a first lien against all of the debtor's assets as security for its debt.

> FN7. The seventh nursing home is subleased by the debtor from Blue Bonnet Healthcare, Inc. Blue Bonnet Healthcare is not involved in these proceedings; no interrelationships are alleged between this landlord and the parties in interest. Appellant Br. at 4-5.

> FN8. When it acquired its facilities, debtor assumed loans that were held by Heller Healthcare Finance, Inc., formerly HCFP, Inc. The loans were brokered by Steven Fishman.

> FN9. Appellant avers that "the mortgage debt and the 22 Acquisition debt are cross-defaulted, cross-collateralized [sic]. Philtex has a guaranty ... of the 22 Acquisition debt."

> FN10. Debtor owes Heller approximately $17,000,000.

**\*2** Since Total Healthcare assumed basically all day-to-day operations for all of debtor's facilities, Gregory Lentz of Total Healthcare has been principally responsible for management of the debtor's daily operations. *Id.* at 5. Total Healthcare is owned by Z.A. Consulting, LLC (70%), Don McKay (15%), and Roy Freeborn (15%). *Id.* Z.A. Consulting is owned by Steve Fishman (40%), Gregory Lentz (20%), Alan Morrison (20%), and Janet Himmelerich (20%). *Id.*

Heller is a substantial, but subordinated secured creditor of Z.A. Consulting. *Id.* at 5-6. Up until 2000, Heller Financial owned 49% of Z.A. Consulting. Heller also guaranteed the bank loan used by Fishman *et al.* to purchase assets of Z.A. Consulting. *Id.* at 6. Heller is also a lender and equity participant to ZAC Investments, which is a subsidiary and affiliate of Z.A. Consulting. *Id.* at 6-7. Heller is a lender to ZAC Properties as well and holds an equity interest in that subsidiary. Heller is also the financier of 54 nursing home operations in Florida, which are owned in part by Steve Fishman. *Id.* at 7.

Standard of Review

The district court, sitting as an appellate tribunal, applies a clearly erroneous standard to review the bankruptcy court's factual findings and a *de novo* standard to review its conclusions of law. *In re Siciliano,* 13 F.3d 748, 750 (3d Cir.1994). A finding of fact is clearly erroneous if a reviewing court has a "definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573 (1985). The factual determination of the bankruptcy court will be accepted unless that determination is either "completely devoid of minimum evidentiary support" or "bears no rational relationship to the supportive evidentiary data." *Hoots v. Pennsylvania,* 703 F.2d 722, 725 (3d. Cir.1983). Mixed questions of fact and law require a mixed standard of review, under which the court reviews findings of historical or narrative fact for clear error but exercises plenary review over the bankruptcy court's "choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 642 (3d Cir.1991). When reviewing a decision that falls within the bankruptcy court's discretionary authority, the district court may only determine whether or not the lower court abused its discretion. *See In re Top Grade Sausage,* 227 F.3d 123, 125 (3d Cir.2000). "An abuse of discretion exists where the [lower] court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Int'l Union, UAW v. Mack Trucks, Inc.,* 820 F.2d 91, 95 (3d Cir.1987).

DISCUSSION

Under the Bankruptcy Code, a debtor cannot employ professional persons who "hold or represent an interest adverse to the estate." 11 U.S.C. § 327(a). Professional persons retained by the debtor must also be "disinterested persons." *Id.*

**\*3** Appellant argues that the bankruptcy court abused its discretion when it approved of the debtor's application to employ *Total* Healthcare as its consultant. Appellant Br. at 1. Appellant argues that Total Healthcare cannot be retained as the debtor's consultant because (1) Total Healthcare holds a material adverse interest to the estate; (2) Total Healthcare is not a "disinterested person" under 11 U.S.C. § 101(14); and (3) 22 Acquisition's failure of complete disclosure requires denial of retention. The trustee maintains that the inter-relationships between and among the debtor, Total Healthcare, Heller, the debtor's landlords and the individuals having ownership interests in these entities create a conflict of interest that disqualifies Total Healthcare from serving as a consultant to the debtor.

(1) Material Adverse Interest

Appellant argues that "the intertwined financial relationship and equity interest of the consultant [i.e. Total Healthcare] with the secured lender of the debtor [i.e. Heller] constitutes a material 'adverse interest' that disqualifies the consultant from serving." Appellant Br. at 20. As the bankruptcy court observed, the parties differ over the whether the inter-relationships presented here constitute a conflict of interest.

Section 327 of the Bankruptcy Code governs the debtor's employment of professional persons:
> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to

represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). The phrase "interest adverse to the estate," or term "adverse interest" is not defined in the Bankruptcy Code, but courts have interpreted it to mean "to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant," or "to possess a predisposition under circumstances that render such a bias against the estate." *In re Gelsinger,* Civ. No. 99-3264, 2000 U.S. Dist. LEXIS 1026 at * 4-5 (E.D.Pa. Feb. 7, 2000). The Third Circuit has found that where professionals have an actual conflict, Section 327(a) mandates disqualification. *In re Marvel Entertainment Group, Inc.,* 140 F.3d 463, 476 (3d Cir.1998). Where there is only a potential for conflict, courts have broad discretion: "Section 327(a) ... gives the district court wide discretion in deciding whether to approve the appointment of a [professional] with a potential conflict." *Id.* at 477; *BH & P, Inc.,* 949 F.2d 1300, 1316 (3d Cir.1991) (affirming the bankruptcy court's articulation of the standard governing conflict of interest). Courts generally disapprove employment of a professional with a potential conflict; yet, there are exceptions to this general rule. *Id.* Employment of a professional is allowed in cases "where every competent professional in a particular field is already employed by a creditor or a party in interest" or "where the possibility that the potential conflict will become actual is remote, and the reasons for employing the professional in question are particularly compelling." *Id.* The mere appearance of conflict is not sufficient grounds for disqualification. *Id.* at 1313. ("Not every conceivable conflict must result in [disqualification].") Furthermore, the Third Circuit has held that the bankruptcy court is better suited to decide whether disqualification is appropriate. *Id.* at 1317 ("[D]enomination of a conflict as 'potential' or 'actual' and the decision concerning whether to disqualify a professional based upon that determination in situations not yet rising to the level of an actual conflict are matters committed to the bankruptcy court's sound exercise of discretion"). Thus the bankruptcy court applied the correct legal standard.

**\*4** The trustee presented no evidence that the interrelationships involved presented an actual conflict of interest. While it is clear that Heller and Fishman have relationships with both entities-the debtor and its desired consultant-the bankruptcy court found that neither relationship created an actual conflict. Bankruptcy Opinion at 13. The bankruptcy court found no evidence of untoward conduct and the trustee presented none. The trustee has neither alleged nor presented any evidence that Total Healthcare has performed its services for the debtor in a less than satisfactory fashion, or that Total Healthcare's compensation rates are unreasonable, or that Total Healthcare acted in any other manner that was contrary to the interests of the estate. Indeed, the bankruptcy court noted that the various parties in interest, including the appellant and Total Healthcare, have economic interests which are "more or less aligned ." *Id.* The bankruptcy findings in this regard are neither clear error nor an abuse of discretion.

Mapping out the players and their relationships, the bankruptcy court found a potential for conflict. *Id.* at 13. Heller's relationship to Total Healthcare and the debtor, though attenuated, certainly creates the potential for future conflict. Heller, the debtor's primary creditor, is a lender to and owns equity interest in ZAC Investments, a Z.A. Consulting subsidiary. Z.A. Consulting in turn owns 70% of Total Healthcare. Heller is also the debtor's primary and secured lender. Fishman owns a 50% interest in Feld LLC, the debtor's parent corporation. Yet, Fishman is only a minority shareholder on the consulting side of the diagram; he owns 40% interest in Z.A. Consulting, which owns 70% interest in Total Healthcare.

Because there is a potential for conflict, the bankruptcy court had discretion to decide whether employment was proper. Here, the bankruptcy court found that the potential for conflict was attenuated or remote and that the debtor's reasons for retaining Total Healthcare were compelling. The bankruptcy court found that disqualification of Total Healthcare would debilitate the debtor's business to the extent of forcing it to close its nursing homes, thereby contravening the very purpose of the bankruptcy procedure. *Id.* at 11. If this occurs, the employees would be laid off, the patients will be transferred, the debtor will be liquidated and all assets will be paid to the secured creditor, Heller, and nothing will be available for distribution to the unsecured creditors. All parties would be hurt, including Heller, whose collateral would be worth less as empty buildings rather than as an ongoing business. Moreover, the retention of Total Healthcare continues an existing pre-petition relationship and is supported by not only the debtor, but also the

primary secured creditor, the unsecured creditor's committee and the independent court-appointed examiner. The trustee pointed to no evidence that a potential conflict would shortly or even probably ripen into an actual conflict. The factual findings of the bankruptcy court were not clearly erroneous and it did not abuse its discretion in not disqualifying Total Healthcare because of a potential conflict of interest.

(2) Disinterested Person

**\*5** Appellant argues that Total Healthcare cannot serve as debtor's consultant because it is not a "disinterested person." Under the Bankruptcy Code, a professional is disinterested if the professional "does not have an interest materially adverse to the interest of the estate or any class of creditors or equity holders by any reason of any direct or indirect relationship to or connection with or interest in the debtor or for any other reason." 11 U.S.C.A. § 101(14)(E). [FN11] Appellant argues that Total Healthcare is an insider and therefore cannot be considered a disinterested person.

> FN11. (14) "disinterested person" means person that-
> (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not an investment banker for any outstanding security of the debtor;
> (C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;
> (D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and
> (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason. 11 U.S.C.A. 101(14).

a) *Whether Total Healthcare is an "affiliate" as defined by Section 101(2) of the Bankruptcy Code*

The trustee argues that Total Healthcare is an insider because of its status as an "affiliate." The trustee maintains that Total Healthcare is not a disinterested person as required under § 327(a) because it is an "insider" as defined in 11 U.S.C. § 101(31). Among other things, an insider is any "affiliate, or insider of an affiliate as if such affiliate were the debtor." § 101(31)(E). An affiliate is defined as a:

> corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities-
> (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
> (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote.
> § 101(2)(B)

A debtor is the affiliate of another corporation when control of both is in the same person. *See In re Petroleum Tank Lines, Inc.,* 10 B.R. 286, 287 (Bankr.W.D.N.Y.1981).

The trustee argues that Total Healthcare is an affiliate because Fishman owns shares in Z.A. Consulting and a 50% interest in the debtor corporation. Appellant Br. at 10. Its argument is that as an affiliate and insider of the debtor, Total Healthcare cannot be appointed as a consultant to the debtor. *Id.* [FN12] The trustee points to the fact that Fishman has a 40% interest in Z.A. Consulting, and that Z.A. Consulting in turn owns 70% of Total Healthcare. *Id.* Fishman also owns 50% interest in debtor's parent corporation, Feld, which owns 100% stock of the debtor. *Id.*

> FN12. Section 101(2) of the bankruptcy code defines an affiliate as a corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with the power to vote, 20 percent or more of the outstanding voting securities of the debtor.

The bankruptcy court disagreed. It found that Fishman was a common minority shareholder in the parent corporations Feld and Z.A. Consulting and therefore the evidence does not establish that Fishman alone controls either the debtor or Total Healthcare. The bankruptcy court found that "[O]n the contrary, the testimony tended to establish that Fishman, if anything, is more or less a passive stockholder of both Feld and ZA Consulting, with day to day business operations of the Debtor being run for the Debtor by Total Healthcare in the person of Gregory Lentz, subject to review and approval, albeit for the most part perfunctory, of the Debtor's president, Robert W. Scott." Bankruptcy Opinion at 9. Moreover, it noted that the examiner reached a similar conclusion: "the fact that the Debtor's 100% parent corporation Feld and Total Healthcare's 70% parent company (ZA Consulting, LLC) share a common minority shareholder, Steven Fishman (who owns 50% of Feld and 40% of ZA Consulting) does not, in the Examiner's opinion, make the subsidiarys (the Debtor and Total Healthcare) affiliates of each other and therefore insiders with respect to each other within the meaning of § 101(31)(E) of the Bankruptcy Code." *Id.* at 10.

**\*6** These findings of fact were not clearly erroneous, and the bankruptcy court applied the correct legal standard. Fishman's ownership of stock in Z.A. Consulting does not make Total Healthcare the debtor's affiliate. An affiliate is an entity that has a close relationship to the debtor. "The term is broad enough to encompass a corporation that is a wholly owned subsidiary of the debtor, an entity that owns 20 percent of the debtor's common stock and controls the debtor, and an entity that has the same sole shareholder as the debtor." *Collier on Bankruptcy.* Total Healthcare is not a wholly owned subsidiary of the debtor, nor does it own 20 percent of the debtor's stock or control the debtor. The reverse is also true. The debtor does not own 20% of Total Healthcare and does not control Total Healthcare.

Furthermore, even though Total Healthcare and the debtor indirectly share some of the same shareholders, Total Healthcare does not have the same *sole* shareholder as the debtor. Courts have found that a corporation is an affiliate of another corporation "where *one* person controls both the debtor and another corporation." *In re Holly Hill Medical Ctr., Inc. v. Crandon Enterprises, Inc.,* 53 B.R. 412, 413 (emphasis added); *In re Petroleum Tank Lines, Inc.,* 10 B.R. at 287 (a corporation is the affiliate of another corporation when the same person controls both corporations); *see also Collier on Bankruptcy,* § 101(2). Here, Fishman is not in control of both corporations. Control "can only be attained by way of equity ownership, either direct or indirect, (i.e.tiered), and not by mere virtue of an official position." *In re Elephant Bar Restaurant, Inc.,* 196 B.R. 747 (W.D.Pa.1996). Furthermore, "[i]n a case of multiple tiered ownership structure, more than 50 percent ownership must exist with respect to each tier of the structure in order to attribute equity ownership and control." *Collier on Bankruptcy,* 15th edition (citing *In re Elephant Bar,* 196 B.R. at 749). Fishman, who owns only a 40% interest in Z.A. Consulting, cannot be in control of Total Healthcare because his interest at this tier is less than 50%. Thus, Total Healthcare is not an affiliate of the debtor by way of Fishman's involvement in both corporations and the bankruptcy court did not err.

b) *Whether Total Healthcare was the managing agent of the debtor*

The next argument that the trustee raises on appeal is that Total Healthcare was the managing agent of the debtor and as such cannot be appointed as the debtor's consultant. Appellant Br. at 11. A managing agent is an insider under the Bankruptcy Code. 11 U.S.C. § 101(31)(F). The trustee points to Total Healthcare's management of the debtor's day-to-day operations prior to its bankruptcy filing and adds that Don McKay and Christi Canon controlled its funds and even signed checks for the debtor. *Id.*

Appellant has waived its opportunity to raise this argument. The general rule that this court does not hear issues for the first time on appeal is well established. *Frank v. Colt Industries, Inc.,* 910 F.2d 90, 100 (3d Cir.1990)). Whether Total Healthcare is a managing agent of the debtor is at least in part a factual question. The trustee's new argument would raise issues of first impression concerning the definition of a managing agent under the Bankruptcy Code, as well as questions of fact. [FN13] Appellant has waived the argument because it failed to present it in the proceedings prior to this appeal. *Id.* "This general rule applies with added force where the timely raising of the issue would have permitted the parties to develop a factual record." *In re American Biomaterials Corp.,* 954 F.2d 919 at 927-28 (3d Cir.1992).

FN13. The Bankruptcy Code does not

define managing agent and the bankruptcy courts have only indirectly defined this term as it appears in other contexts. It seems that managing agent means having the authority to make decisions. *In re Rick Pierce,* 237 B.R. 748 (Bankr.E.D.Cal.1999). In the context of interpreting the Federal Rules of Civil Procedure, courts have found that an "employee is a 'managing agent' only if he acts with supervisory authority, being invested with general powers to exercise his discretion and judgment in dealing with corporate matters, and his interests are identified with those of corporation." *Heater v. Chesapeake & O. Ry. Co.,* 497 F.2d 1243 (C.A.Ill.1974). A "managing agent" is someone "invested with powers of discretion" and who exercises independent judgment, "rather than being under direct superior control as to extent of his duty and manner in which he executes it." *Grammenos v. Lemos,* 457 F.2d 1067 (2d Cir.1972); *Brandon v. Art Centre Hospital (Osteopathic),* 366 F.2d 369 (6th Cir.1966) (a managing agent is "any person who acts with superior authority and is to be vested with general powers to exercise his judgment and discretion dealing with his principal's affairs"). Black's Law Dictionary defines a managing agent as "a person with general power involving the exercise of judgment and discretion, as opposed to an ordinary agent who acts under the direction and control of the principal." BLACK'S LAW DICTIONARY, 7th edition (1999).

c) *Whether Total Healthcare is otherwise an insider*

**\*7** Next appellant argues that even if Total Healthcare is not an affiliate, it is an insider because the definition of insider is not exclusive. Appellant Br. at 11. Appellant argues that insider status is not simply based upon the Code's *"per se* classifications" but may also be based on the amount of influence a person has over the affairs of the debtor corporation. *Id.* at 12. (citing *Friedman v. Sheila Plotsky Brokers, Inc.,* 126 B.R. 63, 70 (Bankr.9th Cir.1991)). Even if that person has no actual control, one who exercises significant influence may be an insider. *Id.* at 13 (citing *In re Allegheny Int'l Ins.,* 118 B.R. 282, 298 (Bankr.W.D.Pa.1990)). The trustee notes that the legislative history states that Congress intended "insider" to mean "one who has a sufficiently close relationship with the debtors that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." Appellant argues that Lentz and Fishman are insiders. *Id.* Appellant repeats the facts as both parties have stated them, citing in particular Lentz's role as manager of Total Healthcare, and then concludes that "these relationships compel the conclusion that these individuals ... have a relationship with the debtor which not only enable advantage to be gained but to enable control of the debtor by them so as to constitute 'insider' status." Appellant Br. at 13-14.

The bankruptcy court rejected the trustee's effort to expand the statutory definition and extend insider status to Total Healthcare on the facts presented, stating that to do so would "ignore the realities of this case and make no practical sense." Bankruptcy Opinion at 12. The bankruptcy court agreed with the trustee that insider status may be based on a professional or business relationship with the debtor beyond the *per se* classifications found in the statute and noted that "whenever allegations are made that any person has such a close relationship with the Debtor that unfair advantage is being gained by the person, close scrutiny is of course in order." *Id.* at 10. The bankruptcy court then applied close scrutiny to the question and noted that Total Healthcare "has been intimately involved with the Debtor's business since well before the Bankruptcy filing, and that at no time has there ever been a complaint going to the quality or cost of its services." *Id.* at 11. The bankruptcy court found that Total Healthcare was employed by the debtor only after the debtor had suffered bad experiences with two other service providers and that the independent examiner had found that the fees charged to the debtor by Total Healthcare were approximately 20% lower than the percentage of revenue rate typically charged in the marketplace and that there was no evidence in the record warranting a change of management or indicating that equivalent management services are even available in the marketplace. *Id.* The bankruptcy court then noted that the replacement of Total Healthcare would likely cause serious disruption in the debtor's operations and patient care and that the debtor, the creditor's committee and Heller also stated that without the service of Total Healthcare the debtor would be forced to close its doors. *Id.* The trustee offered no evidence to rebut any of these assertions. *Id.* The bankruptcy court then found that the Heller claim so vastly exceeded the value of the debtor's assets that any dividend for

unsecured creditors could come only from funds "carved out" through an agreement with Heller. *Id.* at 12. The mere fact that the parent companies of both Total Healthcare and the debtor share a non-controlling shareholder fails to justify disqualification of Total Healthcare, which, in turn, would result in the closing of the nursing homes and the termination of business by the debtor. Although Steven Fishman is a shareholder of both Feld and Z.A. Consulting, he has no direct ownership in either the debtor or Total Healthcare and has no control over either. Gregory Lentz is a minority shareholder in Z.A. Consulting and has no ownership interest in the debtor. He also does not control the debtor and Total Healthcare.

*8 None of these factual findings is clearly erroneous and the bankruptcy court correctly concluded that insider status should not be extended to Total Healthcare under these facts by expanding the statutory definition of insider.

(3) Disclosure

Finally, appellant argues that the debtor's failure to completely disclose the relationships at issue requires a denial of its application to retain Total Healthcare. Appellant Br. at 22. The Bankruptcy Code mandates disclosure of all connections with the named parties, not simply those relevant to the disinterestedness inquiry. [FN14] *In re Filene's Basement, Inc.,* 239 B.R. 845, 849 (Bankr.D.Mass.1999). Failure to be forthcoming with disclosure provides the bankruptcy court with an "independent ground for disqualification." *Id.* "It is not ... the obligation of the bankruptcy court to search the record for possible conflicts of interest. That obligation belongs to the party who seeks employment by the estate." *BH & P, Inc.,* 949 F.2d 1300, 1317 (3d Cir.1991). Under Rule 2014, the court has the discretion to disqualify, sanction or take no action against a professional who fails to fully disclose any potential conflicts.

> FN14. When applying for an order of appointment, the applicant must state "to the best of the [its] knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed.R.Bank.P.2014 (2003).

Appellant argues that the debtor and its consultant were not forthright and forthcoming because they failed to make candid disclosures at the time of application. Appellant Br. at 22-24. Appellee argues that at all relevant times, it has complied with its disclosure obligations. The bankruptcy court found that although the initial application was somewhat lacking Total Healthcare and all other parties were candid in their responses to the Examiner's questioning: "the Court is unconvinced that Total Healthcare ever possessed an intention to mislead or conceal the true facts." "The very significant disclosures which were made in connection with the original application fairly assured that the full spectrum of interrelationships would receive careful scrutiny. The supplemental affidavit, moreover, was filed well before the Court considered the final approval of the application. It would appear, finally, that Total Healthcare and all other parties were completely candid in responding to the Examiner as he went about the performance of his duties." Bankruptcy Opinion at 16. However, the bankruptcy court also found that the initial oversight "made unnecessarily difficult the resolution of an already complex matter" and fined Total Healthcare for violation of Rule 2014(a) for its incomplete application. *Id.* at 16-17.

I conclude that the bankruptcy court has broad discretion under Rule 2014 to decide whether the parties were candid and forthcoming and that it acted well within its discretion. Furthermore, its determinations of credibility are not clearly erroneous.

Conclusion

None of the findings of fact by the bankruptcy court were clearly erroneous and the court applied the correct legal standards. The orders of the bankruptcy court authorizing the retention of Total Healthcare as a consultant for the debtor were not an abuse of discretion. They will therefore be affirmed.

Order

*9 And now, this *23th* day of March 2004, after consideration of the brief of the Appellant (Doc. #

3); the brief of the Official Committee of Unsecured Creditors (Doc. # 4); the brief of 22 Acquisition's opposition (Doc. # 5); and the appellant's reply (Doc. # 6), it is hereby ORDERED that the orders of the bankruptcy court authorizing retention of Total Healthcare of Texas, LLC are AFFIRMED.

2004 WL 870813 (E.D.Pa.)

Motions, Pleadings and Filings (Back to top)

. 2003 WL 23902395T1 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of the Acting United States Trustee to the to Brief of the Official Committee of Unsecured Creditors (Jun. 26, 2003)

. 2003 WL 23902375T1 (Trial Motion, Memorandum and Affidavit) Brief of the Official Committee of Unsecured Creditors (Jun. 13, 2003)

. 2003 WL 23902384T1 (Trial Motion, Memorandum and Affidavit) Brief of Appellee 22 Acquisition Corp. (Jun. 13, 2003)

. 2003 WL 23902358T1 (Trial Motion, Memorandum and Affidavit) Brief of the Appellant, United States Trustee (May. 28, 2003)

. 2:03CV03059 (Docket)
(May. 13, 2003)

. 2:02CV00907 (Docket)
(Feb. 22, 2002)

END OF DOCUMENT