1    MR. CHIPMAN:  Thank you.

2    (Pause in proceedings)

3    MR. CHIPMAN:  Your Honor, the last objection today is

4    Item #23 on the Agenda.  That's the Ninth Omnibus Objection to

5    Claims.  It's an objection to reclassified claims.  There was

6    one response filed by Northwest Fence Products.  Basically

7    they're saying that they're entitled to a priority.  They

8    provided material and installed a security fence pre-petition.

9    Your Honor, I've reviewed the claim, and I don't see any basis

10   for a priority under Section 507 of the Bankruptcy Code.  And

11   that's why we're -- you know, we're not seeking to expunge the

12   claim.  We're just seeking to reclassify it from a priority to

13   an unsecured claim.  And if counsel for Northwest Fence

14   Products is here, I'll cede the podium to them.

15   THE COURT:  Is there anyone here on behalf of

16   Northwest Fence Products?  I don't have that right here in

17   front of me.  Do they state the basis upon which they assert a

18   priority?

19   MR. CHIPMAN:  Your Honor, they think that they should

20   be paid in full for supplying a fence pre-petition.  And that's

21   basically the long and short of their response.

22   THE COURT:  Was this a pro se filed claim, do you

23   remember?

24   MR. CHIPMAN:  It appears to be.  It's handwritten.  I

25   can give Your Honor a copy.  And I can give Your Honor a copy

1  of the response.  But basically it boiled down to, "We provided

2  the fence and the materials at the Debtor's request, and we

3  should be paid in full."

4      THE COURT:  All right.  Based upon the representation

5  of counsel it appears to me this is an unsecured claim and not

6  a priority claim.  I'm not aware of any priority category in

7  which that kind of a claim would fit.  Therefore, it's ordered

8  granting the motion to reclassify.

9      MR. CHIPMAN:  Thank you, Your Honor.  May I approach?

10     THE COURT:  Please.

11  (Pause in proceedings)

12     THE COURT:  I've signed the Order.

13     MR. CHIPMAN:  Your Honor, that's all I have.  I'll

14  turn the podium back over to Karol Denniston.

15     MS. DENNISTON:  Your Honor, the last Agenda item is

16  the status conference on the confirmation hearing.  I think Mr.

17  Austin has given the Court a preview that the Debtor is

18  presently circulating a proposed scheduling order, and we'd

19  like to be able to submit that order for entry once we've

20  completed circulation and received all the comments.  Did you

21  have anything else to add?

22     THE COURT:  Does this contemplate all discovery being

23  completed in advance of the August 25th hearing?

24     MR. AUSTIN:  Yes, it does, Your Honor.  Let me put

25  that in the context.  This concept of doing a scheduling order

1  has really come about based on discussions counsel for the

2  Debtors had with counsel for Wilmington Trust, Harbert, and the

3  counsel representing the equity holders of the Debtor, as well

4  as the fact that we've had a couple additional discovery

5  requests in connection with confirmation related issues.  If

6  the Court could look at the general schedule, there are two

7  operative dates set based on the Court's approval of the --

8  excuse me -- the Disclosure Statement.  There's the August 2nd

9  date, which is the date for voting and for Parties-In-Interest

10  to file an objection to confirmation, and there's obviously the

11  August 25 confirmation hearing date.  Prior to the Court's

12  approval of the Disclosure Statement, the Debtor had received

13  extensive discovery requests from Harbert, Wilmington Trust,

14  and counsel for the equity holders.  And in part those

15  discovery requests are somewhat continuing in nature, and we

16  have received on an informal basis additional supplemental

17  requests for information responsive to the existing discovery

18  requests from Wilmington Trust's counsel and from counsel for

19  the Equity Committee.  And we've received indication that

20  Harbert would send some additional discovery requests as

21  relates to the issues which they'd already sent us a request

22  previously.

23      So the idea, Your Honor, is that yes indeed this

24  scheduling order would contemplate that there would be dates

25  certain by which A) we would have to respond, or any party

1  would have to respond to existing discovery requests, although

2  at this point I think the only formal discovery request

3  outstanding is to the Debtor as opposed to us -- the Debtor

4  hasn't issued any.  There would also be a date certain by which

5  new discovery requests would have to be served on the parties.

6  I think the key issue there, Your Honor, is that we are

7  proposing to shorten the time for responding to new discovery

8  requests to 14 days after receipt of that discovery request.

9  The scheduling order would contemplate a filing of expert

10  reports by a date certain, completion of fact deposition

11  witnesses by a date certain, and then completing expert

12  depositions by a date certain.  It would also set a briefing

13  schedule where parties in opposition to confirmation would file

14  briefs, and that the Debtor would file its brief in support of

15  confirmation, all of this being done well in advance of the

16  confirmation hearing so that not only do the parties know what

17  the issues will be at confirmation, but this Court will have --

18  know those issues.  And the last point that came up that we're

19  still playing around with a little bit, Your Honor, is date

20  certain for filing witness lists and exhibit lists with the

21  perspective that the exhibit list needs to have some

22  flexibility, that as projections and stuff may be updated based

23  on newly available financial information one is able to get

24  that information out to all of the other Parties-In-Interest,

25  and they'd have an opportunity to evaluate it.

1    So that is what the scheduling order would contemplate

2  doing, Your Honor.  As I said, at this point we have circulate

3  drafts of that proposed scheduling order to counsel for

4  Harbert, Wilmington Trust, counsel for the Equity Committee,

5  Magten, Creditor's Committee, U.S. Trustee, counsel for the

6  Montana Public Service Commission, and the Montana Consumer

7  Counsel, because those at least have been parties that have

8  been so far very active in the case.  We also circulated,

9  excuse me, to counsel for Richard Hylland, which we are going

10  to combine this in connection with the 2004 Order.  So the

11  idea, Your Honor, was one that a number of the counsel for the

12  parties said this might be a good idea.  We wanted to bring the

13  concept to the Court's attention this afternoon, because what

14  we would like to do is to go away, see if we can finalize such

15  an Order, and then to present this type of Order on

16  certification from counsel later this week.

17    THE COURT:  Anybody else wish to be heard in

18  connection with Mr. Austin's suggestion?

19    MR. BURNETT:  Your Honor, William Burnett, Blank, Rome

20  on behalf of Magten.  We've been involved in that process

21  trying to negotiate the scheduling order with counsel to

22  Northwestern.  And I guess we have a couple concerns.  One is

23  that the Magten litigation in our view is, you know, certainly

24  Plan -- you know, may be Plan dispositive.  And our concern

25  with the current drafts at this time is that it gives the

1  Debtor a fair amount of back-end time.  And there's some

2  specific deadlines, at least in the current draft, that we have

3  problems with, that we think are too early and may cut off our

4  rights to discovery and depositions, et cetera.  The other

5  concerns that we have are that if for whatever reason the

6  confirmation does not go forward on August 25th, for whatever

7  reason, I think some of these deadlines would need to be

8  reopened.  And I guess ultimately since we're -- this is a

9  fluid process, I'm not asking this Court to make decisions on

10  these issues.  I guess the concern is that if Magten has

11  particular issues with the final version of the scheduling

12  order, that it either be given some type of opt out or some

13  type of ability to come back and address their issues with the

14  Court, because there's no motion, and it's hard to say how it

15  should really be binding if there are objections.

16          THE COURT:  Well, Mr. Austin said he was going to

17  submit it under certification of counsel, which presumably

18  means that --

19          MR. BURNETT:  If well agree, then that's --

20          THE COURT:  -- everybody agrees --

21          MR. BURNETT:  -- that's fine, Your Honor.

22          THE COURT:  -- that's fine.  And if certification of

23  counsel says there's somebody who doesn't agree --

24          MR. AUSTIN:  If someone doesn't agree, Your Honor, we

25  will certainly certify they don't agree, and advise the Court

1  of what their issues are.

2      THE COURT:  And then we can always -- that's why we

3  have telephones.  We can have a quick telephone conference

4  about that, and figure out how to resolve it.

5      MR. BURNETT:  That's fine, Your Honor.

6      THE COURT:  This raises a question in connection with

7  the Magten litigation that got a little off track maybe because

8  it got sent off to Judge Lindsay.  And now Greenberg, Traurig

9  is handing that litigation, and not Paul, Hastings.  Is it the

10  contemplation of the parties to try to be on the same schedule?

11  Or is that litigation simply too big for that?

12      MR. AUSTIN:  It is certainly the Debtor's perspective,

13  Your Honor, that the issues raised by Magten, while we

14  recognize Magten would take the position that it is case

15  dispositive, our analysis is, and our perspective is -- and

16  I'll let Chipman chime in -- that we can still proceed, the

17  Debtor can still proceed with confirmation irrespective of the

18  pending litigation, and whether that litigation's been

19  resolved, because Magten as it relates to the Montana quips --

20  the Montana quips in and of themselves represents only

21  $65,000,000 of claims, which based on the pleadings which we

22  have received from Magten, Magten earns only a third -- a

23  little over a third of that $65,000,000, so that the universe

24  of claims that we're dealing with that may well fall under

25  disputed basis which we may have to make some allocation for as

1  it relates to the confirmation is either 65 at the maximum end,

2  or a third of that 65, which is roughly $22,000,000 or so.

3       THE COURT:  The number's a little bigger for McGreevy.

4       MR. AUSTIN:  The numbers are certainly bigger for

5  McGreevy.  And I would say, Your Honor, we -- that is something

6  that we're going to be trying to address over the next couple

7  weeks.

8       THE COURT:  And there was this other open issue that

9  we discussed I believe in Phoenix, which is the extent to which

10  -- whether or not those cases are cases that would only in

11  effect unwind the transaction for that particular Claimant, as

12  opposed to generally unwinding that transaction for anybody who

13  was in those classes, or any Creditors of Clark Fork.

14       MR. AUSTIN:  And the Debtor certainly takes the

15  position that the nature of the claims as it relates to this,

16  we recognize that certainly believe Magten takes a different

17  position based on the type of claim which I can tell they filed

18  against Paul, Hastings in Montana is that we certainly take the

19  position that Creditors such as Magten that brought their

20  claims post transaction on the eve of bankruptcy, and not bring

21  derivative type claims, they bring claims solely on their own

22  behalf, and that it's only the nature of their individual

23  claims that ultimately will be at issue.

24       THE COURT:  I understand that.  It's just it simply is

25  an issue that somehow or another needs to be brought to bubble

1 to the surface and resolved, because that could have a direct

2 impact upon whether or not it's Plan dispositive or not Plan

3 dispositive.

4      MR. AUSTIN:  We recognize that, Your Honor.

5      THE COURT:  All right.  Anything else?

6      MR. AUSTIN:  I think that concludes the calendar

7 today, Your Honor.  And we certainly appreciate your time.

8      THE COURT:  All right.  Well this is Monday.  And so

9 I'm here the rest of the week if you need me to deal with

10 anything in this case, until Friday morning.  I'll leave on

11 Friday morning.

12      MR. AUSTIN:  Thank you, Your Honor.

13      THE COURT:  Thank you.

14   (Court adjourned)

15

16                    CERTIFICATION
I certify that the foregoing is a correct transcript from the
17 electronic sound recording of the proceedings in the above-
entitled matter.
18

19 _____          7-1-04
   Signature of Transcriber         Date
20

21

22

23

24

25

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191
A361

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| NORTHWESTERN CORPORATION, | ) | Case No. 03-12872(CGC) |
|  | ) | Related Docket Nos. 1623, 1624, 1625, 1632 |
|  | ) | Hearing date: July 15, 2004 @ 10:30 a.m. |
| Debtor. | ) | Objection deadline: July 15, 2004 @ 10:30 a.m. |
|  | ) |  |

## MOTION OF MAGTEN ASSET MANAGEMENT CORPORATION FOR LEAVE TO FILE A REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY PAUL, HASTINGS, JANOFSKY & WALKER LLP

Magten Asset Management Corporation ("Magten"), hereby respectfully moves this Court for leave to file a reply, attached hereto as Ex A, (the "Reply") to the objections to Magten's Motion to Disqualify Paul Hastings Janofsky & Walker LLP ("Paul Hastings") as counsel to the Debtor (the "Motion"). In support of this request, Magten states as follows:

1.      The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware provide that reply papers shall not be filed unless permission is granted by the Court. *See* Del. Bankr. L.R. 9006-1(d).

2.      Magten states that there is cause to allow it to file a Reply to the objections. In connection with Paul Hastings' objection, it filed the Affidavit of Jesse H. Austin, III In Connection with Paul, Hastings, Janofsky & Walker LLP's Employment as Attorneys For Debtor and Debtor-In-Possession, dated July 7, 2004 (the "July Affidavit"). The July Affidavit makes new disclosures with respect to Paul Hastings' representation of the Debtor and Clark Fork prior to the petition. Magten seeks to address these disclosures in its reply, in addition to other factual issues raised in the objections.

3.      Further, Magten seeks to address the legal arguments made in the objections.

**A362**

Docket No. 1616

4.    Magten submits that no delay or prejudice will result from granting leave to file

the Reply, and that the filing of the Reply will assist the Court.

WHEREFORE, Magten requests that the Court grant Magten leave to file the Reply.

Dated: July 13, 2004                    SMITH KATZENSTEIN & FURLOW LLP


/s/ Kathleen M. Miller
Kathleen M. Miller (ID No. 2898)
The Corporate Plaza
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone:  302-652-8400
Facsimile:  302-652-8405
Email:  Kmiller@skfdelaware.com

Bijan Amini (NY Bar. No. 3533)
STORCH AMINI & MUNVES PC
2 Grand Central Tower
New York, New York 10017
(212) 490-4100

Counsel to Magten Asset
Management Corporation

**A363**

2

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| NORTHWESTERN CORPORATION, | ) | Case No. 03-12872(CGC) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## MAGTEN ASSET MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY PAUL, HASTINGS, JANOFSKY & WALKER LLP

Magten Asset Management Corporation ("Magten"), by its undersigned counsel, hereby submits this Reply Memorandum in support of its Motion to Disqualify Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings") (the "Motion") as counsel to the debtor-in-possession (the "Debtor").

### I.    Paul Hastings Attempts to Rewrite History

Unhappy with the existing facts in this proceeding, Paul Hastings, in its response, takes the unusual course of creating a different, more favorable, set of facts with which to oppose Magten's motion.

**FIRST**, unable to address its failure to disclose directly, Paul Hastings ignores the misleading representations contained in its initial disclosure statement (the "Initial Affidavit").[1]    In the Initial Affidavit, Paul Hastings misrepresented that its only connection with Clark Fork was serving as its counsel in the McGreevey lawsuit, and that

---

[1] The Initial Affidavit is attached as Exhibit A.  Its full name is Affidavit Of Jesse H. Austin III In Support Of Application To Employ And Retain Paul, Hastings, Janofsky & Walker LLP As Attorneys For Debtor And Debtor-In-Possession, dated September 2003.

that lawsuit had no relationship to work performed by Paul Hastings for the Debtor or

Clark Fork. Nothing could be further from the truth.

The Initial Affidavit contains one paragraph disclosing Paul Hastings'

representation of Clark Fork. It reads as follows:

> Paul Hastings represents the Debtor and Clark Fork and
> Blackfoot, LLC, a wholly-owned subsidiary of the Debtor,
> in an action entitled <u>McGreevey v. Montana Power
> Company, et al.,</u> (Case No. CV-03-01-BU-SHE) pending in
> United States District Court for the District of Montana
> which is related to facts and occurrences which arose prior
> to Paul Hastings' representing the Debtor with respect to
> the Corporate Matters.

Initial Affidavit, ¶ 18. "Corporate Matters" is defined, in part, as "assisting the Debtor in

connection with the acquisition and disposition of assets" beginning in late 2001. <u>Id</u>. at ¶

13. The Initial Affidavit's disclosure regarding Clark Fork is, therefore, deficient in

several significant regards. Most importantly, the Initial Affidavit affirmatively omitted

what Paul Hastings has only now admitted: that it represented Clark Fork in connection

with the transaction at the heart of this bankruptcy proceeding. Also, Paul Hastings

description of the <u>McGreevey</u> lawsuit, as only related to events occurring prior to Paul

Hastings' assisting the Debtor to acquire and dispose of assets in 2001 and beyond, was

false and misleading.

That description was false because the purchase of Clark Fork from the Montana

Power Company and the ultimate disposition of its assets, in fact, constitute the central

matters of contention in the <u>McGreevey</u> lawsuit. Indeed, at one point in the lawsuit, the

McGreevey class claimants had enjoined Northwestern and Clark Fork from executing

the going-flat transaction. That description was also false because Paul Hastings claimed

that the <u>McGreevey</u> lawsuit concerned events occurring before Paul Hastings began its

representation in 2001. In its most recent affidavit (the "July Affidavit"[docket no. 1625]), Paul Hastings reveals that it began its representation of the Debtor in December, 1999 and its very first representation concerned "possible acquisitions by the Debtor, either directly or indirectly through wholly owned subsidiary corporations" resulting in the acquisition of Clark Fork. July Affidavit at ¶ 8. Read in the context of these disclosures, Paragraph 18 of the Initial Affidavit seems to have been deliberately designed to throw victims of the going-flat transaction off track.

**SECOND**, Paul Hastings alleges that Magten knew about the dual representation of the Debtor and Clark Fork "since the early months of the Debtor's Chapter 11 case." (July Affidavit, ¶ 15).[2] Again nothing could be further from the truth. As set forth by the affidavit of Tally Embry, principal of Magten, and the affidavits of Gary Kaplan and Bonnie Steingart, Magten's attorneys at Fried Frank Harris Shriver & Jacobson LLP ("Fried Frank"), Magten did not know the extent of Paul Hastings involvement until Paul Hastings disclosed it at the 11th Hour at the prodding of Magten. *See*, Exhibits B, C and D. The July Affidavit disingenuously relies upon a February 24, 2004 memo, prepared by Fried Frank, for its contention that Magten knew of Paul Hastings' dual representation. The full text of the paragraph dealing with Paul Hastings' conflict reads in its entirety:

> In addition, it is our understanding that Paul, Hastings, Janofsky & Walker LLP ('Paul Hastings') acted as counsel to NWC [Northwestern] with respect to the transactions resulting in the fraudulent transfer. As a result, Paul Hastings will likely be a material witness in the fraudulent

---

[2] Paul Hastings seems to have some confusion as to what this phrase might mean. In its Memorandum of Law, Paul Hastings suggests that Magten knew as early as the Petition Date: "[Magten] waited for more than nine months after the filing." (Paul Hastings Mem. at 3). However, the July Affidavit traces Magten's alleged knowledge only back to February 2004. (July Affidavit at ¶15).

transfer action and will not be able to act for any parties in
this dispute.[3]

Far from evidencing any knowledge of Paul Hastings' dual representation, this memo

actually reveals that both Magten and its attorneys were laboring under the understanding

that Paul Hastings represented only the Debtor.  *See*, Exhibit C at ¶ 5 and Exhibit D at ¶

5.  After receiving this memo, Paul Hastings remained silent and refused to correct

Magten's understanding.

**THIRD**, Paul Hastings diverges from reality by claiming that Clark Fork is

currently solvent, and, therefore, not a Debtor with claims pending against Northwestern.

(Paul Hastings Mem. at 9, 10, n.5).  Again, nothing could be further from the truth.  On

September 14, 2003, Paul Hastings, acting on behalf of the Debtor, moved this court for

an order approving, in part, the Debtor making payments of $370,000 per month to Clark

Fork "in the event that it is unable to pay its trade accounts arising out of its ordinary

course of business or to pay any other costs and expenses . . . that arise in connection

with the operation or maintenance of the Milltown Dam."  *See*, Exhibit E, at ¶ 47.  In

fact, in that motion, Paul Hastings also explained that since January 1, 2003,

Northwestern had been paying Clark Fork $270,000 per month so that Clark Fork could

operate its sole asset, the Dam, and pay its accounts in the ordinary course.  Id.

Regardless of Northwestern's tactical choice to keep Clark Fork out of this reorganization

process, Clark Fork is in all respects insolvent.

---

[3] While this memo was prepared for settlement purposes only, Magten will provide the full memo to the
Court for *in camera* review at the Court's request.

## II.    Paul Hastings Attempts To Change The Law

Not satisfied with creating facts, Paul Hastings seeks to create new law, as the existing authority squarely prohibits its conduct.

**FIRST**, Paul Hastings argues that no one has standing to raise its conflict of interest before this tribunal. This statement is simply not the law. As a threshold matter, this argument evidences Paul Hastings' utter disregard for its affirmative duty to make full disclosure of all facts concerning its relationships with the Debtor and the Debtor's assets at the outset of this Bankruptcy, as well as on an ongoing basis. Moreover, any party in interest to a bankruptcy has standing to raise issues concerning the conduct and administration of the estate. *See, e.g.*, 11 U.S.C. § 1109; In re Mundo Custom Homes, Inc., 214 B.R. 356, 360 (Bankr.N.D.Ill. 1997)("Under §327(a) any party in interest may object to the appointment of counsel."). Furthermore, not only Magten, but other parties to this bankruptcy, including the holders of QUIPS who held throughout and the McGreevey class, were injured by the going-flat transaction and Paul Hastings' non-disclosure.

**SECOND**, Paul Hastings argues that because Clark Fork's Board of Directors approved Paul Hastings' dual representation in connection with the going-flat transaction, Paul Hastings is now free to represent the interests of one party to that transaction against the other party's. Again, nothing could be further from the truth. As the Bankruptcy and Disciplinary Rules make clear, a law firm may not represent both parties to a transaction once that transaction comes under dispute. *See*, Rule 1.7 of the Model Rules of Professional Conduct; *see also*, In re Tidewater Mem. Hosp., Inc., 110 B.R. 221, 228 (Bankr.E.D.Va. 1989)("In bankruptcy, there is an inherent conflict in the representation

**A368**

of both sides to an acquisition of the debtor's assets."). The Court should also note that the former officers of Clark Fork have moved to dismiss the claims pending against them on the grounds that Northwestern exercised near total control over them. *See*, Exhibit F. *See also*, In re Digex, Inc. S'holders Litig., 789 A.2d 1176, 1211 (Del. Ch. 2000)(finding that it was not reasonably likely that board of directors could satisfy the 'entire fairness' test regarding their waiver, where "intense pressure [was] placed on Digex by its corporate parent to get the WorldCom deal done as quickly as possible."); Charles W. Wolfram, Modern Legal Ethics (Practitioners Ed. 1986) ("Courts have been understandably reluctant to permit consent to cure a conflicting representation when the people who actually make the decision to consent are the same individuals whose interest are in conflict with the organization. Several shareholder-derivative cases have held that no consent would be availing in such cases.") (citing Messing v. FDI, Inc., 439 F. Supp. 776 (D.N.J. 1977); Cannon v. United States Acoustics Corp., 398 F. Supp. 209, 216 (N.D. Ill. 1975), modified 532 F.2d 1118 (7th Cir. 1976)).

**THIRD**, Paul Hastings argues that this disqualification motion should be rejected because the motion assumes the merits of the Adversary Proceeding. This is nonsense. Conflicts issues always arise at the outset of a dispute between contracting parties, before the merits are addressed. The conflict rules preclude a lawyer who has represented both sides in a transaction from making his own choices about whom to support when the interests of two clients fall into dispute. Thus, counsel to both buyer and seller on a contract cannot represent the buyer when the seller sues for breach just because it thinks that the buyer's case is more meritorious. This principle has special significance here in the bankruptcy context. Because Debtor's counsel holds conflicting loyalties regarding

**A369**

the central assets of the reorganization process it may not represent the Debtor, regardless of the ultimate resolution of the claims asserted.

III.   **Paul Hastings Attempts To Persuade The Court That They Have Disclosed What They Have Attempted To Hide**

Most egregiously, Paul Hastings (i) tries to persuade this Court that they have actually disclosed something which they have gone out of their way to hide, and (ii) fails to address or even recognize its affirmative duty to disclose at the outset and throughout these proceedings.

**FIRST**, Paul Hastings suggests that its dual representation of the Debtor and Clark Fork in the going-flat transaction was disclosed in the Initial Affidavit. However, as described above, Paul Hastings purported original disclosure actually obscured this fact. Not only did Paul Hastings not disclose the dual representation, Paul Hastings affirmatively mischaracterized its representation of Clark Fork by claiming that the issues in the McGreevey lawsuit concerned matters arising before Paul Hastings undertook its representation in late 2001. The Court and the creditors, including Magten, were entitled to rely on Paul Hastings disclosure as a complete and accurate description of Paul Hastings involvement.

**SECOND**, Paul Hastings' response to the correspondence sent by Storch Amini & Munves PC ("SAM") on March 30, 2004 and April 16, 2004 was also designed to shield the truth from exposure. In those letters, SAM specifically asked Paul Hastings to resign based upon their status as potential witnesses, not yet being aware of Paul Hastings' dual representation. *See*, Exhibits D and E to the Motion. However, because Paul Hastings seemed to be stonewalling instead of responding to those letters, *see*, Exhibit F to the Motion, suspicions were raised that the conflicts were more extensive

than SAM and Magten had thought them to be at the time. Thus, notwithstanding the direct questions about the propriety of Paul Hastings' representation, Paul Hastings affirmatively kept its dual role quiet.

**THIRD**, on June 2, 2004, Paul Hastings responded to the 328(c) papers filed by Magten, papers which had publicly questioned Paul Hastings disinterestedness. Magten filed these papers at the beginning of May because counsel determined it was appropriate to present the question before the Court in light of Paul Hastings' stonewalling. In order to have the manner clearly addressed, counsel included in paragraph 8 the direct accusation that Paul Hastings had represented both sides. Based on Paul Hastings' conduct up to that point, counsel suspected that that was indeed the case. Instead of responding directly, Paul Hastings affirmatively withheld critical information from the Court and parties in interest.

**FOURTH**, throughout this Bankruptcy, Paul Hastings has taken it upon itself to argue against motions for adversary proceedings brought by Magten, the McGreevey class, and others. All of these hearings concerned assets transferred in the going-flat transaction. Yet, at none of them, did Paul Hastings reveal to the Court its dual representation in acquiring those assets for the Debtor from Clark Fork. At the very least, Paul Hastings had an obligation in each of these proceedings to disclose its role and recuse itself. By appearing and keeping silent each time, Paul Hastings affirmatively misled the Court.

**A371**

IV.     **Paul Hastings Argues That Notwithstanding Its Failures, The Court Should Exercise Its Discretion To Allow It To Continue To Represent The Debtor**

Finally, Paul Hastings has the temerity to raise questions as to whether the Bankruptcy Court and the bankruptcy process permit it to profit from its intentional non-disclosure, delay and misleading statements. The answer is overwhelmingly no. See, In re BH&P, 949 F.2d 1300, 1317-1318 (3d Cir. 1991); In re Uniroyal Tech., Corp., No. 02-12471 (Bankr.D.Del. Oct. 16, 2002)(hearing transcript at 36-39)(Ex. G); *see also*, In re Glenn Electric Sales Corp., 99 B.R. 596 (D.N.J. 1988); In re Filene's Basement, Inc., 239 B.R. 845, 850 (Bankr. D.Mass. 1999); In re Tinley Plaza Assocs., L.P., 142 B.R. 272 (Bankr. N.D.Ill. 1992). It is beyond dispute that Paul Hastings had an affirmative obligation to voluntarily and fully disclose; instead, it waited until the 11th hour, when it was cornered. And, as discussed throughout, even when cornered, the disclosures made by Paul Hastings were still designed to mislead the Court. In light of its active efforts to mislead, Paul Hastings cannot plausibly argue that other parties in interest should have raised their concerns earlier.

Interestingly, Counsel for the Unsecured Creditors' Committee ("Committee Counsel") has submitted a brief, also claiming that Magten knew of Paul Hastings' dual representation in either April or January 2004. *See*, Comm. Obj. at 10-11. Committee Counsel's position is quite disturbing. To the extent, Committee Counsel learned of Paul Hastings' involvement earlier in the bankruptcy and failed to disclose it to either the Court or to the QUIPS Holders, it is complicit in the wrongdoing of Paul Hastings. Furthermore, to the extent Committee Counsel garnered this information during the period when Magten and Law Debenture Trust Company of New York were members of

**A372**

the Creditors Committee, Committee Counsel may have violated its fiduciary duties by failing to apprise both the Court and the Committee of this information.

## CONCLUSION

For the reasons stated above, Magten's motion to disqualify Paul Hastings as counsel to the Debtor should be granted.

Dated: July 13, 2004

SMITH KATZENSTEIN & FURLOW LLP

/s/ Kathleen M. Miller
Kathleen M. Miller (ID No. 2898)
The Corporate Plaza
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone:  302-652-8400
Facsimile:  302-652-8405
Email:  Kmiller@skfdelaware.com

Bijan Amini (NY Bar. No. 3533)
STORCH AMINI & MUNVES PC
2 Grand Central Tower
New York, New York 10017
(212) 490-4100

Counsel to Magten Asset
Management Corporation

**A373**

**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NORTHWESTERN CORPORATION, | Case No. 03-12872 (PJW) |
| Debtor. | |

## AFFIDAVIT OF JESSE H. AUSTIN III
## IN SUPPORT OF APPLICATION TO EMPLOY AND RETAIN
## PAUL, HASTINGS, JANOFSKY & WALKER LLP AS
## ATTORNEYS FOR DEBTOR AND DEBTOR-IN-POSSESSION

I, Jesse H. Austin III, being duly sworn, hereby depose and say as follows:

1.      I am a member of the firm of Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings" or the "Firm") which maintains offices for the practice of law at 600 Peachtree Street, Atlanta, Georgia 30308. I am admitted to the practice of law in Georgia, the United States District Court for the Northern and Southern Districts of Georgia and the Northern District of Texas, and the 11th Circuit United States Court of Appeals. This affidavit is submitted in support of the application (the "Application") of the debtor and debtor-in-possession (the "Debtor") in the above-captioned Chapter 11 case for the entry of an order, pursuant to §§ 327(a) and 328(a) of Title 11 of the United States Code (the "Bankruptcy Code"), authorizing the retention and employment of Paul Hasting as attorneys for the Debtor and to provide the disclosures required under § 329 of the Bankruptcy Code, Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the rules of this Court. Unless otherwise stated in this affidavit, I have personal knowledge of the facts set forth herein.

**A375**

ATL/967162.11

## DISINTERESTEDNESS

2.      Based on the conflicts search conducted to date and described herein, to

the best of my knowledge, neither Paul Hastings, nor any member of, associate or

counsel to Paul Hastings, insofar as I have been able to ascertain, has any connection

with the above-captioned Debtor, its creditors or any other parties-in-interest, and the

United States Trustee or any person employed in the office of the United States Trustee,

except as disclosed or as otherwise described herein.

3.      To the best of my knowledge, information and belief, Paul Hastings is a

"disinterested person," as that term is defined in § 101(14) of the Bankruptcy Code, as

modified by § 1107(b) of the Bankruptcy Code, in that Paul Hastings, its members,

counsel and associates:

        a.      are not creditors, equity security holders or insiders of the Debtor;

        b.      are not and were not investment bankers for any outstanding
              security of the Debtor;

        c.      have not been, within three years before the date of the filing of the
              Debtor's Chapter 11 case, (i) investment bankers for a security of
              the Debtor, or (ii) an attorney for such an investment banker in
              connection with the offer, sale, or issuance of a security of the
              Debtor;

        d.      are not and were not, within two years before the commencement
              of the above-captioned Chapter 11 case (the "Petition Date"), a
              director, officer, or employee of the Debtor or of any investment
              banker as specified in subparagraph (b) or (c) of this paragraph;
              and

        e.      do not have an interest materially adverse to the interests of the
              Debtor's estate or of any class of creditors or equity security
              holders, by reason of any direct or indirect relationship to,
              connection with or interest in the Debtor as an investment banker
              referred to above or for any other reason.

**A376**

4.      I am not related, and, to the best of my knowledge, information and belief, no attorney at the Firm is related, to any United States Bankruptcy Judge in this District or to the United States Trustee for such district or any employee thereof.

5.      Beginning in April 2003, the Debtor expanded Paul Hastings' then-existing engagement to advise it regarding strategic alternatives and financial restructuring and bankruptcy matters. Subsequently, on or about August 1, 2003, and even though no decision had been made at that time to seek relief under Title 11, the Debtor requested that Paul Hastings begin preparing initial motions, applications, and affidavits related to this Chapter 11 case. Paul Hastings represents and has represented the Debtor and certain of its affiliated non-debtor entities in other non-bankruptcy related matters, as described in further detail herein.

6.      The Firm and certain of its members, counsel and associates may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest of the Debtor in connection with matters unrelated to the Debtor and this Chapter 11 case.

7.      Paul Hastings has conducted a computerized search of the relevant parties to the Debtor as identified by the Debtor, all as listed in Exhibits A(i) through A(xiii) annexed hereto. Such exhibits list the following entities:

      (i)      Subsidiaries and affiliates (as defined in 11 U.S.C. § 101(2));

      (ii)      Current directors and officers;

      (iii)      Former directors and officers in the last two years;

**A377**

-3-

(iv)  All unsecured creditors;

(v)  Shareholders and equity holders of the Debtor holding shares in excess of 5%;

(vi)  Parties to significant actual or known potential litigation;

(vii)  Secured lenders and lienholders;

(viii)  Significant professionals;

(ix)  Investment bankers for the Debtor during the last three years;

(x)  Parties to significant contracts and leases with the Debtor;

(xi)  Insurers;

(xii)  Indenture Trustees; and

(xiii)  Other significant relationships.

8.  The computerized search involved a comparison of all of the relevant parties listed in Exhibits A(i) through A(xiii) against Paul Hastings' extensive master client database compiled from its conflicts clearance and billing records. This database contains names of the entities on behalf of which any attorney of the Firm has charged time. The database includes the name of each current or former client of the Firm, parties who are or were related or adverse to such current or former client, and the names of the Paul Hastings' attorneys who are or were responsible for current or former matters for such client.

9.  In addition, an e-mail was sent to all attorneys of the Firm requesting that each recipient advise whether (i) any such individual or immediate family member holds

any claims against, or stock of, the Debtor, (ii) any such individuals were ever employed by the Debtor or an investment banker of the Debtor, or (iii) whether any relative of such individual (within the meaning of 11 U.S.C. § 101(45) is an employee, officer or director of the Debtor. No positive responses were received from any attorneys at Paul Hastings with respect to the foregoing e-mail request.

10.    The information listed on the annexed exhibits may have changed without Paul Hastings' knowledge and may change during the pendency of this Chapter 11 case. Paul Hastings will update this affidavit when necessary and when it becomes aware of material information. Although not relevant in concluding that Paul Hastings is "disinterested," in an abundance of caution, listed on Exhibit B annexed hereto are the results of Paul Hastings' conflicts searches of the above listed entities. Paul Hastings will not represent any of the parties listed on Exhibit B hereto in the Debtor's bankruptcy case.

11.    To the best of my knowledge and information, the fees for each of the last twelve (12) months paid to Paul Hastings by each of the entities listed on the annexed Exhibits A(i) through A(xiii) did not exceed 2% of gross revenue of Paul Hastings, with the exceptions of Wells Fargo Bank N.A. and its affiliates and General Electric Company and its affiliates. The Firm does a significant amount of work for Wells Fargo Bank N.A. and its affiliates in financial services, litigation, real estate, tax and estate planning. With respect to General Electric Company and its affiliates, including General Electric Capital Corporation, the Firm provides a wide variety of legal services including financial services, debt restructuring, bankruptcy, corporate finance, litigation, employment law

and real estate.  Paul Hastings will not represent such entities in any matters in the Debtor's Chapter 11 case.

12.    The Debtor is contemplating entering into a debtor-in-possession financing facility (the "DIP Facility"), with Bank One, N.A. ("Bank One") as the DIP lender.  Affiliates of Bank One are inactive clients of Paul Hastings.  Paul Hastings presently has no active matters for Bank One or any of its affiliates.  Bank One is being represented by Skadden, Arps, Slate, Meagher & Flom LLP in connection with the DIP Facility.

13.    Certain transactional attorneys in Paul Hastings have represented the Debtor in corporate matters from late 2001 to the present, including assisting the Debtor in preparing offering documents in connection with certain debt and equity offering in 2002 and associated filings with the Securities & Exchange Commission ("SEC"), assisting the Debtor in the preparation of annual and quarterly SEC filings, assisting the Debtor in connection with the acquisition and disposition of assets and advising and counseling Debtor with respect to general corporate matters and the Sarbanes-Oxley Act of 2002 (collectively the "Corporate Matters").

14.    Paul Hastings also represents NorthWestern Corporation in certain securities litigation including:  (a) the consolidated securities class actions entitled In re NorthWestern Corporation Securities Litigation, filed in the federal District Court in South Dakota (Case No. 03-4049), and any related, subsequently filed actions; (b) the securities class actions originally filed in the Southern District of New York, including Laufer v. Lewis, et al. (Case No. 03-CV-3716) (now consolidated with In re

NorthWestern Corporation Securities Litigation, Case No. 03-4049 in the District of

South Dakota), and Golman Family Trust v. NorthWestern Corporation, et al. (Case No.

03-CV-3223), as well as any related, subsequently filed actions; (c) the shareholder

derivative actions filed in the federal District Court in South Dakota, consolidated as In re

NorthWestern Corporation Derivative Litigation (Case No. 03-4091) as well as any

related, subsequently filed actions; and (d) as local counsel, the securities class actions

filed against CornerStone Propane Partners, L.P. ("Cornerstone") and other defendants in

the federal District Court for the Northern District of California, and the shareholder

derivative suits against CornerStone and other defendants in the Superior Court of

California County of Santa Cruz, as well as any related, subsequently filed class actions

or derivative actions  (collectively the "Securities Litigation").  Prior to the

commencement of this bankruptcy case, Paul Hastings also represented certain current

and former officers of the Debtor ("Officers") in connection with the Securities

Litigation.  As of September 12, 2003, Paul Hastings ceased representation of the

Officers and presently only represents NorthWestern Corporation.

15.    Paul Hastings also represents NorthWestern Corporation  in connection

with an employment arbitration in Richard Hylland v. NorthWestern Corp., American

Arbitration Association Case No. 65 166 0028503 (the "Hylland Arbitration").

16.    The Corporate Matters may in the future be at issue in the Securities

Litigation and/or the Hylland Arbitration and one or more Paul Hastings attorneys may

be called as a witness in the Securities Litigation or the Hylland Arbitration.  No Paul

Hastings attorneys involved in the Corporate Matters will represent the Debtor as an advocate in the Securities Litigation or the Hylland Arbitration.

17.    Further, with respect to the Securities Litigation, one party has commented orally that it might add Paul Hastings as an additional defendant. Paul Hastings views this comment as merely a strategic tactic, and does not consider that any such claim would have merit.

18.    Paul Hastings represents the Debtor and Clark Fork and Blackfoot, LLC, a wholly-owned subsidiary of the Debtor, in an action entitled McGreevey v. Montana Power Company, et al., (Case No. CV-03-01-BU-SHE) pending in United States District Court for the District of Montana which is related to facts and occurrences which arose prior to Paul Hastings' representing the Debtor with respect to the Corporate Matters.

19.    Paul Hastings has represented Expanets, Inc., a wholly-owned fourth tier subsidiary of the Debtor, in connection with various corporate transactions. Expanets, Inc. currently owes Paul Hastings $554,643.21, which is solely the obligation of Expanets, Inc.

20.    Paul Hastings represents Cornerstone Propane Partners, L.P., Cornerstone Propane GP, Inc. and Cornerstone Propane, LP (collectively "Cornerstone") former affiliates of the Debtor, in an employment arbitration. Cornerstone is solely responsible for Paul Hastings' fees.

21.    AON Risk Services, Inc. ("AON") is Paul Hastings' insurance broker for certain of Paul Hastings' insurance including its errors and omissions policy. AON Risk

Services of Minnesota and Financial Services, Inc. is listed on Exhibit A(xi) as one of the Debtor's insurers, and is an affiliate of AON.

22.     Paul Hastings represented Gary Drook and members of his family on a pro bono basis in contributing stock of First Farmers Bank to the Quad County Medical Clinic, Inc., a charitable organization, to assist the Quad County Medical Clinic to build and establish a medical clinic to provide medical services to the Converse, Indiana area. Paul Hastings also worked with the Quad County Medical Clinic to identify potential sources of governmental funds to build and support the operations of the clinic. The representation has concluded.

23.     Thomas Knapp, who is the Vice President and Deputy General Counsel of NorthWestern Corporation, was an employee of Paul Hastings as an of counsel attorney in 1996 and from 1999 through March 2002. Since March 2002, he has not been an employee of Paul Hastings.

24.     Contemporaneously herewith, the Debtor has filed applications for the authority to employ certain other professionals, including other law firms. To the extent issues may rise which would cause the Debtor to be adverse to any of Paul Hastings' clients such that it would not be appropriate for Paul Hastings to represent the Debtor with respect to such matters, such firms or another law firm will be retained to represent the Debtor with respect to such matters.

25.     In accordance with Bankruptcy Code § 327(a), I respectfully submit that none of the representations detailed above and in the exhibits annexed hereto are materially adverse to the interests of the estate or any class of creditors or equity security

holders and would preclude Paul Hastings' representation of the Debtor. Moreover, pursuant to § 327(c) of the Bankruptcy Code, Paul Hastings is not disqualified from acting as the Debtor's counsel merely because it represents creditors in unrelated matters.

26.    Paul Hastings will periodically review its files during the pendency of this Chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Paul Hastings will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit in accordance with Rule 2014(a) of the Bankruptcy Rules.

### SCOPE OF SERVICES

27.    The professional services that Paul Hastings will render to the Debtor may include, but shall not be limited to, the following:

a.    advise the Debtor with respect to its powers and duties as a debtor-in-possession in the continued management and operation of its businesses and properties;

b.    attend meetings and negotiate with representatives of creditors and other parties in interest;

c.    take all necessary action to protect and preserve the Debtor's estate, including prosecuting actions on the Debtor's behalf, defending any action commenced against the Debtor and representing the Debtor's interests in negotiations concerning all litigation in which the Debtor is involved, including, but not limited to, objections to claims filed against the estate;

-10-    **A384**

d.    prepare on Debtor's behalf all motions, applications, answers, orders, reports, and papers necessary to the administration of the estate;

e.    negotiate and prepare on the Debtor's behalf a plan of reorganization, disclosure statement, and all related agreements and/or documents, and take any necessary action on behalf of the Debtor to obtain confirmation of such plan;

f.    represent the Debtor in connection with obtaining the DIP Facility and possibly exit financing;

g.    represent the Debtor in connection with any ongoing Securities Exchange Commission investigation;

h.    advise the Debtor in connection with any potential sale of assets;

i.    appear before this Court, any appellate courts and the United States Trustee and protect the interests of the Debtor's estate before those Courts and the United States Trustee;

j.    consult with the Debtor regarding regulatory matters with respect to its energy business and represent the Debtor in associated administrative proceedings;

k.    consult with the Debtor regarding tax matters; and

l.    perform all other necessary legal services and provide all other necessary legal advice to the Debtor in connection with the Chapter 11 case.

**A385**

## PROFESSIONAL COMPENSATION

28.　　Over the last year, Paul Hastings has been paid approximately

$1,912,263.58 related to the restructuring and preparation of the Chapter 11 filing.

Within ninety (90) days of the Petition Date, Paul Hastings received $8,292,864.14 in

payments[1] for all matters in which Paul Hastings represents the Debtor. Attached as

Exhibit C is a summary of such payments detailing the billing period, billing date,

payment date and amount received.

29.　　On September 12, 2003, Paul Hastings received a payment of $475,000.00

(the "Payment") for posted and estimated professional fees and disbursements incurred

for the period September 11, 2003 through the Petition Date (the "Estimated Pre-Petition

Bill"). Prior to filing the Debtor's petition, Paul Hastings applied the Payment to the

Estimated Pre-Petition Bill. Paul Hastings will promptly issue a final billing statement

(the "Final Pre-Petition Bill") for actual fees and disbursements for the period covered by

the Estimated Pre-Petition Bill once all fees and disbursements accrued prior to the filling

have been finally posted. If the Payment is in excess of the Final Pre-Petition Bill, Paul

Hastings will hold the excess as a retainer in contemplation of services to be rendered by

Paul Hastings. Paul Hastings has also received an advance payment retainer of

$500,000.00 for its post-petition services and expenses to be rendered or incurred for, or

on behalf of, the Debtor. Paul Hastings has not shared or agreed to share its

compensation with any other entity. The information set forth in this paragraph

*A386*

represents Paul Hastings' best estimates of its pre-petition charges and retainer amounts as of the date hereof.

## FEE APPLICATIONS

30.    The Firm intends to apply for compensation for professional services rendered in connection with this Chapter 11 case subject to approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, the Local Rules, and orders of this Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges that the Firm incurs. Paul Hastings will charge hourly rates to the Debtor that are consistent with the rates charged by Paul Hastings in bankruptcy and non-bankruptcy matters of this type. Subject to periodic adjustments to reflect economic and other conditions, Paul Hastings' hourly rates are:

| | |
|---|---|
| Partners | $395-710 |
| Of Counsel | $355-620 |
| Associates | $200-455 |
| Paralegals/Clerks | $55-215 |

31.    The Firm's hourly rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned and may be adjusted by the Firm from time to time. It is the Firm's policy to charge its clients in all areas of practice for expenses incurred in connection with the clients' cases.

_____

(...continued)

[1] This amount includes the $500,000.00 retainer and the $475,000.00 Payment, which are
(continued...)

The expenses charged to clients include, among other things, telephone and telecopier tolls, mail and express mail charges, special or hand delivery charges, photocopying charges, travel expenses, expenses for "working meals," computerized research and transcription costs, as well as non-ordinary overhead expenses such as secretarial overtime.

32.    No promises have been received by either the Firm or any member, counsel or associate or other employee thereof as to compensation in connection with this Chapter 11 case other than in accordance with the provisions of the Bankruptcy Code. Paul Hastings has no agreement with any other entity to share with such entity any compensation received by the Firm in connection with this Chapter 11 case.

33.    Paul Hastings further states pursuant to Bankruptcy Rule 2016(b) that it has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the members, counsel and associates of Paul Hastings, or (b) any compensation another person or party has received or may receive.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

(...continued)
described in Paragraph 29.

*A388*

Executed this _____ day of September, 2003.


                                        /s/ Jesse H. Austin
                                        Jesse H. Austin III
                                        Paul, Hastings, Janofsky & Walker LLP
                                        600 Peachtree Street, N.W., Suite 2400
                                        Atlanta, GA 30308
                                        Telephone:  (404) 815-2400
                                        Facsimile:  (404) 815-2424

Subscribed and sworn to before me
this _____ day of September 2003.


_____
Notary Public
My Commission Expires:


**A389**

-15-

## EXHIBIT A(i)

### Debtor's Non-Debtor Subsidiaries and Affiliates
### (as defined in 11 U.S.C. § 101(2))

1.    Blue Dot Services Inc.

2.    Canadian-Montana Pipe Line Company

3.    Coast Energy Capital Corp.

4.    Clark Fork and Blackfoot, L.L.C.

5.    Colstrip Community Services Company

6.    Discovery Energy Solutions, Inc.

7.    Expanets, Inc.

8.    Grant, Inc.

9.    LNSI, Inc.

10.   Montana Megawatts I, LLC

11.   Montana Power Services Company

12.   Nekota Resources, Inc.

13.   NORCOM Advanced Technologies, Inc.

14.   NorthWestern Capital Corporation

15.   NorthWestern Capital Ventures, LLC

16.   NorthWestern Energy Corporation

17.   NorthWestern Energy Development, LLC

18.   NorthWestern Energy Marketing, LLC

19.   NorthWestern Generation I, LLC

**A390**

ATL/967162.11

20.    NorthWestern Growth Corporation

21.    NorthWestern Montana First Megawatts, LLC

22.    NorthWestern Networks, Inc.

23.    NorthWestern Services Corporation

24.    NorthWestern Services Group, Inc.

25.    NorthWestern Systems, Inc.

26.    Risk Partners Assurance, Ltd.

27.    SYN Inc.

**A391**

A(i)-2

**EXHIBIT A(ii)**

Current Directors and Officers

1.    A. M. Harpell

2.    Alan D. Dietrich

3.    Bart Thielbar

4.    Bobbi Schroeppel

5.    Bruce I. Smith

6.    Christopher J. Younger

7.    Christy Weiner

8.    Daniel K. Newell

9.    Daniel L. Rausch

10.   David A. Monaghan

11.   Dennis Lopach

12.   Eric R. Jacobsen

13.   Ernest J. Kindt

14.   Frank Pronesti

15.   G. Mark Mickelson

16.   Gary G. Drook

17.   Glen R. Herr

**A392**

18. Gregory Trandem

19. Jana Quam

20. Jerry W. Johnson

21. Jim Sengenberger

22. John C. Charters

23. John Cosgrove

24. John R. Van Camp

25. John Wiese

26. Larry F. Ness

27. Lawrence J. Ramaekers

28. Lonnie Clark

29. Marilyn R. Seymann

30. Mark D. Snider

31. Marty Hackett

32. Marty Snella

33. Maurice Worsfold

34. Michael DeVoe

35. Michael J. Hanson

**A393**

A(ii)-2

36.    Michael J. Young

37.    Michele M. Voecks

38.    Mike Hanson

39.    Mike Valente

40.    Randy G. Darcy

41.    Reggie Vegliante

42.    Robert E. Kennedy

43.    Theodore Ferrara

44.    Timothy Atkinson

45.    Vel Johnson

46.    William A. Pascoe

47.    William M. Austin[*]

---

[*] William M. Austin is not a relative of Jesse H. Austin III.

## **EXHIBIT A(iii)**

### Former Directors and Officers In Last 2 Years

1.    John C. Charters

2.    Kipp Orme

3.    Kurt Whitesell

4.    Lionel Nowell

5.    Merle Lewis

6.    Mike Childers

7.    Paul Wyche

8.    Richard Hylland

9.    Trey Bradley

**A395**

A(iii)-1

**EXHIBIT A(iv)**

All Unsecured Creditors

This exhibit is presented separately because of its voluminous nature.

**A396**

A(iv)-1

## EXHIBIT A(v)

### Shareholders and Equity Holders

The Debtor has advised Paul Hastings that there are no persons known to the Debtor who own more than 5% of the outstanding shares of Common Stock.

**A397**

## EXHIBIT A(vi)

### Parties to Significant Actual or Known Potential Litigation

| Plaintiffs | Defendents |
|---|---|
| | 1) A.G. Edwards Investment Management Consulting Services, Inc. |
| 1) Alan Stevens | |
| 2) Arthur Laufer | 2) Alan F. Cain |
| 3) Betty Stewart (Derivatively for NOR) | 3) BBI Power Corp. |
| 4) Caman Investments, Inc. | 4) Bruce I. Smith |
| 5) Carpenters Pension Trust for Southern California | 5) Carl Lehrkind, III |
| 6) Charles Porter | 6) CES Acquisition Corp. |
| 7) David C. Garrick | 7) Charles J. Kittrell |
| 8) Deryl Lusty (Derivatively for NOR) | 8) Coast Gas, Inc. |
| 9) Donnie Sanders | 9) CornerStone Propane GP, Inc. |
| 10) Emad Najafi | 10) CornerStone Propane Partners, L.P. |
| | 11) Credit Suisse First Boston Corporation |
| 11) Erika Goldstein | |
| | 12) Crowley, Haughey, Hanson, Toole & Dietrich, PLLP |
| 12) Grace J. Mitchell | |
| 13) Harriet Goldstein | 13) Daniel K. Newell |
| 14) James Dudley | 14) David A. Monaghan |
| 15) James J. Ryan | 15) Deborah D. McWhinney |
| 16) Jerald Stewart (Derivatively for NOR) | 16) Ellen M. Senechal |
| 17) JoAnne Barkell | 17) Eric R. Jacobsen |
| 18) John Gallander | 18) Gary G. Drook |
| 19) John LaGalante | 19) Goldman Sachs & Co. |
| 20) John M. Bown, III | 20) Goldman Sachs Group Inc. |
| 21) Joseph Martelli | 21) J. P. (Jerrold) Pederson |
| 22) Kim Moran | 22) Jerry W. Johnson |
| | 23) John and Jane Does 1 -15 (third party only) |
| 23) Lawrence A. Lombardo | |
| 24) Leonard S. Mewhinney, Jr. | 24) John C. Charters |
| 25) Margaret A. McGreevey | 25) John D. Haffey |
| 26) Nicholas A. Fredericka | 26) John Does 1 -15 |
| 27) NorthWestern Corporation | 27) John Does 3-5 |
| 28) NorthWestern Corporation (third party only) | 28) John G. Connors |
| 29) NorthWestern Energy LLC | 29) John R. Jester |
| 30) NorthWestern Energy LLC (third party only) | 30) Kay Foster |
| 31) Oppenheim Investment Management, LLC | 31) Keith G. Baxter |
| 32) Otto Altschuler | 32) Kipp D. Orme |
| 33) Patrick Burton | 33) Kurt D. Whitesel |
| 34) Randy L. Mapes | 34) Larry F. Ness |
| 35) Richard C. Slump | 35) M. J. Meldahl |
| 36) Rosalie Burton | 36) Marilyn R. Seymann |

37) Ross Buckingham

38) Samuel Christen, M.D.
**Plaintiffs contd...**
39) Sanford & Beatrice Golman Family Trust
40) Steven Szafara
41) Thomas G. Taylor
42) Torlief Pederson
43) Warren Bellcour

## Counsel
1)  Alfred G. Yates, Jr.
2)  Andrew D. Huppert

3)  Brian J. Robbins
4)  Charles J. Piven
5)  Christopher T. Reyna
6)  Curtis V. Trinko
7)  Cynthia K. Smith
8)  Dale L. McGarvey
9)  Darren J. Robbins
10) David Lavine
11) David M. Duree
12) David R. Scott
13) Deborah R. Gross
14) Dennis J. Herman
15) Don C. St. Peter
16) Douglas A. Buxbaum

17) Frank B. Morrison, Jr.
18) Frederick W. Gerkens, III
19) Guri Ademi
20) James Caputo
21) James G. Stranch, III
22) Jeffrey M. Haber
23) Jeffrey M. Norton
24) Jeffrey P. Fink

25) John G. Emerson, Jr.
26) Joseph H. Weiss
27) Joseph R. Seidman, Jr.
28) Jules Brody
29) Kimberly A. Beatty

30) Kip B. Shuman

31) Leigh R. Lasky

37) Merle D. Lewis
38) Merrill Lynch Pierce Fenner & Smith, Inc.
**Defendents contd...**
39) Michael E. Zimmerman
40) Milbank Tweed Hadley & McCloy LLP
41) Montana Power Co.
42) Montana Power LLC
43) Morgan Stanley & Co., Inc.
44) Noble E. Vosburg

45) Northern Trust Corporation
46) NorthWestern Capital Financing I
47) NorthWestern Capital Financing II
48) NorthWestern Capital Financing III
    (NorthWestern Capital III)
49) NorthWestern Energy
50) Pamela K. Merrell
51) PanCanadian Petroleum Limited
52) PPL Montana LLC
53) Prudential Securities, Inc.
54) R. D. Corette
55) R. P. (Robert) Gannon
56) R. W. Cope
57) Randy G. Darcy
58) Richard G. Nye
59) Richard R. Hylland
60) Ronald J. Goedde
61) Salomon Smith Barney, Inc.
62) Touch America Holdings, Inc. (and third party)
63) Tucker Hart Adams
64) UBS Warburg LLC
65) Westmoreland Coal Co.
66) Westmoreland Mining LLC
67) William L. Woods
68) Wilmington Trust Company

## Firms
1)  Ademi & O'Reilly, LLP
2)  Andrew D. Huppert P.C.
3)  Beers Law Offices
4)  Bernstein Liebhard & Lifshitz, LLP
5)  Branstetter, Kilgore, Stranch & Jennings
6)  Browning, Kaleczyc, Berry & Hoven, P.C.

32) Lori G. Feldman

33) Michael A. Swick
34) Milton Datsopoulos
35) Norman Rifkind
36) Patrick J. Coughlin
**Counsel contd...**

37) Paul Geller
38) Paul J. Scarlato
39) Reed R. Kathrein
40) Richard E. Huffman
41) Robert I. Harwood
42) Roger M. Sullivan
43) Samuel H. Rudman
44) Stanley T. Kaleczyc
45) Steve W. Berman
46) Steven G. Schulman
47) Susan R. Gross

48) Tamara J. Driscoll

49) Thomas J. Beers
50) Thomas K. Wilka
51) Timothy J. Dougherty
52) Wade J. Dahood
53) William S. Lerach
54) Willow E. Radcliffe

7)  Buxbaum Dix & Daue
8)  Cauley, Geller, Bowman & Coates, LLP
9)  Datsopoulos, MacDonald & Lind, P.C.
10) David M. Duree & Associates, PC
11)
**Firms contd...**
12) DeMersseman, Jensen, Christianson, Stanton & Huffman, LLP
13) Dougherty & Dougherty, LLP
14) Dyer & Shuman, LLP
15) Hagans Berman
16) Hagen, Wilka & Archer, P.C.
17) Knight, Dahood, McLean & Everett
18) Lasky & Rifkind, Ltd.
19) Law Offices of Alfred G. Yates, Jr.
20) Law Offices of Bernard M. Gross, PC
21) Law Offices of Charles J. Piven
22) Law Offices of Curtis V. Trinko, LLP
23) McGarvey, Heberling, Sullivan & McGarvey, PC
24) Milberg Weiss Bershad Hynes & Lerach LLP
25) Morrison Law Offices, P.C.
26) Robbins Umeda & Fink, LLP
27) Scott & Scott, LLC
28) Smith Law Offices
29) Spector, Roseman & Kodroff, P.C.
30) St. Peter & Warren, P.C.
31) Stull, Stull & Brody
32) The Emerson Law Firm
33) Wechsler, Harwood, Halebian & Feffer LLP
34) Weinstein Kitchenoff Scarlato Karon & Goldman Ltd.
35) Weiss & Yourman

## EXHIBIT A(vii)

### Secured Lenders and Lienholders

1. Credit Suisse First Boston

2. Angelo Gordon & Co LP

3. Oaktree Capital Management, LLC

4. Travelers Investment Management Company (TIMCO)

5. United American Insurance Company

6. Fort Washington Investment Advisors, Inc.

7. Allianz of America, Inc.

8. Sun Life Assurance Company of Canada

9. SAFECO Asset Management, Inc.

10. Fort Washington Investment Advisors, Inc.

11. Nationwide Insurance Companies

12. Allstate Investment Management Company

13. Hedge funds custodied at Bear Stearns #

14. Travelers Investment Management Company (TIMCO)

15. American Express Asset Management (US)

16. John Hancock Advisers, Inc.

17. Fort Washington Investment Advisors, Inc.

18. Deerfield Capital

**A401**

A(vii)-1

## EXHIBIT A(viii)

### Significant Professional

1.  Alvarez & Marsal

2.  Barnes, Thornberg

3.  Beiging, Shapiro

4.  Boyce, Murphy, McDowell & Greenfield

5.  Bracewell & Patterson LLP

6.  Brown Law Firm, PC

7.  Browning, Kaleczyc, Berry & Hoven, P.C.

8.  Brownstein, Hyatt

9.  Buckingham, Doolittle & Burroughs, LLP

10. Christensen O'Connor Johnson Kindness PLLC

11. Cooley, Godward

12. Corette Pohlman & Kebe

13. Cozzens, Warren & Harris, PLLP

14. Crowley, Haughey, Hanson, Toole &

    Dietrich, PLLP

15. Davenport, Evans, Hurwit & Smith

16. Davis Wright Tremaine LLP

17. Ford & Harrison

18. G. Steven Brown

19. Garlington, Lohn & Robinson PLLP

**A402**

A(viii)-1

20. Gough, Shanahan, Johnson & Waterman

21. Graves Law Office, P.C

22. Gray Cary Ware & Freidenrich LLP

23. Greenberg & Traurig

24. Gust Rosenfeld P.L.C.

25. Henningsen, Vucurovich & Richardson, PC

26. Holland & Hart LLP

27. Howrey, Simon, Arnold & White

28. Hughes, Kellner, Sullivan & Alke

29. Ice, Miller

30. Jackson Lewis Schnitzler & Krupman

31. Jaeckle (Indiana)

32. Leonard, Street & Deinard

33. McCarthy, Sweeney & Harkaway PC

34. McCutchen, Doyle, Brown & Enersen, LLP

35. McKinney, Stringer

36. Nymannn & Kohl

37. Pearce & Durick

38. Pillsbury Madison & Sutro LLP

39. Preston Gates Ellis LLP

40. Reed, Tarrant

41. Reinhart, Boerner

**A403**

42.  Richards, Layton & Finger

43.  Robert L. Ayres

44.  Schiff Hardin & Waite

45.  Seward & Kissel LLP

46.  Sidley, Austin

47.  Skadden, Arps, Slate, Meagher & Flom LLP

48.  Squire Sanders & Dempsey L.L.P.

49.  St. Onge Steward Johnston & Reens LLC

50.  Stacey, Walen & Funyak

51.  Stinson, Mag & Fizzell

52.  Swisher & Cohrt, P.L.C.

53.  Thelen Reid & Priest LLP

54.  Updike, Kelly

55.  Wickliff & Hall

56.  Woods, Fuller, Schultz & Smith P.C.

57.  Deloitte & Touche

58.  Gibson Dunn & Crutcher

59.  PricewaterhouseCoopers International Limited

60.  Deloitte & Touche

61.  KPMG International

62.  Gavin Anderson

63.  J. Alix Partners

ATL/967162.11

64. Hewitt

65. Jones Day Reavis & Pogue

66. Russell Reynolds

67. Marsh Inc.

**A405**

A(viii)-4

## **EXHIBIT A(ix)**

### Investment Bankers During Last 3 Years

1.     Bear Stearns

2.     Lazard Freres

3.     Credit Suisse First Boston Company

4.     Merrill Lynch Pierce Fenner & Smith, Inc.

5.     JP Morgan Chase

**A406**

A(ix)-1

## EXHIBIT A(x)

### Parties to Significant Contracts & Leases[2]

1.    Avista Corporation;

2.    Bonneville Power Administration

3.    Colorado Interstate Gas

4.    Colstrip Unit 4 Lease Management Division of NorthWestern Energy

5.    Duke Energy

6.    Duke Energy Trading & Marketing

7.    East River Electric Cooperative, Inc.

8.    Encana

9.    Havre Pipeline

10.   Idaho Power Company, a division of Idaho Power Company, a division of Idacorp, Inc.

11.   Montana-Dakota Utilities Co., a division of MDU Resources Group, Inc.

12.   NOVA Gas Transmission Ltd.

13.   Otter Tail Power Company, a division of Otter Tail Corporation

14.   PacifiCorp

15.   PPL Montana

16.   Puget Sound Energy

17.   West Central Electric Cooperative

18.   Western Area Power Administration

**A407**

A(x)-1

19.    Williston Basin Interstate Pipeline

20.    Xcel Energy Inc.

---

(...continued)

[2] [Need info re: critical vendors with regards to executory contracts]

**A408**

A(x)-2

## **EXHIBIT A(xi)**

### Insurers

1.    AEGIS (Associated Electric and Gas Insurance Services Ltd.)

2.    AON Risk Services of Minnesota and Financial Service Inc.

3.    Centennial Insurance Company

4.    Continental Casualty Company

5.    Federal Insurance Company

6.    Greenwich Insurance Company

7.    Lloyd's of London

8.    Lumbermen's Mutual Casualty Company

9.    The South Dakota Life and Health Insurance Guaranty Association

10.    Underwriters Insurance Company

11.    United States Fidelity and Guaranty Company

**A409**

A(xi)-1

ATL/967162.11

## **EXHIBIT A(xii)**

### Indenture Trustees

1.   JPMorgan Chase Bank

2.   Marya Beth Lewicki, an individual

3.   The Bank of New York

4.   U.S. Bank National Association

5.   The First National Bank of Chicago

6.   Wilmington Trust Company

7.   Citibank, N.A.

**A410**
A(xii)-1

## **EXHIBIT A(xiii)**

### Other Significant Relationships

1.    Avaya, Inc.

2.    Congress Financial

3.    Lucent Technologies' Enterprise Network Group

4.    TouchAmerica Holdings, Inc.

5.    U.S. Bank N.A.

**A411**

A(xii)-2

## EXHIBIT B

| Northwestern Corporation Disclosures | | |
|---|---|---|
| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a Paul Hastings Client | Status of Client Representation |
| **Section A: Debtors' non-debtor affiliates** | | |
| None. | | |
| **Section B Shareholders/Equity Holders** | | |
| Putnam Investment Management | Marsh & McLennan Companies | Active General Representation[3] |
| Goldman Sachs In-House | Goldman Sachs Group | Active General Representation |
| BZW Securities Ltd. | Barclays plc UK | Active General Representation |
| Barclays Global Investors, N.A. | Barclays plc UK | Active General Representation |
| The Vanguard Group | The Vanguard Group | Inactive Client |
| Boulder Investment Advisers | Boulder Total Return Fund | Active General Representation |
| Pequot Capital Management, Inc. | Pequot Capital Management, Inc. | Inactive Client |
| State Street Global Advisors | State Street Corp | Active General Representation |
| Dimensional Fund Advisors, Inc. | Dimensional Fund Advisors, Inc. | Inactive Client |
| Teacher Retirement System of Texas | Teacher Retirement System of Texas | Inactive Client |
| Morgan Stanley Investment Management | Morgan Stanley | Active General Representation |
| **6.95% notes due 11/15/28** | | |
| Travelers Investment Management Co. (TIMCO) | Travelers Property Casualty Corp. | Inactive Client |
| Oaktree Capital Management LLC | Oaktree Capital Management LLC | Active General Representation |
| John Hancock Advisers Inc. | John Hancock Financial Services | Inactive Client |
| MW Post Advisory Group LLC | MW Post Advisory Group LLC | Inactive Client |
| | Metropolitan West Financial Inc. | Active General Representation |

[3] Active General Representation means corporate or real estate transactional, litigation, tax or employment work unrelated to the Debtor and its affiliates.

**A412**

| Name of Entity Searched | Northwestern Corporation Disclosures Name of Entity and/or Affiliate of Entity that is a Paul Hastings Client | Status of Client Representation |
|---|---|---|
| Goldman Sachs Asset Management (UK) | Goldman Sachs Group Inc. | Active General Representation |
| Farmer's Mutual Insurance Co. of Noble County | Zurich Versicherings | Inactive Client |
| | | |
| 7.785% Notes Due 3/15/07 | | |
| | | |
| Allianz of America Inc. | Allianz of America Inc. | Inactive Client |
| | Allianz Aktiengesellschaft | Inactive Client |
| Sun Life Assurance Company of Canada | Sun Life Assurance Company of Canada | Inactive Client |
| SAFECO Asset Management Inc. | SAFECO Corp | Inactive Client |
| Nationwide Insurance Companies | Nationwide Mutual Insurance Co | Inactive Client |
| American Express Asset Management | American Express Co. | Inactive Client |
| Oaktree Capital Management LLC | Oaktree Capital Management LLC | Active General Representation |
| Travelers Investment Management Co (TIMCO) | Travelers Property Casualty Corp. | Inactive Client |
| UBS Global Asset Management | UBS AG | Active General Representation |
| Nomura International PLC | Nomura Holding | Active General Representation |
| John Hancock Advisers Inc. | John Hancock Financial Services | Inactive Client |
| Merrill Lynch Global Securities | Merrill Lynch & Co | Active General Representation |
| MW Post Advisory Group LLC | MW Post Advisory Group LLC | Inactive Client |
| | Metropolitan West Financial Inc. | Active General Representation |
| CIGNA Retirement & Investment Management Co. | Cigna Corp | Inactive Client |
| Atlantic Asset Management | Mizuho Holdings | Active General Representation |
| Summit Investment Partners | Summit Asset Management LLC | Inactive Client |
| T Rowe Price Associates Inc. | T Rowe Price Associates Inc. | Inactive Client |
| GMS Group LLC | GMS Group LLC | Inactive Client |
| Lazard Asset Management LLC | Lazard Feres & Co. | Inactive Client |
| Wellington Management Co. | Wellington Management Co. | Inactive Client |
| Societe Generale USA | Societe Generale USA | Active General Representation |
| Pepsi Bottling Company of Selma | PepsiCo | Inactive Client |
| | | |
| 8.75% Notes Due 3/15/12 | | |
| | | |
| Hedge Funds custodied at Bear Stearns | Bear Stearns | Active General Representation |

## A413

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a Paul Hastings client | Status of Client Representation |
|---|---|---|
| Travelers Investment Management Co. (TIMCO) | Travelers Property Casualty Corp | Inactive Client |
| Oaktree Capital Management LLC | Oaktree Capital Management LLC | Active General Representation |
| American Express Asset Management | American Express Co | Inactive Client |
| John Hancock Advisers Inc. | John Hancock Financial Services | Inactive Client |
| Putnam Investments LLC | Putnam Investments LLC | Inactive Client |
| | Marsh & McLennan | Inactive Client |
| Provident Investment Management LLC | UnumProvident | Active General Representation |
| Ohio National Life Insurance Co | Ohio National Life Insurance Co | Inactive Client |
| Pacific Investment Management Company (PIMCO) | Pacific Investment Management Company (PIMCO) | Inactive Client |
| | Allianz Aktiengesellschaft | Inactive Client |
| T Rowe Price Associates Inc. | T Rowe Price Associates Inc. | Inactive Client |
| Merrill Lynch Investment Managers | Merrill Lynch & Co | Active General Representation |
| Hartford Investment Management Co | Hartford Financial Services Group | Inactive Client |
| MW Post Advisory Group LLC | MW Post Advisory Group LLC | Active General Representation |
| | Metropolitan West Financial Inc. | Inactive Client |
| Credit Suisse First Boston | Credit Suisse Group | Active General Representation |
| BlackRock Inc. | PNC Financial Services Group | Inactive Client |
| Goldman Sachs Asset Management (US) | Goldman Sachs Group Inc. | Active General Representation |
| Lockheed Martin Investment Management Co | Lockheed Martin Investment Management Co | Inactive Client |
| Mizuho International PLC | Mizuho Holdings | Active General Representation |
| UBS Global Asset Management | UBS AG | Active General Representation |
| Gartmore Global Partners | Nationwide Mutual Insurance | Inactive Client |
| Angelo Gordon & Co | Angelo Gordon & Co | Inactive Client |
| Wellington Management Company LLP | Wellington Management Company LLP | Inactive Client |
| MBIA Capital Management | MBIA Capital Management | Inactive Client |
| | MBIA Inc.. | Inactive Client |
| Sun Life Assurance of Canada | Sun Life Assurance of Canada | Inactive Client |
| CIGNA Retirement & Investment Management | Cigna Corp | Inactive Client |
| Lazard Asset Management | Lazard Feres & Co. | Inactive Client |
| Bank of Hawaii Investment Services | Bank of Hawaii Corp. | Inactive Client |
| | | |

**A414**

B-3

| Name of Entity Searched | Northwestern Corporation Disclosures<br>Name of Entity and/or Affiliate of Entity that is a Paul Hastings client | Status of client Representation |
|---|---|---|
| 8.45% Preferred Security Due 12/31/36 | | |
| Mellon HBV Alternative Strategies LLC | Mellon Financial Corp. | Inactive Client |
| Spear Leeds & Kellog | Goldman Sachs | Active General Representation |
| MW Post Advisory Group LLC | MW Post Advisory Group LLC | Inactive Client |
| | Metropolitan West Financial Inc. | Active General Representation |
| JP Morgan Securities - Asian | JP Morgan Securities -Asian | Inactive Client |
| | JP Morgan Chase & Co | Active General Representation |
| | | |
| 8.125% Preferred Security Due 9/30/25 | | |
| USBancorp Piper Jaffray Ventures | US Bancorp | Active General Representation |
| 7.20% Preferred Security Due 12/31/38 | | |
| Paloma Partners Management | Paloma Partners Management | Inactive Client |
| USBancorp Piper Jaffray Ventures | US Bancorp | Active General Representation |
| Synovus Trust Co | Synovus Trust Co | Inactive Client |
| Pacific Advisors Inc. | Pacific Global Investment Management Company | Inactive Client |
| 8.25% Preferred Security Due 12/15/31 | | |
| Paloma Partners Management | Paloma Partners Management | Inactive Client |
| 8.10% Preferred Security Due 1/15/32 | | |
| Paloma Partners Management | Paloma Partners Management | Inactive Client |
| MW Post Advisory Group LLC | MW Post Advisory Group LLC | Inactive Client |
| | Metropolitan West Financial Inc. | Inactive Client |
| USBancorp Piper Jaffray Ventures | US Bancorp | Active General Representation |
| Park National Bank | Park National Bank | Inactive Client |
| Section C: Current directors and officers | | |

**A415**
B-4

| Northwestern Corporation Disclosures | | |
|---|---|---|
| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a Paul Hastings client | Status of Client Representation |
| Eric Jacobsen | Northwestern Corp. | Active General Representation |
| Alan Dietrich | Northwestern Corp. | Active General Representation |
|  |  |  |
| **Section D, former directors/officers** |  |  |
|  |  |  |
| None. |  |  |
|  |  |  |
| **Section E:  Unsecured Creditors** |  |  |
|  |  |  |
| ABN Amro | ABN Amro Bank | Inactive Client |
|  | ABN Amro Holding NV | Inactive Client |
| Admirals Club | AMR Corporation | Active General Representation |
| AIG Life Insurance | American International Group | Inactive Client |
| Airborne Express | Airborne Express | Inactive Client |
|  | Airborne Inc. | Active General Representation |
| American Arbitration Association Inc. | American Arbitration Association Inc. | Active General Representation |
| American Bank Note Company | American Bank Note Company | Inactive Client |
|  | American Banknote Corp. | Inactive Client |
| American Express | American Express | Inactive Client |
| American Express Co. | American Express Co. | Inactive Client |
| Amerus Life | Amerus Life Insurance | Inactive Client |
|  | Amerus Group | Inactive Client |
| AON Consulting Inc. | Aon Corp. | Inactive Client |
| Aramark Uniform Services Inc. | Aramark Uniform Services Inc. | Inactive Client |
| Argus Leader | Gannett Co. | Inactive Client |
| Arthur Andersen LLP | Arthur Andersen LLP | Inactive Client |
|  | Andersen Worldwide Societe Cooperative | Inactive Client |
| AT&T | AT&T Corp. | Active General Representation |
| AT&T Teleconference Services | AT&T Corp. | Active General Representation |
| AT&T Wireless | AT&T Wireless | Inactive Client |
|  | AT&T Corp. | Active General Representation |
| Bankers Trust Company | Bankers Trust Company | Inactive Client |
|  | Deutsche Bank AG | Active General Representation |
| Bear, Stearns & Co. Inc. | Bear, Stearns & Co. Inc. | Inactive Client |

**A416**

B-5

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a Paul Hastings client | Status of Client Representation |
|---|---|---|
| | Bear Stearns Companies Inc. | Active General Representation |
| Bearing Point, Inc. | Bearing Point, Inc. | Inactive Client |
| Bearingpoint | Bearingpoint | Inactive Client |
| Blue Ocean Software Inc. | Intuit Inc. | Inactive Client |
| Budget Rent-A-Car | Budget Rent-A-Car | Inactive Client |
| | Cendant Corporation | Active General Representation |
| Business Week | McGraw Hill Companies Inc. | Active General Representation |
| California Division Of Collections | State of California | Active General Representation |
| California Franchise Tax Board | State of California | Active General Representation |
| California Secretary Of State | State of California | Active General Representation |
| CalPERS | CalPERS | Inactive Client |
| | State of California | Active General Representation |
| Cambridge Energy Research Assoc | Clayton, Dubilier & Rice Inc. | Inactive Client |
| CCBN.com Inc. | CCBN | Inactive Client |
| Cendant Financial Mobility Services | Cendant Corporation | Active General Representation |
| Chicago Title Insurance Company | Chicago Title Insurance Company | Inactive Client |
| | Fidelity National Financial Inc. | Active General Representation |
| CIBC World Markets Corp | Canadian Imperial Bank of Commerce | Active General Representation |
| CITY OF PHILADELPHIA | City of Philadelphia Board of Pensions | Inactive Client |
| Coca Cola Bottling Co. | Coca Cola Bottling Co. | Inactive Client |
| | Coca Cola Company | Active General Representation |
| Compuware Corporation | Compuware Corporation | Inactive Client |
| Corporate Express | Corporate Express | Inactive Client |
| | Buhrmann NV | Inactive Client |
| Credit Suisse First Boston | Credit Suisse First Boston | Inactive Client |
| | Credit Suisse Group | Active General Representation |
| Culligan Water Conditioning | Vivendi Universal SA | Active General Representation |
| Dell Computer Corporation | Dell Computer Corporation | Active General Representation |
| Dell Marketing LP | Dell Computer Corp. | Active General Representation |
| Deloitte & Touche | Deloitte & Touche | Inactive Client |

**A417**

B-6

| Northwestern Corporation Disclosures | | |
|---|---|---|
| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a Paul Hastings client | Status of Client Representation |
| | Deloitte Touche Tohmatsu International | Inactive Client |
| Deloitte & Touche Consulting | Deloitte Touche Tohmatsu International | Inactive Client |
| Deloitte & Touche LLP | Deloitte & Touche LLP | Inactive Client |
| Deloitte & Touche Tax | Deloitte Touche Tohmatsu International | Inactive Client |
| | Deloitte Touche Tohmatsu International | Inactive Client |
| Deloitte & Touche Tax Technologies | Deloitte Touche Tohmatsu International | Inactive Client |
| Deutsche Bank Trust Co. Americas | Deutsche Bank Trust Co. Americas | Inactive Client |
| | Deutsche Bank AG | Active General Representation |
| Dewey Ballantine LLP | DEWEY BALLANTINE LLP | Inactive Client |
| Diner's Club | Diner's Club | Inactive Client |
| DirecTV | DirecTV | Inactive Client |
| | General Motors Corporation | Active General Representation |
| Dow Jones & Company | Dow Jones & Company | Inactive Client |
| DRIP & TMSPP Wells Fargo Bank | Wells Fargo & Company Inc. | Active General Representation |
| DTC | The Depository Trust Company | Inactive Client |
| Duff & Phelps, LLC | Duff & Phelps, LLC | Inactive Client |
| | Phoenix Companies Inc. | Inactive Client |
| Dun & Bradstreet | Dun & Bradstreet | Inactive Client |
| | Dun & Bradstreet Corporation | Active General Representation |
| E*TRADE BUSINESS SOLUTIONS | E*Trade Group Inc. | Inactive Client |
| Edison Electric Institute | Edison Electric Institute | Active General Representation |
| Eric R. Jacobsen | Northwestern Corporation | Active General Representation |
| Ernst & Young LLP | Ernst & Young LLP | Active General Representation |
| Fed Payroll Taxes Wells Fargo Bank | Wells Fargo & Company Inc. | Active General Representation |
| Federal Express Corp | Federal Express Corp | Inactive Client |
| First National Bank | First National Bank | Inactive Client |
| Florida Department of State | State of Florida | Active General Representation |
| Forbes Magazine | Forbes Magazine | Inactive Client |
| Ford Motor Credit Company | Ford Motor Credit Company | Inactive Client |
| | Ford Motor Company | Active General Representation |

**A418**

B-7

| Northwestern Corporation Disclosures | | |
|---|---|---|
| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a Paul Hastings Client | Status of Client Representation |
| Fortune | AOL Time Warner Inc. | Active General Representation |
| Gavin Anderson & Company | Omnicom Group Inc. | Active General Representation |
| GE Corporate Card Services | General Electric Co. Inc. | Active General Representation |
| Georgia Department of Revenue | State of Georgia | Active General Representation |
| Gibson, Dunn & Crutcher LP | Gibson, Dunn & Crutcher LP | Inactive Client |
| GMAC | GMAC | Inactive Client |
| | General Motors Corp. | Active General Representation |
| Greenberg-Traurig | Greenberg-Traurig | Inactive Client |
| Hartford Life Insurance Company | Hartford Life Insurance Company | Inactive Client |
| | Hartford Financial Services Group Inc. | Inactive Client |
| Heidrick & Struggles Inc. | Heidrick & Struggles Inc. | Inactive Client |
| Hertz East Ridge Rentals | Hertz Company | Inactive Client |
| | Ford Motor Company | Active General Representation |
| IBM | IBM | Active General Representation |
| Idea Integration | MPS Group | Active General Representation |
| Ingram Micro | Ingram Micro | Inactive Client |
| Internal Revenue Service | United States of America | Active General Representation |
| John Stuart | John J. Stuart | Inactive Client |
| Jones, Day, Reavis & Pogue | Jones, Day, Reavis & Pogue | Inactive Client |
| JP Morgan Chase Bank | JP Morgan Chase Bank | |
| | JP Morgan Chase & Co. | Active General Representation |
| Junior Achievement | Junior Achievement League of Southern California | Pro-Bono Representation |
| Kelly Services Inc. | Kelly Services Inc. | Inactive Client |
| KPMG LLP | KPMG LLP | Inactive Client |
| Krispy Kreme Donuts | Great Circle Family Foods LLC | Active General Representation |
| Latham & Watkins | Latham & Watkins | Inactive Client |
| Lazard Freres & Co. LLC | Lazard Freres & Co. LLC | Inactive Client |
| Lexis Nexis | Reed Elsevier | Inactive Client |
| Lexis Nexis Mathew Bender | Reed Elsevier | Inactive Client |
| Lockton Companies | Lockton Companies | Inactive Client |
| Manpower | Manpower | Inactive Client |
| Marquette Bank | Wells Fargo & Co. | Active General Representation |

**A419**

| Northwestern Corporation Disclosures | | |
| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a Paul Hastings client | Status of Client Representation |
|---|---|---|
| Marsh | Marsh & McLennan | Active General Representation |
| Marsh USA INC | Marsh USA INC | Inactive Client |
|  | Marsh & McLennan | Active General Representation |
| MCI | MCI | Inactive Client |
| Mellon Leasing Corporation | Mellon Financial Corporation | Inactive Client |
| Mercedes Benz Credit Corp | DaimlerChrysler AG | Active General Representation |
| Mercer |  | Active General Representation |
| Merrill Communications, LLC. | Credit Suisse Group | Active General Representation |
| Merrill Corporation | Credit Suisse Group | Active General Representation |
| Merrill Lynch | Merrill Lynch | Active General Representation |
| Merry Maids | ServiceMaster | Inactive Client |
| Missouri Department of Revenue | Missouri Department of Revenue | Inactive Client |
| Missouri Director of Revenue | Missouri Director of Revenue | Inactive Client . |
| Missouri Secretary of State | Missouri Secretary of State | Inactive Client |
| Monitor Liability Managers, Inc. | WR Berkley | Active General Representation |
| Monster.com | TMP Worldwide | Inactive Client |
| Montana Power | Northwestern Corp. | Active General Representation |
| Motient | Motient | Inactive Client |
| New York Stock Exchange Inc. | New York Stock Exchange Inc. | Inactive Client |
| Nordea Bank | Nordea Bank | Active General Representation |
| Office Max Credit Plan | OfficeMax Inc. | Inactive Client |
| Pennsylvania Dept of Revenue | Commonwealth of Pennsylvania | Active General Representation |
| Pepsi Cola Company of S Falls | PepsiCo | Inactive Client |
| Pepsiamericas | PepsiCo | Active General Representation |
| Pepsi-Cola Bottling Co. | PepsiCo | Inactive Client |
| Pitney Bowes | Pitney Bowes | Inactive Client |
| Pitney Bowes Credit Corp | Pitney Bowes Credit Corp | Inactive Client |
|  | Pitney Bowes Inc. | Inactive Client |
| Pitney Bowes Inc. | Pitney Bowes Inc. | Inactive Client |
| Pitney Bowes Purchase Power | Pitney Bowes Inc. | Inactive Client |
| PR Newswire Inc. | PR Newswire Inc. | Inactive Client |
|  | United Business Media plc | Active General Representation |
| Prentice Hall | Prentice Hall | Inactive Client |

**A420**

ATL/967162.11