1  mere existence of a debtor-creditor relationship does not create a fiduciary duty. Only where a

2  "special relationship" exists between a creditor and debtor might a court find a fiduciary duty

3  which is premised on that special relationship, not on the creditor-debtor relationship. *See,*

4  Simmons Oil Corporation v. Holly Corporation, 258 Mont. 79, 84, 852 P. 2d 523, 526 (1993);

5  Diest v. Wachholz, 208 Mont. 207, 216, 678 P.2d 188, 193 (1984). Magten has not, nor can it,

6  allege any "special relationship" between itself and Clark Fork or NorthWestern. Thus, there is

7  no fiduciary duty between Magten and either Clark Fork or NorthWestern, and, *a fortiori*, there is

8  no fiduciary duty owed by the "officers" of Clark Fork to Magten.

   **III.   The Terms of the Relevant Documents on which Magten Bases
           Its Claim Expressly Permitted the Transfer of the Assets and
           Liabilities at Issue Here from the Limited Liability Company
           to NorthWestern.**

12  As Magten makes clear in its Complaint, it premises the alleged liability of the named

13  Defendants for a breach of fiduciary duty upon the terms of the QUIPS Trust Documents

14  originally created in 1996 when MPC issued the Junior Debentures and the Trust issued the

15  QUIPS.[4] After MPC created the Trust in 1996, MPC, the Trust, and Bank of New York (the

16  original trustee) entered into the Indenture For Unsecured Subordinate Debt Securities dates as

17  of November 1, 1996 relating to Trust Securities (the "Indenture").[5] The Indenture expressly

18  states that a transfer of assets conducted in accordance with section 1101 of the Indenture has the

19  affect of releasing the predecessor entity of all obligations under the Indenture or any

20  Outstanding Securities thereunder. *See* Indenture, Sec. 1101-1102. The Indenture controls the

21  rights of Magten and Magten should not be allowed to object to acts that were performed in

22  accordance with the terms of the Indenture. *cf.* In re Holiday Mart, Inc., 715 F.2d 430, 432 (9th

---

[4] As explained *infra*, these documents have subsequently been amended in accordance with the terms of those documents

[5] A complete copy of the Indenture is attached as Exhibit A.

**A476**

- 10

Cir. 1983) (recognizing that valid subordination agreements are normally enforced in accordance with their terms). Since the transfers of the Montana Utility Assets and Liabilities complied with Section 1101 of the Indenture and released the predecessor entities under Section 1102, Magten should not be heard to say that anyone violated any alleged duty when the transaction at issue was completed in accordance with the rights granted under the Indenture.

The Indenture allows property of the original entity to be transferred to "a Person organized and validly existing under the laws of the United States, any State thereof, or any other jurisdiction." *See* Indenture, Sec. 1101. The only other requirements in Section 1101 of the Indenture are that, immediately <u>after</u> the transaction, no Event of Default "shall have occurred and be continuing" and that the Trustee receive an "Officer's Certificate and an Opinion of Counsel, each stating all of the conditions for the transfer have been met." *See* Indenture, Sec. 1101(b)-(c). Magten has not alleged noncompliance with either of these remaining requirements. Conspicuously absent from the Indenture is any requirement of approval by the Indenture Trustee or a holder of an interest in the Indenture Trust prior to a transfer. *See* Indenture, Sec. 1101. Therefore, the transfer complained of here complied with section 1101, and the transfer was thus valid under the varying agreements upon which Magten references in its Complaint.

Further, the Second Supplemental Indenture and the Amendment to Guarantee Agreement[6], executed by the Trustee, NorthWestern and Clark Fork,[7] expressly reserve the right of Clark Fork to transfer substantially all of its assets to NorthWestern. The Second Supplemental Indenture clearly preserves the right of Clark Fork to transfer substantially all of its assets to another entity and clarifies that this right includes the right of Clark Fort to transfer

---

[6] The Guarantee Agreement and Amendment to Guarantee Agreement are attached as Exhibits B and C respectively.

[7] The Second Supplemental Indenture and Amendment to Guarantee Agreement were entered into on or about August 13, 2002. A complete copy of the Second Supplemental Indenture is attached as Exhibit D.

- 11

A477

substantially all of its assets to NorthWestern. *See* Second Supplemental Indenture Section 201. The language is also clear that such a transfer to NorthWestern would relieve Clark Fork of "its obligations under the QUIPS Debenture, the Indenture and hereunder as provided in Article Eleven of the Indenture." *See* Second Supplemental Indenture, Section 201.

At the same time that the Second Supplemental Indenture was executed, the Trustee, NorthWestern, and Clark Fork also executed an Amendment to Guarantee Agreement. The Amendment to Guarantee Agreement contains language similar to the Second Supplemental Indenture; it reserves the right of Clark Fork to transfer substantially all of its assets to another entity, and clarifies that this right includes the right of Clark Fork to transfer substantially all of its assets to NorthWestern. *See* Amendment to Guarantee Agreement, section 201. The section also makes clear that such a transfer can be accomplished in compliance with the Indenture. *See* Amendment to Guarantee Agreement, section 201.

These documents, executed by the Trustee, further confirm that a transfer of the Montana Utility Assets and Liabilities from Clark Fork to NorthWestern, in compliance with the Indenture, was permissible. The transfer of the Montana Utility Assets and Liabilities by Clark Fork to NorthWestern was allowed by the Indenture and confirmed in later documents executed by the Trustee; the transfers were within the rights granted to Clark Fork and NorthWestern by the Indenture and these other documents. Magten, therefore, can not now complain because NorthWestern and Clark Fork exercised their rights under documents approved by the Trustee of the QUIPS. Nor may Magten hold the "officers" of the limited liability company liable for a transfer of assets and liabilities permitted by those governing documents and approved by the Trustee.

**A478**

## CONCLUSION

As a matter of law, only NorthWestern, as the sole Member and Manager of Clark Fork, had the legal authority to transfer the Montana Utility Assets and Liabilities from its wholly owned subsidiary to itself. As a matter of law, the Defendants here were neither the Members nor the Managers of Clark Fork, and thus lacked the legal capacity to effectuate such transfer, and thus may not be held liable for the decisions or acts of the Members or Managers of Clark Fork.

Further, as a matter of law, the Defendants here owed no fiduciary duty to Magten, a general creditor of the limited liability company. As a matter of law, the only duties owed were the duties of loyalty and care, which duties were owed by the members and managers (here NorthWestern) to the limited liability company (here Clark Fork) and the members (here NorthWestern).

Finally, as a matter of law, NorthWestern was within its legal rights to transfer the Montana Utility Assets and Liabilities from its wholly owned subsidiary, Clark Fork, to itself pursuant to the terms and conditions of the QUIPS Trust Documents, and Magten has no standing to complain about such legal and valid transfer, and thus, Defendants may not be held liable for the legal and authorized actions of the Members or Managers of Clark Fork.

For these reasons, as a matter of law, Magten's Complaint must be dismissed with prejudice.

Dated this 9th day of July, 2004.

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

By _Kimberly Beatty_
Stanley T. Kaleczyc
Kimberly A. Beatty

Attorneys for Defendants

- 13
**A479**

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of July, 2004, a true and correct copy of the foregoing was mailed by first-class mail, postage prepaid, addressed to:

James H. Goetz
J. Devlan Geddes
Goetz, Gallik & Baldwin, P.C.
35 North Grand
P.O. Box 6580
Bozeman, MT 59771-6580

Bonnie Steingart
John W. Brewer
Fried, Frank, Harris, Shriver & Jacobsen, LLP
One New York Plaza
New York, NY 10004

*[signature: Jennifer J. Crabley]*

**A480**

**EXHIBIT G**

A481