1.11 "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Case and, to the extent of any reference under 28 U.S.C. § 157, the bankruptcy unit of such District Court under 28 U.S.C. § 151.

1.12 "Bankruptcy Rules" shall mean the following: (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under Section 2075 of Title 28 of the United States Code; (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of Title 28 of the United States Code; (iii) the applicable Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware; and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case or proceeding therein, as the case may be.

1.13 "Bar Date" shall mean the date(s) fixed by the order of the Bankruptcy Court dated October 10, 2003 (the "Bar Date Order") by which Persons asserting a Claim against the Debtor, and who are required to file a proof of claim on account of such Claim, must file a proof of claim or be forever barred from asserting a Claim against the Debtor or its property and from voting on this Plan and/or sharing in distributions hereunder as provided in the Bar Date Order.

1.14 "Business Day" shall mean any day other than a Saturday, Sunday or a day which in Wilmington, Delaware or Sioux Falls, South Dakota, is a legal holiday or any day designated in Bankruptcy Rule 9006(a) as a "legal holiday".

1.15 "Cash" shall mean cash, cash equivalents and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.16 "Causes of Action" shall mean, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims and demands whatsoever, whether known or unknown, in law, equity or otherwise.

1.17 "Chapter 11 Case" shall mean the Debtor's case under Chapter 11 of the Bankruptcy Code administered in the Bankruptcy Court.

1.18 "Claim" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right

payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.19 "Claimant's Jurisdiction" shall mean the jurisdiction in which the Claim was filed (if at all) against the Debtor in the court system prior to the Petition Date.

1.20 "Claims Agent" shall mean Kurtzman Carson Consultants, LLC, the claims agent appointed by order of the Bankruptcy Court dated September 15, 2003.

1.21 "Class" shall mean any category of Claims or Equity Interests which are substantially similar to each other as classified.

1.22 "Class Action" shall mean those certain consolidated actions:

(a) In re NorthWestern Corporation Securities Litigation (Case No. CIV 03-3049), a consolidated securities class action lawsuit pending in the United States District Court for the District of South Dakota before the Honorable Lawrence L. Piersol; and

(b) In re NorthWestern Corporation Derivative Litigation (Case No. 03-4091), a consolidated action of two derivative securities lawsuits pending in the United States District Court for the District of South Dakota before the Honorable Lawrence L. Piersol.

1.23 "Class Action Settlement Documents" shall mean the Stipulation of Settlement, memorandum of understanding and any agreements entered into in connection therewith or pursuant hereto or thereto and the orders of the District Court in the Class Action in furtherance thereof.

1.24 "Collateral" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

1.25 "Committee" shall mean any committee appointed in the Chapter 11 Case pursuant to Section 1102(a) of the Bankruptcy Code by the United States Trustee, as the membership of such committee is from time to time constituted and reconstituted.

1.26 "Confirmation Date" shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.27 "Confirmation Hearing" shall mean the hearing held by the Bankruptcy Court to consider confirmation of this Plan pursuant to Section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.28 "Confirmation Order" shall mean the order of the Bankruptcy Court confirming this Plan pursuant to the provisions of the Bankruptcy Code.

1.29 "Contingent Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court which was not filed in a sum certain, or which has not accrued and is dependent upon a future event that has not occurred or may never occur.

1.30 "Convenience Claim" shall mean an Unsecured Claim that is $20,000 or less and held by a Person that is not an Insider but excluding any Unsecured Note Claims, Trust Originated Preferred Securities (TOPrS) Claims and QUIPS Claims.

1.31 "Creditor" shall mean a Person that has a Claim against the Debtor that arose at the time of or before the Petition Date, or a Person that has a Claim against the Estate of the Debtor of a kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

1.32 "Creditors' Committee" shall mean the Official Committee of Unsecured Creditors appointed in this Chapter 11 Case.

1.33 "CSFB Facility" shall mean that certain Amended and Restated Credit Agreement, dated as of November 10, 2003, amending a pre-petition financing arrangement with Credit Suisse First Boston, acting through its Cayman Islands Branch, as administrative agent, such amended pre-petition financing arrangement approved by the Bankruptcy Court on or about December 15, 2003, as the same shall be amended or modified from time to time.

1.34 "CSFB Facility Montana First Mortgage Bonds" shall mean any outstanding First Mortgage Bonds, Credit Agreement (2002) Series, due 2006, issued under the Montana Indenture.

1.35 "CSFB Facility South Dakota First Mortgage Bonds" shall mean any New Mortgage Bonds, Credit Agreement (2002) Series, due 2006, issued under the South Dakota Indenture.

1.36 "CSFB Financing Claims" shall mean the Claims of Credit Suisse First Boston, as agent, under the CSFB Order and CSFB Financing Documents.

1.37 "CSFB Financing Documents" shall mean the CSFB Facility and all other documents and instruments evidencing and/or setting forth the terms of the financing arrangements under the CSFB Facility as approved by the CSFB Order, as the same shall be amended or modified from time to time.

1.38 "CSFB Lenders" shall mean the syndicate of financial institutions party to the CSFB Financing Documents.

1.39  "CSFB Order" shall mean that certain Final Order Granting Motion pursuant to 11 U.S.C. §§ 105, 362, 363 and 364 for Entry of an Order (A) Amending Pre-Petition Credit Facility, (B) Providing Protections under Section 364(c)(1), on a permanent basis, and (C) Granting Related Relief.

1.40  "Current Employee Claim" shall mean an Allowed Claim entitled to priority under Section 507 of the Bankruptcy Code and any Unsecured Claims for wages in excess of the Claims entitled to priority under Section 507 of the Bankruptcy Code.

1.41  "D&O Insurance Assignment" shall mean the transactions contemplated by the Insurance Assignment Agreement.

1.42  "D&O Insurance Contributor" shall mean the Debtor, former and current directors and officers and any non-debtor affiliate of the Debtor who makes a D&O Insurance Assignment.

1.43  "D&O Insurance Entity" shall mean any Person other than the Debtor and Reorganized Debtor including, but not limited to, any insurance company, broker, or guaranty association, that has issued or that has actual or potential liability, duties or obligations with respect to, any D&O Policies.

1.44  "D&O Insurance Entity Injunction" shall mean the injunction described in Section 6.9 of this Plan.

1.45  "D&O Insurance Rights" shall mean rights arising under or related to the D&O Policies.

1.46  "D&O Policies" shall mean the insurance policies, to the extent such policies and the proceeds of such policies are property of the Debtor's estate, held by the Debtor identified in Exhibit C to this Plan.  As reflected by Exhibit C, the Cornerstone Propane Partners, L.P. insurance policies are not being channeled to the D&O Trust.

1.47  "D&O Proceedings" shall mean any proceeding and/or claim against the Debtor or D&O Protected Party, currently existing or initiated prior to the Effective Date, which may be covered by the D&O Policies, including, but not limited to, the following:

(a)  In re Cornerstone Propane Partners LP Securities Litigation (Case No. 03-2522 MHP), a consolidated securities class action pending in the United States District Court for the Northern District of California before the Honorable Marilyn Hall Patel;

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | Case No. 03-12872 (CGC) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MEMORANDUM DECISION**

Scott D. Cousins
Victoria Watson Counihan
William E. Chipman, Jr.
Greenberg Traurig, LLP
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801

- and -

Jesse H. Austin, III
Karol K. Denniston
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, Suite 2400
Atlanta, GA 30308

Attorneys for the Debtor and
    Debtor-in-Possession

Neil B. Glassman
Charlene Davis
Eric M. Sutty
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

- and -

Steven K. Kortanek
Klehr, Harrison, Harvey, Branzburg
    & Ellers, LLP
919 North Market Street, Suite 1000
Wilmington, DE 19801

- and -

Allan M. McGarvey
McGarvey, Heberling, Sullivan &
    McGarvey
745 South Main
Kalispell, MT 59901

- and -

Edward R. Murphy
Datsopoulos, MacDonald & Lind, P.C.
201 W. Main Street, Suite 201
Missoula, MT 59802

Attorneys for the McGreevey Class
    Action Claimants

A911

Alan W. Kornberg
Margaret A. Phillips
Ephraim I. Diamond
Talia Gil
Paul, Weiss, Rifkind, Wharton &
    Garrison, LLP
1285 Avenue of the Americas
New York, NY 10019

Attorneys for the Official Committee of
    Unsecured Creditors

June 16, 2004

CASE, J.

Before the Court is the McGreevey Class Action Claimants' ("Class") Motion For an Order Granting Relief from the Automatic Stay to Commence an Adversary Proceeding Relating to Assets Upstreamed to the Debtor by Clark Fork and BlackFoot, LLC (the "Motion") (Docket No. 1163). NorthWestern Corporation filed an objection to the Motion which was joined by the Official Committee of Unsecured Creditors. After considering all relevant pleadings, oral argument heard on May 17, 2003, and for the reasons set forth below, the Motion is granted.

## BACKGROUND

On September 14, 2003 (the "Petition Date"), the Debtor filed a voluntary petition for relief under title 11 of the Bankruptcy Code. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its properties as debtor-in-possession.

The Debtor filed its initial disclosure statement and plan of reorganization on March 11, 2004. Numerous objections were filed by parties in interest. The Debtor filed an amended disclosure statement and a first amended plan of reorganization on May 14, 2004 and May 17, 2004, respectfully. After the hearing held on May, 17, 2004, the Court entered an Order on May 26, 2004 approving the Debtor's first amended disclosure statement. The confirmation hearing is currently scheduled for August 25, 2004.

By order dated October 10, 2003, the Court established January 15, 2004 (the "Bar Date") as the deadline for creditors to file proofs of claims with respect to claims that arose prior to the commencement of the bankruptcy case. On January 14, 2004, the McGreevey Claimants filed two proofs of claims (Claim Nos. 691 and 744).

3

Prior to the Petition Date, on or about August 16, 2002, the McGreevey Claimants filed an action against the Montana Power Company, pending in the Montana State Court.[1] The McGreevey class is a certified class of over 100,000 former shareholders of the former Montana Power Company. The Class asserts claims against the Montana Power Company that arise out of that company's sale of substantially all of its assets without shareholder approval. The basic structure of the transaction has been described in this Court's Memorandum Decision denying Comanche Park's motion for relief from stay of even date, and will not be repeated here.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

## DISCUSSION

Although 11 U.S.C. § 362(a) provides for an automatic stay of the commencement of an adversary proceeding against a debtor, the Bankruptcy Code provides that a party may seek relief from stay in certain circumstances. In relevant part § 362(d) states that:

> on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay --- (1) for cause . . .

11 U.S.C. § 362(d)(1).

McGreevey argues that cause exists to allow the Class to file an adversary proceeding for determination of the equitable interests in the Montana utility property on the grounds that it is a necessary prerequisite to any plan of reorganization or confirmation, and should be resolved in

---

[1] McCreevey, et al. v. Montana Power Company, et al., No. DV 01-141, Montana Second Judicial District Court.

the bankruptcy. In addition, McGreevey argues that the Debtor and/or any party in interest would not be prejudiced by such an adversary proceeding.

Unlike Comanche, the McGreevey class expressly asserted a fraudulent conveyance claim in its proof of claim. McGreevey further asserts that, pursuant to stipulation in the Montana State Court, it specifically preserved its right to assert a fraudulent conveyance claim at a later time. If that were the end of the analysis, then the McGreevey class would be entitled to stay relief just as Magten was. However, this Motion has a somewhat different twist. The Debtor asserts that, by virtue of an order entered in the state court litigation (pursuant to the stipulation referenced above) the McGreevey class is left only with an unsecured claim against NorthWestern and is barred from asserting a fraudulent conveyance claim that would return the assets to Clark Fork.

Both the stipulation, relied upon by McGreevey class, and the order, relied upon by NorthWestern, were entered in the Montana State Court litigation as a result of a motion by NorthWestern to be added an additional party defendant. The McGreevey class objected to the motion; following negotiations, NorthWestern filed a "Substitute Motion" which contained numerous stipulations and representations to the Court as part of the agreement of McGreevey class to withdraw its objection. Among the key provisions of the Substitute Motion are the following:

1. NorthWestern's stipulation and representation that it will be responsible for any judgment which might be entered in the proceedings against Clark Fork to the extent that Clark Fork might not have sufficient assets to satisfy such judgment;

5

**A915**

2. NorthWestern's stipulation that it had no present plans to spin off, merge or reorganize any of the utility business assets which are to be transferred from Clark Fork to NorthWestern as part of the "going flat" transaction;

3. NorthWestern's representation that it would not pledge, incur a security interest, lien, or assume additional indebtedness except as specifically set forth in the Substitute Motion;

4. NorthWestern's stipulation and representation that it will not take any action intentionally designed to frustrate the ability of the McGreevey plaintiffs to obtain the utility business assets if there is a judgment entered in the pending state court case;

5. And finally, the stipulation by NorthWestern and Clark Fork that the McGreevey plaintiffs retained all rights and remedies to thereafter challenge the transfer of assets from Clark Fork as a fraudulent transfer.

The Substitute Motion was filed November 15, 2002. On the same day, the "Order Adding NorthWestern Corporation as an Additional Party Defendant" was signed by the Montana District Court Judge. That order did not specifically recite, reference, or incorporate the stipulations and representations contained in the substitute motion. It did, however, contain the following language: "That as stipulated and agreed to by Northwestern Corporation, Northwestern Corporation shall be responsible for any judgment which might be entered in these proceedings against NorthWestern Energy, LLC to the extent that NorthWestern Energy, LLC might not have sufficient assets to satisfy such a judgment."

The McGreevey class asserts that, as a result of the Substitute Motion, NorthWestern specifically agreed that it retained the right to pursue the fraudulent conveyance case for which it

6

is now seeking relief from stay. Further, the McGreevey class asserts that it has an additional claim based upon NorthWestern's violations of the stipulations and representations made in the Substitute Motion. NorthWestern, on the other hand, asserts that, as a result of the order, all that the McGreevey class has now is an unsecured claim against Northwestern. In effect, NorthWestern argues that any separate claims that the McGreevey class may have had, including the right to bring a fraudulent conveyance claim, have been merged into a general claim against NorthWestern which can, and should, be resolved through the claims objection process, rather than through the proposed separate adversary proceeding.

NorthWestern's arguments on this point are too clever, by far. Its reading of the order would eviscerate the specifically negotiated stipulations and representations in the Substitute Motion. The fact that the order only references one of the stipulations - that is that NorthWestern would be responsible itself for any judgment amount - does not render the other stipulations nullities. This Court's reading of the Montana State Court documents is that the stipulations and representations made by NorthWestern are an essential part and predicate of the order allowing NorthWestern to be added as a party defendant. As such, they survive and may be relied upon by the McGreevey class.

## CONCLUSION

For the foregoing reasons, the Court will grant the McGreevey Motion. Counsel for the McGreevey class is to submit a form of order.

*/s/ Charles G. Case*
Charles G. Case II
United States Bankruptcy Judge

7

**A917**