# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------x

In re:                                              :
                                                    :      Chapter 11
NORTHWESTERN CORPORATION,                           :
                                                    :      Case No. 03-12872 (CGC)
        Debtor.                                    :
----------------------------------------------------:

MAGTEN ASSET MANAGEMENT                             :
CORP.                                               :
                                                    :
        Appellant,                                 :      Civil Action No. 04-1279 JJF
                                                    :
   v.                                           :
                                                    :
PAUL HASTINGS JANOFSKY &                            :
WALKER LLP,                                         :
                                                    :
        Appellee.                                  :
----------------------------------------------------x

## PAUL, HASTINGS, JANOFSKY & WALKER LLP'S
## BRIEF IN OPPOSITION TO APPEAL
## FROM ORDER DENYING MOTION TO DISQUALIFY

MORRIS, NICHOLS, ARSHT &
  TUNNELL
Robert J. Dehney, Esq.
Curtis S. Miller, Esq.
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

*Of Counsel:*
DAVIS POLK & WARDWELL
Dennis E. Glazer, Esq.
D. Scott Tucker, Esq.
Catherine Lifeso, Esq.
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................... 1

ISSUES PRESENTED ON APPEAL .................................................................. 4

STATEMENT OF FACTS ................................................................................... 5

MAGTEN'S MOTION TO DISQUALIFY PAUL HASTINGS ........................... 8

THE BANKRUPTCY COURT'S DECISION DENYING THE MOTION ......... 10

ARGUMENT ...................................................................................................... 14

POINT I:    Paul Hastings Did Not Hold or Represent
An Interest Adverse to the Debtor's Estate ........................... 16

POINT II:    Paul Hastings Is a Disinterested Person ................................. 19

POINT III:    The Bankruptcy Court Clearly Acted Within its
Discretion When It Concluded that Paul Hastings
Should Not Be Disqualified for Failing to Disclose a
Non-Existent Conflict .............................................................. 22

POINT IV:    Disqualifying Paul Hastings Would Not Have
Served The Interests of the Debtor or its Creditors ............... 25

CONCLUSION .................................................................................................. 29

## TABLE OF AUTHORITIES

### CASES

PAGE

In the Matter of 22 Acquisition Corp.,
    No. CIV.A. 03-3059, CIV.A. 02-907,
    2004 WL 870813 (E.D. Pa. Mar. 23, 2004)..........................................................23

In re AroChem Corp.,
    176 F.3d 610 (2d Cir. 1999)...................................................................1,17,20,21

In re BH&P Inc.,
    949 F.2d 1300 (3d Cir. 1991)................................................................14,20,26,27

In re Best Craft Gen. Contractor and Design Cabinet, Inc.,
    239 B.R. 462 (Bankr. E.D.N.Y. 1999)........................................................1,15,21

In re First Jersey Sec., Inc.,
    180 F.3d 504 (3d Cir. 1999).........................................................................15

Hoots v. Pennsylvania,
    703 F.2d 722 (3d Cir. 1983)..........................................................................23

In re Marvel,
    251 B.R. 869 (N.D. Cal. 2000)…..................................................................15

In re Marvel Entm't Group, Inc.,
    140 F.3d 463 (3d Cir. 1998)....................................................................14,15,27

In re NorthWestern Corp.,
    313 B.R. 595, 2004 WL 1895112 (Bankr. D. Del. Aug. 20, 2004) ......................8

In re Pappas,
    216 B.R. 87 (Bankr. D. Conn. 1997) ..............................................................15

Pressman-Gutman Co. v. First Union Nat'l Bank,
    No. CIV.A. 02-8442, 2004 WL 2743582 (E.D. Pa. Nov. 30, 2004) ...................15

In re Renninger Mason Contractors, Inc.,
    58 B.R. 516 (Bankr. E.D. Pa. 1986) ..............................................................20

In re Southern Kitchens,
    216 B.R. 819 (Bankr. D. Minn. 1998) ..............................................................1

In re WorldCom, Inc.,
311 B.R. 151 (Bankr. S.D.N.Y. 2004).......................................................................27

## STATUTES & RULES

PAGE

11 U.S.C. § 101(14).............................................................................. 14,19-21

11 U.S.C. § 327(a) ............................................................................... passim

11 U.S.C. § 328(a) .........................................................................................6

11 U.S.C. § 1107(b) ......................................................................................14

Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings"), by its undersigned counsel, hereby submits this brief in opposition to Magten Asset Management Corporation's ("Magten's") appeal from the Order, entered by the Honorable Charles G. Case, III, on July 23, 2004, denying Magten's motion to disqualify Paul Hastings from acting as counsel to NorthWestern Corporation, the debtor-in-possession ("NorthWestern" or "Debtor"), in the above captioned bankruptcy case.

### PRELIMINARY STATEMENT

Because motions to disqualify a debtor-in-possession's counsel can be used for tactical reasons, they "are frequently viewed with a certain amount of skepticism," In re Best Craft Gen. Contractor and Design Cabinet, Inc., 239 B.R. 462, 471 (Bankr. E.D.N.Y. 1999), and "courts must be sensitive to the possibility of strategic abuse of disqualification motions," In re AroChem Corp., 176 F.3d 610, 625 (2d Cir. 1999) (quoting In re Southern Kitchens, 216 B.R. 819, 828 (Bankr. D. Minn. 1998)).

Here, the danger of such "strategic abuse" was particularly apparent. Magten has been, and remains, a vocal opponent of NorthWestern's plan of reorganization, and the motion to disqualify Paul Hastings was a tactical ploy to further Magten's pecuniary interests – at the expense of the estate and its other creditors – by attempting to deprive NorthWestern of its choice of lead bankruptcy counsel shortly before that plan was originally scheduled to be confirmed.

NorthWestern has now emerged from bankruptcy and no longer needs the Bankruptcy Court's permission to retain its choice of counsel. Nevertheless, Magten is still challenging the Bankruptcy Court's decision to confirm NorthWestern's plan of reorganization on appeal, and it is still pursuing this appeal in an effort to deprive Paul Hastings of its fees for the work it performed for NorthWestern during its bankruptcy proceeding.

When viewed from this perspective, it is clear that the Bankruptcy Court's decision denying Magten's motion to disqualify Paul Hastings should be affirmed in its entirety for all of the following reasons.

First and most fundamentally, the motion to disqualify must be denied because Paul Hastings did not represent any party during NorthWestern's bankruptcy proceeding that had an actual or potential conflict with the Debtor. All of Magten's arguments relate to Paul Hastings' prior representation of the Debtor and one of its wholly owned subsidiaries, Clark Fork and Blackfoot, LLC ("Clark Fork"), in connection with a "going flat" transaction that was completed almost two years before Magten filed its motion to disqualify Paul Hastings and almost one year before Magten acquired any debt claims against NorthWestern. Moreover, Clark Fork itself has never objected to Paul Hastings' representation of its corporate parent NorthWestern in the bankruptcy case, and the only party that has ever alleged that Paul Hastings' prior representation of Clark Fork created a conflict – Magten – was never a creditor of Clark Fork.

Furthermore, the transaction at issue was not adverse to the interests of the Debtor. To the contrary, the transaction allegedly benefited the Debtor and the

Debtor's creditors. Moreover, the transaction, which involved the transfer of assets <u>and</u> liabilities to NorthWestern, did not harm Clark Fork. Clark Fork has not filed for bankruptcy, and has not filed any claim against the Debtor related to the transaction. Accordingly, even if Paul Hastings' prior representation of Clark Fork were somehow relevant, the Bankruptcy Court correctly concluded that it would not have disqualified Paul Hastings from representing the Debtor.

Magten's position ultimately boils down to the argument that Paul Hastings should have been disqualified, not because Paul Hastings had a conflict with NorthWestern or Clark Fork, but rather because Paul Hastings opposed Magten's efforts to defeat the Debtor's plan of reorganization and remove the assets subject to the "going flat" transaction from NorthWestern's estate. This argument, however, necessarily fails because <u>any</u> law firm representing the Debtor would have opposed Magten's efforts to defeat the Debtor's plan and to remove assets from the Debtor's estate. Furthermore, all of Magten's arguments are flawed because they assume the validity of Magten's claims in its adversary proceeding against the Debtor, which have not been proven and are entirely without merit.

Finally, the Bankruptcy Court's decision to deny Magten's motion should also be affirmed because disqualifying Paul Hastings would not have furthered the interests of the estate or its creditors. To the contrary, Magten's motion was designed to serve its own selfish pecuniary interests and to punish Paul Hastings for opposing its efforts to derail the Debtor's plan of reorganization.

3

## ISSUES PRESENTED ON APPEAL

1.     Whether the Bankruptcy Court's finding that Paul Hastings did not currently hold or represent an interest adverse to the Debtor's estate was clearly erroneous.

2.     Whether the Bankruptcy Court's finding that Paul Hastings was disinterested was clearly erroneous.

3.     Whether the Bankruptcy Court acted within its discretion when it denied Magten's motion to disqualify Paul Hastings for its alleged failure to disclose its prior representation of Clark Fork.

4.     Whether the Bankruptcy Court properly denied Magten's motion when granting the motion would not have furthered the interests of the estate or its creditors.

## STATEMENT OF FACTS

From December 1999 through November 2002, Paul Hastings represented NorthWestern in connection with its acquisition of certain electricity transmission and distribution assets of Montana Power Company. (A230-31.)  In connection with this transaction, the assets to be acquired by NorthWestern were transferred by Montana Power Company into a limited liability company, Montana Power LLC, which was renamed NorthWestern Energy LLC and is now known as Clark Fork and Black Foot, LLC ("Clark Fork").[1] (Id.)

After obtaining financing and regulatory approval for the transaction, NorthWestern acquired the limited liability company unit interests of Clark Fork from Montana Power Company in February 2002. (A231.)  Clark Fork then transferred the transmission and distribution assets formerly owned by Montana Power Company to NorthWestern in exchange for the assumption of certain related debt obligations by NorthWestern (the "going flat" transaction). (Id.) This "going flat" transaction was completed in November 2002. (Id.) Because it is common for a parent corporation to retain the same counsel to represent itself and a wholly owned subsidiary, NorthWestern retained Paul Hastings to represent both itself and Clark Fork in the "going flat" transaction. (Id.)

The debt obligations assumed by NorthWestern in connection with the "going flat" transaction included the obligation to pay certain debt securities which were subsequently purchased by Magten.  Magten purchased these debt

---

[1] For the sake of clarity, Montana Power LLC, NorthWestern Energy LLC and Clark Fork and Black Foot, LLC are all referenced herein collectively as "Clark Fork" since these are simply three different names for the same legal entity at different points in time.

securities well after the "going flat" transaction had been completed and the above-referenced debt obligations had been transferred to and assumed by NorthWestern.  As a result, while Magten is a creditor of NorthWestern, Magten is not (and has never been) a creditor of Clark Fork.  (A595.)

On September 14, 2003, NorthWestern filed for bankruptcy protection and assumed the responsibilities of a debtor-in-possession.  Pursuant to §§ 327(a) and 328(a) of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), NorthWestern applied for and obtained the approval of the Bankruptcy Court to retain Paul Hastings as its lead bankruptcy counsel.  (A1000-1066.)  In connection with that application, Paul Hastings filed an affidavit with the Bankruptcy Court on September 17, 2003 which affirmed that Paul Hastings was a "disinterested person" and disclosed Paul Hastings' connections with various parties-in-interest.  (A375-429.)  Paul Hastings subsequently filed several supplemental affidavits with the Bankruptcy Court, including affidavits discussing its representation of Clark Fork.  (A228-35, A635-38, A1067-1078.)

Magten incorrectly suggests that Paul Hastings must have realized from the inception of NorthWestern's bankruptcy case that its representation of Clark Fork would be a major issue.  As the Bankruptcy Court held, Magten's motion for disqualification is based on "a novel theory that does not withstand scrutiny" (A596), and this is not a case where earlier disclosure "would have revealed an actual conflict."  (A595.)

While Magten also asserts that there is no "genuine dispute" that "Clark Fork was rendered insolvent due to the transfer" (Magten Br. 7), this too is

incorrect. Unlike the Debtor, Clark Fork did not file for bankruptcy protection and is not insolvent. To the contrary, the majority of Clark Fork's debts were validly assumed by NorthWestern, and Clark Fork was released from liability, in compliance with the terms of the operative indentures. Any remaining claims of Clark Fork's creditors not assumed by NorthWestern have been, and continue to be, paid as they come due.

During NorthWestern's bankruptcy case, Magten was a vocal opponent of NorthWestern's reorganization efforts, and it remains one even after the confirmation of the plan. Magten was initially appointed to serve on the Official Committee of Unsecured Creditors of NorthWestern, but was removed from that committee by the United States Trustee after it became clear that its interests were not aligned with NorthWestern's unsecured creditors. (See A573.) This was because, in an effort to secure a greater recovery for itself, Magten began to advance the novel and unsupported theory that the assets and liabilities transferred to NorthWestern in the "going flat" transaction should be transferred out of the Debtor's estate to Clark Fork.[2] While Magten believes that this would be to its advantage, it was clearly adverse to the interests of NorthWestern and its creditors.

On April 16, 2004, Magten and Law Debenture Trust Company of New York ("Law Debenture") filed a complaint against NorthWestern based on its allegation that the "going flat" transaction was a fraudulent transfer (the

---

[2] See A597 (describing "[t]he gist of the fraudulent conveyance claim asserted in [the adversary proceeding against NorthWestern] is that the utility assets should be returned to Clark Fork to be shared only by its creditors, rather than be subject to claims of NorthWestern's other creditors whose debts did not originate with Montana Power").

"adversary proceeding"). (See A815.) On May 19, 2004, Magten broadened the scope of this dispute by suing Paul Hastings in Montana state court alleging, inter alia, that Paul Hastings aided and abetted NorthWestern in connection with the alleged fraudulent transfer. (A34-55.)[3]

Magten and Law Debenture's adversary proceeding against NorthWestern is currently pending before the Bankruptcy Court, which has held that the plaintiffs' claims will fail unless they can prove that the release that extinguished Clark Fork's obligation to pay the debts at issue was invalid because NorthWestern engaged in actual fraud or was involved in a fraudulent scheme. See In re NorthWestern Corp., 313 B.R. 595, 2004 WL 1895112 (Bankr. D. Del. Aug. 20, 2004). Magten's case against Paul Hastings was removed to federal court and transferred to this Court. On October 27, 2004, Paul Hastings filed a motion to stay Magten's case against Paul Hastings pending resolution of Magten's adversary proceeding against NorthWestern.

<u>MAGTEN'S MOTION TO DISQUALIFY PAUL HASTINGS</u>

Approximately one month after suing Paul Hastings in Montana state court, Magten filed a motion to disqualify Paul Hastings from representing NorthWestern in the bankruptcy proceeding on the grounds that: (1) Paul

---

[3] Paul Hastings originally represented NorthWestern in connection with Magten's adversary proceeding. Shortly after Magten sued Paul Hastings, Paul Hastings, with the consent of its client, withdrew from representing NorthWestern in that adversary proceeding and was replaced by another firm. (See A340-41.) Contrary to Magten's assertions, NorthWestern's and Paul Hastings' decision that NorthWestern should be represented by a different law firm in that proceeding was not an admission that Paul Hastings has a conflict with NorthWestern or Clark Fork. To the contrary, this decision reflected the fact that certain partners and employees of Paul Hastings are potential fact witnesses in that proceeding, and that Magten was determined to drag Paul Hastings into the litigation as a party.

Hastings did not disclose the fact that it had represented Clark Fork in the "going flat" transaction; and (2) Paul Hastings' representation of NorthWestern and Clark Fork in that transaction created a conflict of interest. (A593.)

On July 15, 2004, the Bankruptcy Court held a hearing on the motion. During the hearing, the Bankruptcy Court heard argument from both Magten's counsel and Paul Hastings' counsel, and also heard from other interested parties. The U.S. Trustee's counsel stated on the record that the "United States Trustee certainly does not support the motion in any way" (A567) and went on to explain to the Bankruptcy Court that Paul Hastings had not taken any steps to conceal its representation of Clark Fork. (Id.) To the contrary, the U.S. Trustee's counsel recounted how Paul Hastings "fully explained exactly how the acquisition of the Montana Power assets came down," and stated that "I had never even looked at it as a potential for a conflict, or even a representation of what was a truly separate entity." (Id.)

While Magten has incorrectly attempted to characterize the U.S. Trustee's counsel's statements at the July 15, 2004 hearing as evidence of Paul Hastings' culpability and "secret discussions" with the U.S. Trustee, the transcript of the July 15, 2004 hearing indicates that these discussions were part of the U.S. Trustee's effort to learn about NorthWestern during the early days of the bankruptcy, and that these discussions were inconsistent with the conclusion that Paul Hastings deliberately withheld this information. (A594.)

Magten's motion to disqualify Paul Hastings was also opposed by the Official Committee of Unsecured Creditors ("Creditors' Committee") and

9

NorthWestern. The Creditors' Committee explained that the motion was "a litigation tactic, pure and simple," and that from its perspective "[t]he only conflict of interest that existed in this case was the one that Magten had when it got on the Creditors' Committee; brought the adversary proceedings, seeking to disgorge from the estate its princip[al] assets; refused to get off the Creditors' Committee when that conflict was brought to its attention, and had to be removed by the U.S. Trustee." (A572-73.) NorthWestern further explained the motion was essentially an effort "to throw a bomb on the eve of confirmation – a wrench in the engine, as the train is pulling out of the station." (A574.)

### THE BANKRUPTCY COURT'S DECISION DENYING THE MOTION

On July 23, 2004, the Bankruptcy Court issued a Memorandum Decision denying the motion. (See A590-A597.) The Bankruptcy Court noted that "[t]his motion has been brought solely by Magten; no other creditor has joined" (A595), and found that "neither the Debtor nor Clark Fork, the two parties directly involved, have complained." (A596.) The Bankruptcy Court also found that "Magten was never a creditor of Clark Fork." (A592.) Rather, Magten "only became a creditor of the Debtor [NorthWestern] after the Debtor assumed the liability associated with the junior subordinated debenture" transferred from Clark Fork to NorthWestern during the "going flat" transaction. (A595.) As a result, the Bankruptcy Court found that "Magten is not only not a party affected by the transaction – such as Clark Fork itself – but it was also not an indirect party at the time that the transaction took pace. Thus, its relationship to the transaction for the purposes of asserting a disqualification motion is tenuous at best." (A595-A596.)

While the Bankruptcy Court acknowledged that the initial disclosure by Paul Hastings concerning its representation of NorthWestern and Clark Fork had been inadequate (A594), the Bankruptcy Court found that Paul Hastings had filed a supplemental affidavit concerning this matter and "[t]herefore, as of this time, the matter has been fully and adequately disclosed." (A595-A596.) The Bankruptcy Court also found that "the attorney for the United States Trustee advised the Court and other parties that he had thoroughly vetted the dual representation with Paul Hastings at the beginning of the case and that he was satisfied with the explanations given." (A594.) Far from regarding these as "secret discussions" designed to conceal Paul Hastings' representation of Clark Fork (as Magten now seeks to portray them), the Bankruptcy Court specifically found that "these representations by the attorney for the United States Trustee support the conclusion that there was no conscious effort by Paul Hastings to conceal its dual representation." (Id.)

Having made these factual findings, the Bankruptcy Court rejected Magten's argument that Paul Hastings should be disqualified for inadequate disclosure. The Bankruptcy Court held that "[i]nadequate disclosure does not mandate disqualification of counsel," and that "the appropriate remedy is left to the broad discretion of the court." (A595.) The Bankruptcy Court declined to exercise its discretion to disqualify Paul Hasting for several reasons, including the fact that Paul Hastings had made corrective disclosures; the Bankruptcy Court's finding that there had been "a lack of intent to conceal"; and the Bankruptcy

11

Court's conclusion that "this is not a case where full disclosure would have revealed an actual conflict." (A595.)

The Bankruptcy Court then proceeded to hold that Paul Hastings' prior dual representation of NorthWestern and Clark Fork did not mean that it was not "disinterested" or that it represented "an interest adverse to estate." (Id.) Having carefully analyzed Magten's argument "that Paul Hastings must be disqualified for its dual representation because Magten, as a third party who claims to have been injured by the transaction, is now challenging it" (A596), the Bankruptcy Court held that it did not withstand scrutiny for several independent reasons.

First, the Bankruptcy Court held that that "even if third party creditors were injured by the transaction, Magten was not one of them." (Id.) Second, the Bankruptcy Court held that "there is no present proof of injury," and "[t]hus, there is no basis for asserting actual injury that may create an actual conflict." (Id.) Third, the Bankruptcy Court held that "even if actual injury were eventually proven, the fact that Paul Hastings represented the injured party, Clark Fork, would not necessarily mean that it holds an interest adverse to this estate or any class of its creditors." (Id.) This is because "Clark Fork is not a debtor; therefore, the test is not whether Paul Hastings holds an interest adverse to a class of Clark Fork's creditors but whether it holds an interest adverse to a class of NorthWestern's creditors." (Id.)

On August 2, 2004, Magten filed a motion for reconsideration of the Bankruptcy Court's decision to deny Magten's motion to disqualify Paul Hastings. (See A653.) The purported basis for the motion was that Paul Hastings

had incorrectly described Clark Fork as having a Board of Directors which had approved the "going flat" transaction. In fact, as Paul Hastings itself later clarified, Clark Fork is a limited liability company organized under Montana law, and thus does not have a board of directors. (A636.) Rather, pursuant to Montana law, it is governed by its sole member and manager, NorthWestern. (Id.) The Bankruptcy Court denied this motion on August 19, 2004 and held that "while the statement was in fact incorrect, it would not have had a determinative bearing on the outcome of the motion." (A653-54.) The Bankruptcy Court also held that "there were several other separate and sufficient grounds for denying the motion" and that "no manifest injustice has occurred." (A654.)

## ARGUMENT

The standard of review applicable to Bankruptcy Court orders on appeal is well established. The Court must apply a "clearly erroneous" standard when reviewing the Bankruptcy Court's factual findings, and the Bankruptcy Court's conclusions of law are reviewed de novo. In re BH&P, Inc., 949 F.2d 1300, 1305-06 (3d Cir. 1991).

The legal standard for the retention of professionals by a debtor-in-possession is set forth in Bankruptcy Code section 327(a), which provides that:

> Except as otherwise provided in this section, the trustee, with the court's approval may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title. 11 U.S.C. § 327(a) (emphasis added).

The term "disinterested person" is defined by Bankruptcy Code section 101(14), in relevant part, as a person who "is not a creditor, an equity security holder, or an insider" and who:

> does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason. 11 U.S.C. § 101(14)(A)-(E) (emphasis added).[4]

The Third Circuit has interpreted this standard as prohibiting a law firm from representing the bankruptcy estate if the law firm has an actual conflict with the estate. See In re Marvel Entm't Group, Inc., 140 F.3d 463, 476-77 (3d Cir.

---

[4] The Bankruptcy Code also provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

1998); <u>In re First Jersey Sec., Inc.</u>, 180 F.3d 504, 509 (3d Cir. 1999). However, where the conflict is a potential – as opposed to an actual – conflict, the Third Circuit has held that the district court has "wide discretion in deciding whether to approve the appointment of a law firm." <u>In re Marvel Entm't Group, Inc.</u>, 140 F.3d at 477; <u>see also</u> <u>In re First Jersey Sec., Inc.</u>, 180 F.3d at 509. The Third Circuit also has held that the mere "appearance of impropriety" in the absence of an actual or potential conflict is not enough to warrant disqualification. <u>In re Marvel Entm't Group, Inc.</u>, 140 F.3d at 477; <u>see also</u> <u>In re First Jersey Sec., Inc.</u>, 180 F.3d at 509 (holding that § 327(a) precludes disqualification "based solely on an appearance of conflict").[5]

The legal standard regarding the Bankruptcy Court's authority to address disclosure is similarly pragmatic. "Courts have broad discretion in determining whether non-disclosure merits a law firm's disqualification." <u>In re Best Craft Gen. Contractor and Design Cabinet, Inc.</u>, 239 B.R. at 470, and, even where disclosure is incomplete, it is clear that "the court may excuse an attorney's initial failure to disclose." <u>Id.</u> (quoting <u>In re Pappas</u>, 216 B.R. 87, 93 (Bankr. D. Conn. 1997)). This approach to resolving disclosure issues is particularly appropriate since the Bankruptcy Court is unquestionably in the best position to determine

---

[5] In an apparent effort to tilt the Court's perception of the legal standard in its favor, Magten has quoted <u>Pressman-Gutman Co., Inc. v. First Union Nat'l Bank</u>, No. CIV.A. 02-8442, 2004 WL 2743582 (E.D. Pa. Nov. 30, 2004), for the proposition that "doubts as to the existence of a conflict of interest should be resolved in favor of disqualification." (Magten Br. at 19.) This quotation is misleading because it omits the first part of the sentence which states that "[t]he party seeking to disqualify opposing counsel must <u>clearly demonstrate</u> that continued representation would be impermissible." <u>Id.</u> at *3 (emphasis added); <u>see also</u> <u>In re Marvel</u>, 251 B.R. 869, 871 (Bankr. N.D. Cal. 2000) (party seeking disqualification "carries a heavy burden and must satisfy a high standard of proof"). As a result, the conflict between this case and the Third Circuit's interpretation of the standard in the Bankruptcy Code is more apparent than real, and, in any event, the latter is clearly the controlling law regarding Magten's motion to disqualify Paul Hastings.

whether any party knowingly omitted a material fact, whether the alleged failure to disclose has been cured, and what remedy, if any, would be appropriate given the stage of the proceeding and the interests of the court, debtor and its creditors.

As demonstrated below, the Bankruptcy Court's decision denying Magten's motion to disqualify Paul Hastings should be affirmed because: (1) the Bankruptcy Court correctly found Paul Hastings did not hold an interest adverse to the estate, (2) the Bankruptcy Court correctly found that Paul Hastings was a disinterested person, (3) the Bankruptcy Court acted well within its discretion when it concluded that Paul Hastings should not be disqualified for failing to disclose the alleged "conflict" earlier, and (4) disqualifying Paul Hastings from representing NorthWestern would not have furthered the interests of the estate or its creditors.

POINT I

Paul Hastings Did Not Hold or Represent
An Interest Adverse to the Debtor's Estate

The rules concerning the retention of professionals by the debtor-in-possession are ultimately designed to protect the estate and the integrity of the bankruptcy process. Accordingly, the first issue under Bankruptcy Code § 327(a) is whether Paul Hastings "hold[s] or represent[s] an interest adverse to the estate." As the Bankruptcy Court concluded, the answer to this question is clearly no.

Paul Hastings was not a creditor of NorthWestern's estate when it filed for bankruptcy and thus did not hold an interest adverse to the estate. In addition, Paul Hastings did not represent any interest that is actually or potentially adverse to Northwestern during the bankruptcy proceedings.

16

Unable to dispute these points, Magten has resorted to trying to create the appearance of a conflict based on NorthWestern's prior representation of Clark Fork in connection with the "going flat" transaction. This attempt to create a conflict where none exists is fundamentally flawed for four separate reasons.

First, as the Bankruptcy Court recognized, the relevant entity for the purposes of determining whether Paul Hastings "hold[s] or represent[s] an interest adverse to the estate" is NorthWestern – not Clark Fork. (See A595-A596.) Clark Fork has not filed for bankruptcy, and therefore the relevant issue is not whether Paul Hastings holds or represents an interest adverse to Clark Fork or its creditors. (Id.) This point alone is fatal to Magten's argument because the "going flat" transaction allegedly benefited NorthWestern's estate.

Second, the relevant period for determining whether a professional "hold[s] or represent[s] an interest adverse to the estate" is the present, not the past. See In re AroChem Corp., 176 F.3d at 623 (holding that "section 327(a) is phrased in the present tense," and thus "counsel will be disqualified under section 327(a) only if it presently 'hold[s] or represent[s] an interest adverse to the estate'") (emphasis added). Accordingly, Paul Hastings' prior representation of Clark Fork before the bankruptcy in connection with the "going flat" transaction would not disqualify Paul Hastings from representing NorthWestern during its bankruptcy.

Third, there was no conflict between representing NorthWestern's and Clark Fork's interests in the "going flat" transaction that would warrant Paul Hastings' disqualification. Clark Fork is a wholly owned subsidiary of

17

NorthWestern, and NorthWestern has the legal right to control Clark Fork as its sole member and manager. (A636-37.) Clark Fork has never asserted a claim against NorthWestern concerning the "going flat" transaction, and its sole member and manager, NorthWestern, approved Paul Hastings' representation of both entities. (A637.) While Magten has asserted that there is no "genuine dispute" that "Clark Fork was rendered insolvent due to the transfer" (Magten Br. at 7), this assertion is not correct. Unlike NorthWestern, Clark Fork did not file for bankruptcy. Clark Fork is not insolvent, and is continuing to pay its bills when they are due. Indeed, the reason that the "going flat" transaction did not render Clark Fork insolvent is the same reason that Magten was never a creditor of Clark Fork – i.e., because Clark Fork transferred both the assets and the liabilities that it received from Montana Power Company to NorthWestern. (See A592, A595.)

Fourth, Magten does not have standing to use the alleged conflict with Clark Fork to disqualify Paul Hastings from representing NorthWestern. The Bankruptcy Court correctly found that "Magten was not a creditor of Clark Fork at the time the transaction took place," and therefore "even if third party creditors were injured by the transaction, Magten was not one of them." (A595-A596.) Magten has responded on appeal by arguing that the Bankruptcy Court incorrectly concluded that it did not have any standing "as one of the Debtor's creditors" to challenge Paul Hastings' retention by NorthWestern. (Magten Br. at 20.) Magten's response misconstrues the Bankruptcy Court's point. The Bankruptcy Court did not hold, as Magten suggests, that Magten lacked standing to challenge

18

Paul Hastings' retention by NorthWestern in its capacity as a creditor of NorthWestern. Rather, the Bankruptcy Court's holding was that Magten did not have standing to bring such a challenge in "its non-existent capacity as a creditor of Clark Fork." (A597.) This holding was clearly correct since Magten did not acquire its interest in the securities at issue until many months after the transaction at issue had been completed.

Furthermore, the Bankruptcy Court's point goes beyond the threshold issue of standing to the more fundamental issue of whether there was ever a conflict in the first place. The representation of both sides to a single transaction simply did not pose a conflict under the applicable ethical rules or the Bankruptcy Code when the parties consented to be represented by the same law firm and no one who was affected by the transaction at the time has ever objected.

POINT II

Paul Hastings Is a Disinterested Person

Since it is clear that Paul Hastings did not hold or represent an interest adverse to NorthWestern's estate, the only remaining question under § 327(a) is whether Paul Hastings was a "disinterested person" as that term is used in the statute. See 11 U.S.C. § 327(a). The legal standard for determining whether a professional is a "disinterested person" turns on whether it has "an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders." 11 U.S.C. § 101(14)(E). Significantly, this legal standard differs from the standard contained in Bankruptcy Code § 327(a) in that the "disinterested person" standard focuses on the professional's personal interests, as

19

opposed to the interests of those they are hired to represent.  In re AroChem Corp., 176 F.3d at 626 ("We believe that section 101(14)(E) is properly read 'to implicate only the personal interests' of the professional whose disinterestedness is under consideration."); In re BH&P, Inc., 949 F.2d at 1310 & n. 12 (same).

Paul Hastings did not have any personal interest materially adverse to the interests of NorthWestern's estate or any class of NorthWestern's creditors.  Paul Hastings was not a creditor of the estate, and its only role in the bankruptcy proceeding was as a paid professional hired to represent NorthWestern's interests as the debtor-in-possession.  Furthermore, only one creditor – Magten – has ever objected to Paul Hastings' representation of NorthWestern and even that objection was not based on Paul Hastings' personal interests, but rather Paul Hastings' prior professional representation of Clark Fork and NorthWestern.

As a result, Magten's argument ultimately boils down to the position that Paul Hastings is not "disinterested" because Paul Hastings, at its client's direction, has opposed Magten's efforts to defeat NorthWestern's plan of reorganization and remove assets from its estate.  See In re Renninger Mason Contractors, Inc., 58 B.R. 516, 518 (Bankr. E.D. Pa. 1986) (rejecting a creditor's argument that the trustee's counsel should be disqualified for failing to provide "detached, independent, disinterested advice" because the argument "actually boils down to the contention that [the trustee's counsel] might be too aggressive

20

in its representation of the trustee"); accord In re Best Craft Gen. Contractor and Design Cabinet, Inc., 239 B.R. at 470.[6]

This position is flawed because it is based upon Paul Hastings' professional representation of its client's interests.[7] Furthermore, any law firm retained by NorthWestern would have opposed an effort to defeat its client's plan of reorganization and to remove assets from its estate, and it is clear that representing a debtor-in-possession's estate in a dispute with a creditor does not destroy the debtor-in-possession's counsel "disinterested" status. See In re AroChem Corp., 176 F.3d at 629 (holding counsel's representation of the debtor in litigation against a creditor did not destroy counsel's "disinterested" status).[8] Moreover, the plain language of the statutory test for disinterestedness refers to classes of creditors and equity holders, and thus does not include a dispute with an

---

[6] Magten argues on appeal that Paul Hastings was not "disinterested" under 11 U.S.C. § 101(14) because it allegedly had a "bias or predisposition" against Magten's assertion that the "going flat" transaction was a fraudulent transfer. (See Magten Br. at 22-24.) The cases Magten cites in support of this argument are all clearly distinguishable on their facts because they involved situations where the alleged "bias" was against the interests of the bankruptcy estate. Here, by contrast, the alleged "bias" was to defend the estate against an effort to remove its assets.

[7] Magten attempts to overcome this problem by asserting that "Paul Hastings was clearly interested in the transaction at issue. After all, it designed, structured and implemented the Fraudulent Transfer." (Magten Br. at 9; see also id. at 22 (alleging that "Paul Hastings held a material interest adverse to a class of creditors because of its proprietary view of the Fraudulent Transfer").) This argument is meritless. First, Paul Hastings' role in advising its clients concerning the "going flat" transaction was a purely professional, as opposed to personal, interest. Second, Paul Hastings provided professional legal advice concerning the "going flat" transaction, but its clients designed, structured and implemented the transaction, and, third, Magten has never proven that the "going flat" transaction was a fraudulent transfer.

[8] As the Second Circuit has explained, if counsel's representation of the debtor in a dispute with a creditor meant counsel was not "disinterested," "the trustee never could hire counsel to bring claims against a class of creditors because, once retained, such counsel would 'represent,' and therefore 'have,' an interest materially adverse to the interest of a class of creditors, i.e., the estate's interests against the creditors. The anomalous result would be that all such counsel automatically would be 'interested' and thus disqualified." In re AroChem Corp., 176 F.3d at 629.

individual creditor such as Magten.  (See A595 ("This motion [to disqualify] has been brought solely by Magten; no other creditor has joined.").)

Similarly, Magten cannot use its lawsuit against Paul Hastings to destroy Paul Hastings' status as a "disinterested" professional.  Magten's claims against Paul Hastings have not been proven, and no other creditor has joined that lawsuit.[9]  Furthermore, any other result would create a dangerous precedent, since disgruntled creditors, like Magten, could disqualify a Debtor's choice of counsel simply by filing a lawsuit against the Debtor's chosen firm.

POINT III

The Bankruptcy Court Clearly Acted Within its Discretion
When It Concluded that Paul Hastings Should Not Be
Disqualified for Failing to Disclose a Non-Existent Conflict

In a related attempt to disqualify Paul Hastings, Magten argues on appeal that the Bankruptcy Court abused its discretion when it declined to disqualify Paul Hastings because its initial affidavits failed to disclose its representation of the Debtor and Clark Fork in connection with the "going flat" transaction.

The Bankruptcy Court has "broad discretion" to assess and address disclosure issues related to the retention of professionals, and can exercise that discretion to refrain from disqualifying a professional where the failure to disclose has been cured, was not material and would not have served the best interests of the estate.  (See supra p. 15-16.)  In this case, the Bankruptcy Court clearly acted within that "broad discretion" for all of the following reasons:

---

[9] While Law Debenture is co-plaintiff in Magten's adversary proceeding against NorthWestern, Magten is the only plaintiff suing Paul Hastings.  (See A34.)

- The Bankruptcy Court found that any alleged failure on the part of Paul Hastings to disclose its representation of NorthWestern and Clark Fork in connection with the "going flat" transaction had been cured by Paul Hastings. (See supra p. 11.)

- The Bankruptcy Court found that Paul Hastings did not intentionally deceive the Court. (See supra p. 11.)

- The Bankruptcy Court found that "this is not a case where full disclosure would have revealed an actual conflict." (See supra p. 11-12.)

Any one of these three reasons would be sufficient to support the conclusion that the Bankruptcy Court acted within its broad discretion in refusing to disqualify Paul Hastings from representing NorthWestern, and collectively they show that the Bankruptcy Court decision was clearly correct. Furthermore, since the first two reasons represent factual findings, they are entitled to deference on appeal unless they are clearly erroneous, which they are not. See, e.g., In the Matter of 22 Acquisition Corp., Nos. CIV.A. 03-3059, CIV.A. 02-907, 2004 WL 870813, at *2 (E.D. Pa. Mar. 23, 2004) ("The factual determination of the bankruptcy court will be accepted unless that determination is either 'completely devoid of minimum evidentiary support' or 'bears no rational relationship to the supportive evidentiary data.'" (quoting Hoots v. Pennsylvania, 703 F.2d 722, 725 (3d Cir. 1983)).

In an effort to convince this Court that the Bankruptcy Court abused its discretion in failing to disqualify Paul Hastings on this basis, Magten has gone to great lengths to mischaracterize and distort the record supporting the Bankruptcy Court's decision. These efforts are reflected in two misleading themes that run throughout Magten's brief. The first of these misleading themes is the allegation that Paul Hastings "unilaterally obtain[ed] a secret advisory opinion from the

23

United States Trustee's office." (Magten Br. at 3.) This mischaracterizes the record by portraying Paul Hastings' discussions with the U.S. Trustee as evidence that Paul Hastings was concerned about the potential for a conflict and therefore was attempting to conceal it. As the Bankruptcy Court concluded, this suggestion is baseless. In fact, the U.S. Trustee's counsel's statement at the hearing on this motion clearly shows that these discussions were simply part of the U.S. Trustee's counsel's efforts to learn about NorthWestern during the early days of the bankruptcy. Furthermore, the U.S. Trustee's counsel noted that, far from offering an advisory opinion, he "never even looked at it as a potential for a conflict, or even as a representation of what was a truly separate entity." (See supra p. 9.)[10]

The second misleading theme running throughout Magten's brief is based on the suggestion that Paul Hastings knew from the outset that its representation of Clark Fork in the "going flat" transaction would become a major issue in the bankruptcy proceeding, and thus its failure to disclose this information must have been intentional. (See, e.g., Magten Br. at 16 (alleging that "it is simply not possible that experienced, sophisticated bankruptcy counsel like Paul Hastings accidentally or inadvertently failed to make the disclosure[]" at issue).) This suggestion was rejected by the Bankruptcy Court and is belied by the record.

---

[10] On appeal, Magten attempts to generate suspicion about those discussions by asserting that "no one actually knows what was said during those secret discussions or in what context." (Magten Br. at 3.) This assertion conspicuously ignores the fact that the U.S. Trustee's counsel – a disinterested third party – clearly knew what was said, and in what context, and he recounted the conversation to the Bankruptcy Court at the hearing on Magten's motion. Furthermore, if Magten genuinely felt that the Bankruptcy Court should have obtained additional information concerning those discussions, it should have made that request at the hearing.

As the Bankruptcy Court concluded, Magten's motion to disqualify Paul Hastings was based on a "novel theory that does not withstand scrutiny." (A596.) Specifically, Magten is arguing that Paul Hastings had a conflict with the Debtor and its creditors, not because Paul Hastings represented the Debtor in a transaction designed to remove assets from the Debtor's estate, but rather because it represented the Debtor in a transaction that allegedly benefited the Debtor. This theory is all the more novel because it is being asserted, not by the counter party that was allegedly injured by the transaction, but rather by a third party that was not, and never has been, a creditor of the allegedly injured party. Under these circumstances, Paul Hastings cannot be criticized for having failed to anticipate Magten's novel theory, and the Bankruptcy Court's decision to reject Magten's argument that Paul Hastings must have intended to deceive the Bankruptcy Court was certainly not clearly erroneous.[11]

POINT IV

Disqualifying Paul Hastings Would Not Have
Served The Interests of the Debtor or its Creditors

Even in cases where a professional clearly has a potential conflict of interest, such as when the same counsel represents multiple related bankruptcy estates, the Third Circuit has rejected bright-line rules, and has instead followed

---

[11] Magten attempts to bolster its suggestion that Paul Hastings must have known that its prior representation of Clark Fork in the "going flat" transaction would be a significant issue by repeatedly describing that transaction as being at the "heart of this case." However, the statement quoted by Magten was made on February 10, 2005, almost a year and half after NorthWestern filed for bankruptcy and long after Magten had filed its fraudulent transfer claim against NorthWestern. As such, the statement cannot reasonably be construed as evidence that Paul Hastings must have anticipated that someone might move to disqualify it from representing NorthWestern because it represented Clark Fork and NorthWestern in the "going flat" transaction.

an approach which gives the bankruptcy court discretion to evaluate each case on its facts, taking all circumstances into account. See In re BH & P Inc., 949 F.2d at 1315.  When all of the circumstances related to Magten's motion are taken into account, it is clear that, even if Paul Hastings had a potential conflict (which it did not), the Bankruptcy Court's decision to deny Magten's motion was correct because disqualifying Paul Hastings would not have served the interests of NorthWestern or its creditors.    Indeed, NorthWestern and the Creditors' Committee both opposed the motion.  (See supra p. 9-10.)

Magten attempts to avoid this obstacle by arguing that Paul Hastings had an actual, as opposed to a potential, conflict because it was allegedly likely to "favor the interests of its client NorthWestern, or certain of its creditors over creditors of the estate with competing interests."  (Magten Br. at 25.)  This argument, however, ignores the Bankruptcy Court's point which is that Magten's so-called "competing interests" are themselves wholly unproven and highly speculative.  As the Bankruptcy Court found:  "there is no present proof of injury in any event; while that issue has yet been asserted in the Adversary Proceeding No.  04-53324, captioned *Magten Asset Management Corporation v. NorthWestern Corporation*, pending before this Court, no such finding has been made.  Thus, there is no basis for asserting actual injury that may create an actual conflict."  (A596 (emphasis added).)  Since Magten's "novel theory" is itself based on wholly unwarranted and unproven legal and factual premises, it could not have created anything more than a potential conflict, and thus the Bankruptcy Court clearly had ample discretion to deny Magten's motion.  See In re BH&P,

Inc., 949 F.2d at 1316-17 (holding that "denomination of a conflict as 'potential' or 'actual' and the decision concerning whether to disqualify a professional based on that determination in situations not yet rising to the level of an actual conflict are matters committed to the bankruptcy court's sound exercise of discretion"); accord In re Marvel Entm't Group, Inc., 140 F.3d at 476-77.

Furthermore, Magten's so-called "competing interests" undermine rather than support its position. Magten was a creditor of NorthWestern, and was never a creditor of Clark Fork. Accordingly, its so-called "competing interest" is not that it was harmed by the "going flat" transaction, but rather that it is trying to use highly aggressive litigation tactics – including its adversary proceeding against NorthWestern, its continued opposition to NorthWestern's plan of reorganization, its lawsuit against Paul Hastings, and its motion to disqualify Paul Hastings from representing NorthWestern – to obtain a greater recovery for itself than NorthWestern's other unsecured creditors. Where, as here, a motion to disqualify is part of a litigation strategy designed to promote the movant's financial interest as opposed to the interests of the estate, the motion to disqualify should be denied. See In re WorldCom, Inc., 311 B.R. 151, 168 (Bankr. S.D.N.Y. 2004) (denying a motion to disqualify KPMG from serving as the Debtor's auditor where the Court found, inter alia, that the motion had been filed "in connection with a litigation strategy that served [the movants'] own pecuniary interest").

By contrast, disqualifying Paul Hastings would have only served to complicate and delay the approval of the Debtor's proposed plan of reorganization by forcing the Debtor to replace its primary bankruptcy counsel in

27

the middle of the confirmation process.[12]  While such a result may have served Magten's interest as an opponent to the plan, it would not have served the interests of NorthWestern or NorthWestern's other creditors.  See id. (denying motion for disqualification filed on the eve of confirmation because, inter alia, "it was potentially disruptive to the Debtor's reorganization [and] the interests of all creditors . . . would have been hindered by the disqualification, as emergence could have been delayed without any foreseeable benefit to the Debtors' estates").

Furthermore, disqualifying Paul Hastings now, after NorthWestern's plan of reorganization has been approved, would be even more counterproductive.  Magten has effectively conceded that the only reason that this appeal is not moot is because Magten is continuing to attempt to deprive Paul Hastings of its fees for advising NorthWestern during the bankruptcy.[13]  Depriving Paul Hastings of those fees, which were earned in good faith and have been approved by the Bankruptcy Court, would not advance the interests of the estate or its creditors in any meaningful way.  Furthermore, it would send a dangerous signal to Magten and other aggressive creditors who may be tempted to use future motions to disqualify as a means to further their individual financial interests at the expense of the estate and the bankruptcy process.

---

[12] As the Bankruptcy Court noted when it denied Magten's motion, NorthWestern's plan of reorganization was then scheduled for confirmation on August 25, 2004.  (A593.)

[13] The Bankruptcy Court approved Paul Hastings' final fee application over Magten's objection and Magten has also appealed that ruling.

CONCLUSION

For all of the reasons set forth above, Paul Hastings respectfully requests that the Court affirm the Order denying Magten's motion to disqualify Paul Hastings from its employment as counsel to the Debtor.


Dated:  August 5, 2005

MORRIS, NICHOLS, ARSHT &
TUNNELL

Robert J. Denney, Esq. (No. 3578)
Curtis S. Miller, Esq. (No. 4583)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200


Dennis E. Glazer, Esq.
D. Scott Tucker, Esq.
Catherine Lifeso, Esq.
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

Counsel to Paul, Hastings, Janofsky
& Walker LLP

29