IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | Case No. 03-12872 (CGC) |
| | ) | |
| Debtor. | ) | |
| MAGTEN ASSET MANAGEMENT CORP. | ) | |
| | ) | |
| Appellant, | ) | Civil Action No. 04-1279 JJF |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL HASTINGS JANOFSKY & WALKER LLP, | ) | |
| | ) | |
| Appellee. | ) | |

**REPLY BRIEF ON APPEAL OF
<u>MAGTEN ASSET MANAGEMENT CORPORATION</u>**

SMITH, KATZENSTEIN
& FURLOW LLP
David A. Jenkins (I.D. No. 932)
Kathleen M. Miller (I.D. 2898)
800 Delaware Avenue [19801]
Post Office Box 410
Wilmington, DE 19899-0410
Phone: (302) 652-8400

STORCH AMINI & MUNVES PC
*of counsel*

Bijan Amini, Esq.
Avery Samet, Esq.
2 Grand Central Tower
New York, New York 10017
Phone: (212) 490-4100

August 15, 2005

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A.   Paul Hastings' Disclosures Were Deliberately False And Misleading . . . . . . . . . 2

   B.   Paul Hastings Merely Adopts The Bankruptcy Court's Flawed Reasoning . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   I.   Magten Has Standing to Challenge Paul Hastings' Representation . . . . . . . . . . . . 7

   II.   Paul Hastings Is Not a Disinterested Person Because Of Its Materially Adverse Interest To The QUIPs Holders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   III.   Paul Hastings Should Have Been Disqualified Because it Held an Actual Conflict of Interest Under Precedent in This Circuit . . . . . . . . . . . . . . . . . . . . . . 10

   IV.   Paul Hastings Should Have Been Disqualified For Its Disclosure Failures . . . . 13

   V.   Paul Hastings' Intentional Nine Month Concealment Is Not A Mitigating Circumstance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

**CASES**                                                                                                    **Page(s)**

AroChem Corp.,
176 F.3d 610 (2d Cir. 1999) .................................................... 11

Baron & Budd, P.C. v. Unsecured Asbestos Clmnts. Comm.,
321 B.R. 147 (D.N.J. 2005) .................................................. 4, 7, 8

In re: BH & P, Inc.,
949 F.2d 1300 (3d Cir. 1991) ...................................... 6, 10, 11, 12, 14

In re: Envirodyne Indus., Inc.,
150 B.R. 1008 (Bankr. N.D. Ill. 1993), .............................. 5, 9, 10, 13

In re: Git-N-Go, Inc.,
321 B.R. 54 (Bankr. N.D. Okla. 2004) .......................... 5, 9, 10, 12, 13

In re: Granite Sheet Metal Works, Inc.,
159 B.R. 840 (Bankr. S.D. Ill. 1993) ............................................ 15

In re: Pillowtex, Inc.,
304 F.3d 246 (3d Cir. 2002) ................................................. 10, 11


**STATUTES**

11 U.S.C. §327(a) ............................................................. 9, 13
Fed. R. Bankr. P. 2014(a) ......................................................... 13

Appellant Magten Asset Management Corporation ("Magten"), by its undersigned counsel, hereby submits this reply brief in further support of its appeal from the decision (the "Decision")(A590-597) entered on July 23, 2004, by the Honorable Charles G. Case, III, denying Magten's motion to disqualify Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings") as counsel to Northwestern Corp., the debtor-in-possession in the above-captioned bankruptcy proceeding ("Northwestern" or the "Debtor"), and the August 19, 2004 order denying Magten's Motion for Reconsideration (the "Order").

## Preliminary Statement

As recent experience has taught us, the cover up is worse than the crime. In this case, it is difficult to tell which is worse. Paul Hastings' failure, in its retention application, to disclose its dual role in the Fraudulent Transfer that tainted its view of the transaction at the "heart of this [Bankruptcy] case" was bad enough. But its documented conduct in deliberately obfuscating its dual role until more than nine months after its initial, admittedly "inadequate" disclosures until it finally was ordered to do so, A332-336, is even worse. Paul Hastings has littered the path to this appeal with intentional omissions and outright fabrications. In opposing this appeal, Paul Hastings has been unable to resist adding still more. In so doing, Paul Hastings has provided the best evidence of why absolute candor from law firms seeking to be employed as Debtor's counsel is mandated by the Bankruptcy Code to ensure the integrity of the bankruptcy process, especially where such firms have represented the Debtor in pre-petition transactions that are likely to be challenged in the Bankruptcy. That is also why the Bankruptcy Court's Order denying Magten's motion to disqualify should be reversed and Paul Hastings should be disqualified as the Debtor's counsel.

A. **Paul Hastings' Disclosures Were Deliberately False And Misleading**

On this appeal, Paul Hastings asserts that it could not "have realized from the inception of NorthWestern's bankruptcy case that its representation of Clark Fork would be a major issue," Resp. Br.[1] at 6. The following undisputed facts, which Paul Hastings omitted from statutorily mandated disclosures until ordered to supplement them, refused to acknowledge or misrepresented to the Court, tell another story.

- Paul Hastings was the principal architect of the Fraudulent Transfer and represented both NorthWestern and Clark Fork in the disputed transaction, (A231, ¶ 11);

- The Fraudulent Transfer aided an admittedly insolvent NorthWestern and rendered Clark Fork insolvent. On this appeal, Paul Hastings contends that "Clark Fork is not insolvent, and is continuing to pay its bills when they are due," Resp. Br. at 18. Paul Hastings told the Bankruptcy Court just the opposite: the only reason Clark Fork paid its bills as they came due was because the Debtor paid Fork $270,000 per month under a Cost Support Agreement that required NorthWestern to make such payments only if Clark Fork *could not pay its debts as they came due*. (A460-61) On September 14, 2003, Paul Hastings represented to the Bankruptcy Court that Northwestern had been making payments to Clark Fork since January 1, 2003 because Clark Fork was unable to pay its debt in the ordinary course of business, and applied on the Debtor's behalf for permission to continue such payments post-filing to keep Clark Fork from having to file for bankruptcy. (A460-61); see also Opening Br.[2] at 7, n.3.

- Paul Hastings' September 17, 2003 retention application disclosed its "connections with various parties-in-interest," Resp. Br. at 6, but not its dual role as counsel for Northwestern and Clark Fork in the Fraudulent Transfer, (A375-429);

- In that same retention application, Paul Hastings falsely described the McGreevey lawsuit as only related to events that occurred *prior to* Paul Hastings' representation of the Debtor in connection with "the acquisition and disposition of certain [utility] assets *in late 2001*," (Initial Affidavit, A380, at ¶ 13), when, in fact, the McGreevey lawsuit (like Magten's)

---

[1] "Resp. Br." refers to Paul, Hastings, Janofsky & Walker LLP's Brief in Opposition to Appeal From Order Denying Motion to Disqualify dated August 5, 2005.

[2] "Opening Br." refers to the Opening Brief on Appeal of Magten Asset Management Corp. dated June 28, 2005.

{10005798.DOC}   2

sought to avoid those very transactions (McGreevey Decision, A915-A917);[3]

- Paul Hastings actually started its representation of the Debtor *in 1999* in connection with the potential sale of the very same utility assets "at the heart of this case," (July Affidavit, A230 at ¶ 8), *not in 2001* as sworn to in the Initial Affidavit, (Initial Affidavit, A380, at ¶ 13);

- Paul Hastings ignored Magten's March 30 and April 16, 2004 letters demanding that it confirm Magten's belief that Paul Hastings had represented both sides to the Fraudulent Transfer, (A5-8);

- In response to Magten's May 11, 2004 statement pursuant to 11 U.S.C. § 328(c) that Paul Hastings was no longer disinterested because of its role in the Fraudulent Transfer, Paul Hastings still refused to acknowledge its dual role on both sides of the Fraudulent Transfer, (A10-21);

- One week later, Paul Hastings filed a Second Supplemental Disclosure to announce it would withdraw as Debtor's counsel in Magten's fraudulent conveyance adversary proceeding, A144-150, but still did not disclose its dual role in the Fraudulent Transfer;

- At a June 2004 hearing on Magten's 328(c) statement, Paul Hastings finally admitted its role representing both sides of the Fraudulent Transfer and as principal draftsman, and submitted a third Supplemental Affidavit making the disclosure, *but only after the Court directed it to do so*, A332-336;

- In July 2004, in opposition to Magten's motion to disqualify, Paul Hastings hints, in a footnote no less, that it had made "full and complete disclosure" "from the U.S. Trustee's standpoint. . . ." without revealing what was supposedly actually disclosed or when, A187 at n.9.

- At the hearing on the disqualification motion, Paul Hastings gives not one word of detail about the substance of the alleged secret disclosure to the United States Trustee's office beyond what is set forth in its cryptic footnote. The attorney appearing for the United States Trustee's office

---

[3] Paul Hastings incorrectly suggests that Magten was the lone "vocal opponent" of the Fraudulent Transfer, and the only creditor to "advance the novel and unsupported theory that the assets and liabilities transferred from NorthWestern in the 'going flat' transaction should be transferred out of the Debtor's estate to Clark Fork." Resp. Br. at 7. Paul Hastings neglects to mention that at least two other lawsuits were commenced advancing the same "novel" theory and seeking the same result. In fact, in the <u>McGreevey</u> lawsuit, Paul Hastings signed a stipulation on NorthWestern's behalf preserving the plaintiffs' rights to avoid the Fraudulent Transfer if the plaintiffs agreed to forego injunctive relief that would have prevented the Transfer from taking place. A911-917. Paul Hastings later tried to renege on that promise, to no avail. <u>Id.</u>

{10005798.DOC}    3

> clearly accepts Paul Hastings' version. See A567. He further admits he "never even looked at it as a potential for a conflict." Id.
>
> - In the July Affidavit, submitted in opposition to Magten's disqualification motion, Paul Hastings finally admits to the dual representation, but swears under oath that it received *the consent of the boards of directors of both Clark Fork and NorthWestern*, A231, ¶ 11;
>
> - Just a few weeks later, after the disqualification motion was decided in Paul Hastings' favor, and again upon more specific questioning from Magten, *Paul Hastings admits that, in fact, Clark Fork never had any board of directors to begin with so its recent sworn statement that the "non-existent" Clark Fork board had consented to its dual representation was patently false*; and
>
> - In response to Magten's motion for reconsideration, and again on this appeal, Paul Hastings advances yet another story, contending instead "[Clark Fork's] sole member and manager, Northwestern, approved Paul Hastings' representation of both entities." Resp. Br. at 18. Even if it had consented, the Debtor's consent is meaningless as a matter of law and Paul Hastings knows it. Opening Br. at 14, n.7.

Paul Hastings chalks these omissions and misrepresentations up to "inadvertent" statements, see e.g., A-629, or it does not address them at all. In fact, Paul Hastings has yet to offer an explanation for any of its "inadvertent," sworn statements or omissions, including how it could have been mistaken about having received a non-existent Clark Fork Board's consent to the firm's dual representation. A178, July Affidavit, A231 at ¶ 11. One "inadvertent" statement might be a mistake, maybe even two. But a seasoned practitioner such as Paul Hastings does not make this many "mistakes."

**B.    Paul Hastings Merely Adopts The Bankruptcy Court's Flawed Reasoning**

In support of this appeal, Magten has already demonstrated that: (1) a creditor has standing to object on any grounds to the retention of Debtor's counsel where its pecuniary interests will be impacted by the Confirmation Plan, citing Baron & Budd, P.C. v. Unsecured Asbestos Clmnts. Comm., 321 B.R. 147 (D.N.J. 2005), Opening Br. at 20-

21; (2) proposed Debtor's counsel may not come to its representation of the estate as Paul Hastings did, having prejudged the validity of pre-petition transactions in which it represented the Debtor or any related entities requiring scrutiny in the bankruptcy case because its connection to the underlying transactions might cause it to favor one group of the estate's creditors over another, citing In re Git-N-Go, Inc., 321 B.R. 54 (Bankr. N.D. Okla. 2004) and In re Envirodyne Indus., Inc., 150 B.R. 1008 (Bankr. N.D. Ill. 1993), Opening Br. at 23-25; (3) Paul Hastings should have been disqualified for its lack of disinterestedness and actual conflict, Opening Br. at 22-26; and (4) the Bankruptcy Court abused its discretion when it did not disqualify Paul Hastings for its deliberate lack of candor in its retention application, especially in light of its intentional conduct in the ensuing nine months, Opening Br. at 26-29.

Unable to address any of these arguments or distinguish the sound cases on which they rest, Paul Hastings merely parrots the Bankruptcy Court's flawed analysis, which, in most instances, is bereft of any case law. See, e.g., Resp. Br. at 18-19, 25. 26. Instead, Paul Hastings also attempts to turn this appeal into a referendum on Magten's motivation for challenging its retention to deflect attention from its "mistakes" and flagrant disregard of its disclosure obligations to the Court and the estate's creditors that transcend alleged, secret disclosures to the United States Trustee's office. Paul Hastings presumptuously posits that "because it is common for a parent corporation to retain the same counsel to represent itself and a wholly owned subsidiary," there is nothing out of the ordinary about how it has conducted itself that could conceivably present cause for concern. It is hardly "common" for two insolvent corporations with fiduciary duties extending to different creditors to retain the same counsel when transferring over $1 billion worth of assets for

no cash consideration. Moreover, regardless of how "common" it is for Paul Hastings to conduct itself in this way, once Northwestern filed for bankruptcy, Paul Hastings had a responsibility to step aside and let disinterested counsel step in to examine all of the Debtor's pre-petition activities with a skeptical eye. Instead, it chose to hide its role from the estate's creditors and proceed with its representation of the Debtor so it could defend its handiwork.

As a matter of clear and controlling law in this Circuit, which again, Paul Hastings makes no attempt to distinguish, "secret" disclosures to the United States Trustee's office can never substitute, much less excuse, a professional who seeks employment as Debtor's counsel from its statutory duties of full candor. All Paul Hastings has to say on the matter is that Magten has 'mischaracterized' the U.S. Trustee's attorney's comments at the disqualification hearing. The transcript of the hearing, which Magten quotes far more completely than Paul Hastings, speaks for itself. See Opening Br. at 16, citing A567. In any event, the In re BH&P court left no room for doubt that, under the circumstances Paul Hastings alleges here, its "disclosure" to the United States Trustee's office in no way excused its original omission. Quite the contrary, it compelled disclosure to the court and the estate's creditors. Like the Bankruptcy Court below, Paul Hastings suggests that its secret disclosure "is indicative of a lack of intent to conceal," Resp. Br. at 11; see also (A595), again citing no cases. Magten respectfully submits that, in light of the foregoing, nothing could be further from the truth.

{10005798.DOC}                                6

# ARGUMENT

I.  **Magten Has Standing to Challenge Paul Hastings' Representation**

In its opening brief, Magten demonstrated that the Bankruptcy Court's analysis of whether it has standing to challenge Paul Hastings' retention is flawed, relying principally on Baron & Budd, P.C. v. Unsecured Asbestos Clmnts. Comm. Opening Br. at 20-21. As an initial matter, the Bankruptcy Court's analysis, to which Paul Hastings adheres to the exclusion of citing any legal authority, Resp. Br. at 18-19, improperly hinges on viewing Magten in its "non-existent capacity as a creditor of Clark Fork." Id. at 19. In fact, the only capacity in which Magten moved to disqualify Paul Hastings was as a creditor of the Debtor's estate. A76-89. And there appears to be no dispute that Magten is a creditor of the Debtor's estate. Resp. Br. at 18; A596.

Magten has further demonstrated that standing is particularly appropriate in this case because of the consequences of counsel's conflict of interest on the provisions of a confirmed plan. Baron & Budd, 321 B.R. at 161. In response, Paul Hastings does not dispute that Magten has "a pecuniary interest that is directly or adversely affected" by the Plan. See Id. at 158.

In fact, Paul Hastings does not even try to distinguish Baron & Budd (much less cite it) because it knows it cannot.[4] By that tacit admission, Paul Hastings also concedes that the proper inquiry when looking at standing to challenge an aspect of a law firm's employment is to look at whether the moving party "allege[s] an injury in fact".

Applied to these circumstances, "injury in fact" means at least "the unfairness of a plan which binds [it] contractually and which directly impacts [its] financial interests,

---

[4] Nor does it affirmatively cite any cases as it parrots the Bankruptcy Court's Order because the Court cited no cases to support its findings. See Resp. Br. at 18; A595-597.

{10005798.DOC}                                    7

unfairness which is traceable to conflicts of interest among [] counsel… and their bearing on the Plan's classification system." Baron & Budd, 321 B.R. at 161 (emphasis added). The record demonstrates that Magten has done precisely that. See Opening Br. at 20-21; Resp. Br. 26; A596. Thus, both the Bankruptcy Court and Paul Hastings are wrong as a matter of law when they insist that Magten had to prove "injury in fact." See Resp. Br. 26; A596. As such, Magten has standing to challenge Paul Hastings' retention. See Baron & Budd, P.C. v. Unsecured Asbestos Clmnts. Comm., 321 B.R. 147, 160 (D.N.J. 2005) (Where a party is a party-in-interest with respect to plan confirmation, they have standing to assert any issue which has a direct bearing on the good faith and fairness of the plan's classification system).

## II. Paul Hastings Is Not a Disinterested Person Because Of Its Materially Adverse Interest To The QUIPS Holders

The Bankruptcy Code clearly defines disinterestedness as having no "interest materially adverse to the interest of the estate or to any class of creditors." 11 U.S.C. §327(a)(emphasis supplied). In response to the unambiguous language of the statute, Paul Hastings argues that it held no adverse interest to a *class* of creditors because only *Magten* moved to disqualify. Def Br. at 21-22. The idea that the definition of a class of creditors depends on who brings the motion to disqualify has no support in case law and Paul Hastings, like the Bankruptcy Court, cites none. That argument, like many others, also lacks credibility since the Confirmation Plan, which Paul Hastings drafted, places the QUIPS Holders, including Magten, into their own separate class of creditors.

Seeking to deflect the matter, Paul Hastings fails to address in any meaningful way the authority Magten cites on this point.[5] <u>Compare</u> Opening Br. at 23-24, <u>citing</u>, <u>In re Git-N-Go, Inc.</u> 321 B.R. 54 (Bankr. N.D.Okla. 2004)(citing 11 U.S.C. § 327(a), disqualifying a law firm which represented both the parent and subsidiary on a transaction involving the vast majority of the estate's assets) and <u>Envirodyne Indus., Inc.</u>, 150 B.R. 1008, 1016 (Bankr. N.D. Ill. 1993) (disqualifying law firm which had represented both parent and subsidiary to leveraged buy out forming the basis of claims against the estate) <u>with</u> Resp. Br. at 21. Paul Hastings claims instead that these cases "are all clearly distinguishable on their facts because they involved situations where the alleged 'bias' was <u>against</u> the interests of the bankruptcy estate. Here, by contrast, the alleged 'bias' was to defend the estate against an effort to remove its assets." Resp. Br. at 21. Paul Hastings is wrong.

The fact that tension exists among the estate's creditors is not unusual. In this case, it is strictly a result of the way Paul Hastings structured the Fraudulent Transfer – a result Paul Hastings' own making which it should have considered in the Debtor's plan of reorganization but did not (except, of course, to the QUIPS Holders' detriment). That is why the Debtor's general bankruptcy counsel has to come to its employment with an untainted view of the transactions to preserve the integrity of the bankruptcy process. <u>In re Git-N-Go</u>, 321 B.R. at 59 ("At this early stage in the case, it already appears it will be essential for the debtor in possession <u>and its counsel</u> to scrutinize the interrelationship of and recent transactions between the Debtor [and related entities] to fulfill their fiduciary duties") (emphasis added). The Debtor's general bankruptcy counsel's obligations run to

---

[5] Paul Hastings does take a passing stab at distinguishing these cases in a footnote, but does not bother even mentioning them by name. Resp. Br. at 21.

{10005798.DOC}                                                                     9

all of the estate's creditors – including the QUIPS Holders and Clark Fork creditors which find themselves creditors of the estate by virtue of the Fraudulent Transfer. Nor can it favor one class of creditors over another. And that is just what Paul Hastings did here.

Seeking to deflect the matter further, Paul Hastings also invents a straw man to attack. Paul Hastings argues that its representation of the Debtor on matters opposed to Magten during bankruptcy proceedings cannot give rise to "interested" status. See Resp. Br. at 20- 21. However, Magten does not argue that Paul Hastings' representation of the Debtor during the bankruptcy rendered it interested. Magten contends that Paul Hastings should never have undertaken its representation in the first place because it came to the bankruptcy with a tainted view of the Fraudulent Transfer. See In re Git-N-Go, 321 B.R. at 61; Envirodyne, 150 B.R. at 1019.

### III. Paul Hastings Should Have Been Disqualified Because it Held an Actual Conflict of Interest Under Precedent in This Circuit

In contravention of well-settled law in the Third Circuit, Paul Hastings argues that it held no actual conflict because (1) the Fraudulent Transfer benefited the Estate; (2) the Fraudulent Transfer occurred before the bankruptcy filing; and (3) Clark Fork is merely an extension of Northwestern. As Magten argued in its opening brief, the law in this Circuit provides that a disqualifying conflict arises where counsel would be tempted to show impermissible favoritism, particularly amongst creditors of interrelated entities. Opening Br. at 24-25, citing In re BH & P, Inc., 949 F.2d 1300, 1315 (3d Cir. 1991); In re Pillowtex, Inc., 304 F.3d 246, 251 (3d Cir. 2002); see also In re Git-N-Go, 321 B.R. at 58-60 ("an actual conflict exists if there is an active competition between two interests, in which one can only be served at the expense of the other[;]" because of competing

interests resulting from proposed Debtor's counsel's pre-petition representation of both parent and subsidiary in transactions likely to be challenged in the bankruptcy, retention application denied). In its opening brief, Magten demonstrated that Paul Hastings placed itself in a position where it was likely to favor the interests of Northwestern and certain of its creditors over the QUIPS Holders and Clark Fork's creditors, especially given Paul Hastings' role as the architect of the Fraudulent Transfer. Under Third Circuit precedent, Paul Hastings' proclivity to disfavor certain of the estate's creditors, including Magten and creditors of Clark Fork, clearly presented an actual, not a potential, conflict of interest. See In re BH&P, 949 F.2d at 1315; Pillowtex 304 F.3d at 251.

Seeking to deflect yet again, Paul Hastings conjures up a requirement that Magten prove the ultimate merits of its fraudulent transfer claims in order to demonstrate actual injury for purposes of conflict analysis, Resp. Br. at 26, just as the Bankruptcy Court did, A596. For purposes of the conflict analysis, "actual injury" only requires Magten show a likelihood that Paul Hastings would treat the class of creditors of which Magten is a member differently than the other creditors of Northwestern. See In re BH&P, 949 F.2d at 1315. Magten has done this, with no response from Paul Hastings. Compare Opening Br. 24-25 with Resp. Br. at 26 (trying to hold Magten to "nonexistent" standard).

Paul Hastings' reliance upon In re AroChem Corp., 176 F.3d 610 (2d Cir. 1999) does not help its cause. In Arochem, the Trustee sought to employ a law firm as special counsel for the limited purpose of prosecuting a single action. The firm had previously represented one of the debtor's creditors, but on matters unrelated to the limited scope of his proposed engagement as special counsel. Id. at 624. Because the firm had already terminated its representation of the creditor, and its previous representation of that

creditor had no connection to the limited scope of its role as special counsel, the Second Circuit upheld the Trustee's choice of counsel.

Here, Paul Hastings sought retention as the Debtor's general bankruptcy counsel, with a scope of representation touching upon all matters having to do with the Debtor's estate. A375-429. Throughout the bankruptcy proceedings, Paul Hastings handled matters directly related to the fraudulent transfer of 66% percent of the Estate's assets. See Opening Br. at 9-10. Hardly peripheral, these matters represented "the heart of this case."[6]

Next, Paul Hastings' contention that Debtor's counsel's pre-petition activities are irrelevant to the conflict analysis is completely belied by case law, which Paul Hastings has failed to distinguish in any meaningful way. See In re Git-N-Go, 321 B.R. at 61 ("Conner & Winters already formed a belief prepetition, which it has carried into its postpetition representations."). Just as a law firm's pre-petition conduct can render it a creditor and disqualify it from serving as Debtor's counsel, see Resp. Br. at 16, counsel's pre-petition representation of the Debtor and related entities in transactions likely to be challenged in the bankruptcy case also affects its interest in the proceedings. See In re Git-N-Go, 321 B.R. at 61. The "actuality" of a conflict of interest is the possibility of favoritism between interrelated corporate debtors. BH & P, 949 F.2d at 1315 (adopting language of district court). While such a possibility exists <u>during</u> the bankruptcy proceedings, it arises from the law firm's pre-petition activities.

---

[6] Paul Hastings contends that this statement was only made after the conclusion of the Bankruptcy proceedings. However, this statement was made by lead counsel to the Creditor's Committee, in reference to the actions he took during the first week of the Bankruptcy. Moreover, it was candidly made as the Creditor's Committee Counsel sought compensation for its own work.

Lastly, the fact that Clark Fork is a subsidiary of Northwestern has little if any bearing upon the conflict of interest analysis. Clark Fork was a separate entity with separate fiduciary duties running to separate groups of creditors. Paul Hastings cites no authority for the proposition that no conflict of interest can arise in bankruptcy from the representation of two interrelated corporations. Indeed, Paul Hastings fails to address head on Magten's authority which clearly holds this to be the case. In re Git-N-Go, 321 B.R. at 59-62; Envirodyne 150 B.R. at 1019-20.

IV.  **Paul Hastings Should Have Been Disqualified For Its Disclosure Failures**

The Bankruptcy Rules mandate that an attorney seeking employment by the estate "must disclose all of the person's connections with the debtor, creditors, and any other party in interest." Fed. R. Bankr. P. 2014(a). This rule "leaves an attorney with no discretion to choose what connections are relevant or trivial §327(a) analysis and should or should not be disclosed. No matter how trivial a connection appears to the professional seeking employment, it must be disclosed." Envirodyne, 150 B.R. at 1021. Far from considering its representation of Clark Fork trivial to its representation of the Debtor, Paul Hastings claims to have "thoroughly vetted the dual representation" with the U.S. Trustee at the outset of the Bankruptcy Case, (A594). Even so, Paul Hastings still has not explained why it chose to hide that fact from the Bankruptcy Court and the estate's creditors in its employment application.

Paul Hastings contends that Magten "mischaracterizes" its secret disclosure to the United States Trustee as evidence that Paul Hastings was concerned about its conflict of interest. Def. Br. at 24. Instead, Paul Hastings claims that its completely private

disclosure to the U.S. Trustee was "simply part of the U.S. Trustee's efforts to learn about Northwestern." Def. Br. at 24. This is an argument that hardly merits scrutiny.

Paul Hastings claims that its secret discussion of its dual representation with the U.S. Trustee is inconsistent with the conclusion that it deliberately withheld information from the creditors. Def. Br. at 9. The Third Circuit has addressed this precise issue, holding that where counsel discusses a specific situation involving a potential for conflict with the U.S. Trustee, counsel <u>must</u> disclose that situation to the Court and to the estate's creditors. See <u>In re BH&P</u>, 949 F.2d at 1303-4, 1317-18. Paul Hastings offers no argument why <u>In re BH&P</u> does not apply. Instead, it simply ignores it.

Unlike the counsel seeking employment in BH&P, Paul Hastings made no disclosure of its actual discussions with the U.S. Trustee. See <u>Id.</u> at 1304, n.6. While blithely contending that *Magten* mischaracterizes their substance, Paul Hastings only chooses to use the U.S. Trustee's words to describe those conversations and studiously avoids all other mention of their substance. Def. Br. At 24. Like the Bankruptcy Court, Paul Hastings offers no explanation for how an unspecified secret conversation about a conflict, which Paul Hastings took multiple other steps to conceal, can possibly serve as evidence of "a lack of intent to conceal." (A595).

V. **Paul Hastings' Intentional Nine Month Concealment Is Not A Mitigating Circumstance**

As a final hedge, Paul Hastings claims that the deliberate concealment of its pre-petition role for more than nine months into the Bankruptcy Case qualifies as a mitigating circumstance because "the Debtor [would have been forced] to replace its primary bankruptcy counsel in the middle of the confirmation process." Resp. Br. 27-28. Such a ruling would set a dangerous precedent, giving future applicants incentive to withhold

information from retention disclosures, hoping the truth will not be discovered until too much time has passed. "Certainly, early disqualification would have been less painful than the denial of compensation and the disgorgement of fees which the Court must now enforce." In re Granite Sheet Metal Works, Inc., 159 B.R. 840, 849 (Bankr. S.D. Ill. 1993)(disqualifying Debtor's counsel and disgorging its fees after discovering that counsel had failed to disclose its simultaneous pre-petition representation of the Debtor and a corporate insider).

    This is a circumstance entirely of Paul Hastings' own making, see supra at 3-5, and for which Paul Hastings has never taken any responsibility or provided any explanation. Expediency at the risk of bad law is hardly called for.

## **CONCLUSION**

For all of the foregoing reasons, as well as those expressed in Magten's Opening Brief, appellant Magten Asset Management Corporation respectfully requests that this Court reverse the Bankruptcy Court's August 19, 2004 Order.

| | |
|---|---|
| SMITH, KATZENSTEIN<br>& FURLOW LLP<br><br>_____<br>David Jenkins (I.D. No. 932)<br>Kathleen M. Miller (I.D. No. 2898)<br>800 Delaware Avenue [19801]<br>Post Office Box 410<br>Wilmington, DE 19899-0410<br>Phone: (302) 652-8400<br>Fax:  (302) 652-8405 | STORCH AMINI & MUNVES PC<br><br>*of counsel*<br><br>Bijan Amini, Esq.<br>Avery Samet, Esq.<br>2 Grand Central Tower<br>New York, New York 10017<br>Phone: (212) 490-4100<br>Fax:    (212) 490-4208 |

August 15, 2005

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2005, a copy of the foregoing Reply Brief on Appeal of Magten Asset Management Corp. was served on the following parties by first class mail :

Scott D. Cousins, Esq.
Monica Leigh Loftin, Esq.
William E. Chipman, Jr., Esq.
Greenberg Traurig, LLP
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801

Neil B. Glassman, Esq.
Charlene D. Davis, Esq.
Eric M. Sutty, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

Robert J. Dehney, Esq.
Curtis S. Miller, Esq.
Morris Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Alan W. Kornberg, Esq.
Margaret A. Phillips, Esq.
Ephraim I. Diamond, Esquire
Paul Weiss Rifking Wharton & Garrison
1285 Avenue of the Americas
New York , NY 10019

Dennis E. Glazer, Esquire
D. Scott Tucker, Esquire
Catherine Lifeso, Esquire
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Jesse H. Austin, III
Karol K. Denniston
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, Suite 2400
Atlanta, GA 30308

Mark Kenney, Esq.
844 King Street
Suite 2313, Lockbox 35
Wilmington, DE 19801-3519

/s/ Kathleen M. Miller
Kathleen M. Miller