IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                    :
                                          : Chapter 11
NORTHWESTERN CORPORATION,                 :
                                          : Case No. 03-12872 (CGC)
        Debtor                            :
                                          :
------------------------------------------
                                          :
MAGTEN ASSET MANAGEMENT CORP.,            :
                                          :
        Appellant,                        :
                                          :
    v.                                    : Civil Action No. 04-1279-JJF
                                          :
PAUL HASTINGS JANOFSKY & WALKER           :
LLP,                                      :
                                          :
        Appellee.                         :

David A. Jenkins, Esquire and Kathleen M. Miller, Esquire, of
SMITH KATZENSTEIN & FURLOW LLP, Wilmington, Delaware.
Of Counsel: Bijan Amini, Esquire, Lita Beth Wright, Esquire and
Avery Samet, Esquire of STORCH AMINI & MUNVES P.C., New York, New
York.
Attorneys for Appellant.


Robert J. Dehney, Esquire and Curtis S. Miller, Esquire, of
MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware.
Of Counsel: Dennis E. Glazer, Esquire, D. Scott Tucker, Esquire,
and Catherine Lifeso, Esquire of DAVIS POLK & WARDWELL, New York,
New York.
Attorneys for Appellee.

<u>**MEMORANDUM OPINION**</u>

July 17, 2006
Wilmington, Delaware

Farnan, District Judge

    Presently before the Court is an appeal by Magten Asset Management Corporation ("Magten") from the July 23, 2004 Memorandum Decision and Order issued by the United States Bankruptcy Court for the District of Delaware, denying Appellant's Motion to Disqualify Debtor's Counsel, Appellee Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings"). For the reasons set forth below, the Court will affirm the Bankruptcy Court's Memorandum Decision and Order.

## I. PARTIES' CONTENTIONS

    By this appeal, Magten first contends that the Bankruptcy Court erred in holding that Magten did not have standing to challenge the Debtor's retention of Paul Hastings as counsel. According to Magten, the relevant standard for determining standing to challenge retention in a bankruptcy proceeding is whether the party is a "party in interest," which in turn, is determined by whether the party has a "sufficient stake" in the outcome of the proceeding. Magten contends that it is a party in interest with a sufficient stake in the litigation because it has alleged an injury in fact in the form of an "unfair[] plan [of reorganization] . . . which binds [it] contractually and which directly impacts [its] financial interests, unfairness which is traceable to conflicts of interest . . . ." (D.I. 21 at 21.)

1

Magten further contends that the Bankruptcy Court erred in failing to find that Paul Hastings was not disinterested within the meaning of 11 U.S.C. § 327(a) and § 101(14). In Magten's view, Paul Hastings' prior representation of the Debtor and its subsidiary Clark Fork in an allegedly fraudulent asset transfer transaction prevented it from approaching the bankruptcy proceedings in an unbiased manner. Magten argues that Paul Hastings' aim in the bankruptcy proceedings was to ensure that challenges to the transaction failed "so as to protect the transaction it had structured, as well as to reduce its own liability and to protect its own handiwork." (D.I. 21 at 24.)

Magten next contends that the Bankruptcy Court erred in finding that Paul Hastings did not have an actual conflict of interest in the bankruptcy proceeding. It claims that because Paul Hastings was in a position where it was <u>likely</u> that it would favor one creditor over another, it should have been disqualified from representing Northwestern. According to Magten, the mere possibility that Paul Hastings' past representation of the Debtor and its subsidiary would influence its representation of the Debtor in the Chapter 11 proceeding was sufficient to constitute an actual conflict of interest.

Finally, Magten maintains that the Bankruptcy Court abused its discretion by refusing to disqualify Paul Hastings based on its inadequate disclosures at the outset of its employment application. According to Magten, the burden is on the entity seeking employment to come forward with a full and complete disclosure of all of its connections with the debtor, creditor, or any other known interested party. Magten contends that Paul Hastings flaunted the process with its initial lack of candor and subsequent "secret" discussions with the United States Trustee, and the Bankruptcy Court's refusal to disqualify Paul Hastings undermines the purposes of the Bankruptcy Code's disclosure requirements.

In response, Paul Hastings contends that Magten has no standing because, as the Bankruptcy Court held, Magten did not acquire its interest in Northwestern until months after the transaction in question. Furthermore, Paul Hastings contends that its only role has been as a professional representative of its client's interests. According to Paul Hastings, Magten's disinterestedness claim is based on Paul Hastings' opposition to Magten's efforts to defeat Northwestern's proposed plan of reorganization, and thus, Paul Hastings' actions were typical of any law firm representing a debtor and not indicative of disinterestedness.

3

As to actual conflict of interest, Paul Hastings responds that the relevant question is not whether it holds an interest adverse to the Clark Fork estate but whether it represents an interest adverse to the Northwestern estate, which it claims it clearly does not. Paul Hastings further points out that it does not currently represent Clark Fork, and thus, it cannot hold an interest adverse to the estate at the present time. In any event, Paul Hastings argues, there was no conflict of interest because Clark Fork is a wholly owned subsidiary of Northwestern and has never asserted a claim against Northwestern concerning the transaction. Finally, Paul Hastings contends that the Bankruptcy Court acted within its discretion in finding that Paul Hastings did not intentionally mislead the Bankruptcy Court and in refusing to disqualify the firm for its initial failure to make certain disclosures.

## II.  STANDARD OF REVIEW

The Court has jurisdiction to hear appeals from the Bankruptcy Court pursuant to 28 U.S.C. §158(a). The Court reviews the Bankruptcy Court's findings of fact under a "clearly erroneous" standard, and reviews its legal conclusions de novo. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999). In reviewing mixed questions of law

4

and fact, the Court accepts the Bankruptcy Court's findings of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (quoting Universal Mineral, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a de novo basis in the first instance. Baroda Hiss Inv., Inc. v. Telegroup Inc., 281 F.3d 133, 136 (3d Cir. 2002).

In reviewing decisions related to the retention of counsel in particular, the Court applies the abuse of discretion standard to the Bankruptcy Court's conclusion that a conflict of interest is "actual" or "potential." In re B H & P, 949 F.2d 1300, 1316-17 (3d Cir. 1991). Similarly, the Bankruptcy Court's decision to disqualify or not to disqualify counsel for inadequate disclosure is also reviewed for abuse of discretion. In re Best Craft Gen. Contractor and Design Cabinet, Inc., 239 B.R. 462, 470 (Bankr. E.D.N.Y. 1999). An abuse of discretion occurs when the court bases its opinion on a clearly erroneous finding of fact, legal conclusion or improper application of law to fact. In re

5

Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 180 (3d Cir. 2002).

## III.  DISCUSSION

After reviewing the decision of the Bankruptcy Court in light of the applicable standard of review, the Court concludes that the Bankruptcy Court correctly held that Paul Hastings was disinterested and that it did not have an actual conflict of interest within the meaning of 11 U.S.C. §327(a) and §101(14).[1] The Court further concludes that the Bankruptcy Court acted within its discretion in declining to disqualify Paul Hastings from acting as Debtor's counsel.

In contending that Paul Hastings was not disinterested, Magten relies on In re Git-N-Go, 321 B.R. 54 (Bankr. N.D. Okla. 2004).  In Git-N-Go, the bankruptcy court disqualified counsel concluding that the counsel could not "provide the objective and independent advice regarding the validity or propriety of the[]

---

[1] As a threshold matter, the Court disagrees with Magten's characterization of the Bankruptcy Court's holding on the issue of standing.  The Bankruptcy Court did not hold that Magten did not have standing to challenge Paul Hastings' retention, limiting itself to the observation that "[Magten's] relationship to the transaction [at issue] for the purposes of asserting a disqualification motion is tenuous at best."  (D.I. 23 at A596.) Because the Court concludes that the Bankruptcy Court acted within its discretion in denying Magten's motion, irrespective of whether Magten has standing, the Court will affirm the Bankruptcy Court's decision without ruling on the issue of standing.

6

transactions [at issue] as is required for the Debtor's performance of its fiduciary obligations," because the law firm had "counseled some of the parties in the very transactions that deserve[d] examination . . ." Id. at 59. However, Magten ignores the crux of the Git-N-Go court's opinion, which is that "[t]he Debtor's relationship with [another party represented by the law firm] permeate[d] almost every aspect of [the] case." Id. at 61. In this regard, the court found that the law firm had such prominent conflicting loyalties, with so many potential problems in the ensuing litigation, that disqualification was warranted. In this case, the Court concludes that the Bankruptcy Court correctly determined that the interrelationship between Clark Fork, Northwestern and Paul Hastings was not so prevalent or problematic as to warrant disqualification. Accordingly, the Court is not persuaded that the rationale of the Git-N-Go decision applies here.

    To the extent that Magten attempts to strengthen its argument on the issue of disinterestedness by painting the Clark Fork transaction as a "fraudulent" scheme, the Court is not persuaded by Magten's argument. The mere fact that Magten has challenged the transaction does not strip Paul Hastings of its disinterested status. Stated another way, the Court cannot conclude that Paul Hastings was not disinterested simply because

7

Magten filed a law suit asserting that a prior transaction was "fraudulent." Although Magten insists that Paul Hastings is trying to "protect its handiwork," Magten's assertion is not supported by the record. In the Court's view, Paul Hastings has consistently represented Northwestern in a professional capacity, and the Court agrees with the Bankruptcy Court that Paul Hastings does not have a "personal interest[]" adverse to the estate or any of the estate's creditors sufficient to merit disqualification. In re B H & P Inc., 949 F.2d at 1310.

The Court further agrees with the Bankruptcy Court that Paul Hastings did not have an "actual conflict of interest" mandating disqualification under §327. In contending otherwise, Magten argues that an actual conflict of interest mandating disqualification is evidenced by "the possibility" that "counsel would be tempted to show favoritism," citing the Third Circuit's decision in In re B H & P. (D.I. 21 at 24). In the Court's view, however, Magten mischaracterizes the holding in B H & P. Contrary to Magten's assertion, the B H& P court did not hold that the possibility that counsel might favor one estate or creditor over another automatically creates an actual conflict of interest requiring disqualification. Instead, the Court held that the "denomination of a conflict as 'potential' or 'actual'

8

and the decision concerning whether to disqualify a professional based upon that determination in situations not yet rising to the level of an actual conflict are matters committed to the bankruptcy court's sound exercise of discretion." Id. at 1316-17. In other words, a bankruptcy court may, in its discretion, consider a potential conflict of interest to be disqualifying for purposes of § 327; however a potential conflict is not per se disqualifying. See also In re Marvel Entertainment Group, 140 F.3d 463, 476 (3d Cir. 1998).

Applying B H & P to this case, the Court concludes that the Bankruptcy Court did not abuse its discretion in failing to find an actual conflict of interest. The Bankruptcy Court based its conclusion on the fact that neither of the parties involved in the transaction in question have complained about Paul Hastings' representation, that Magten was not a creditor of either party at the time the transaction took place, and that Paul Hastings has disclosed its involvement in the transaction to the satisfaction of the United States Trustee. (D.I. 23 at 595-96.) Though it was later revealed that, despite earlier assertions to the contrary, Clark Fork did not have a board of directors that could have approved the transaction, the Bankruptcy Court held that this did not merit reconsideration of the Motion to Disqualify. (D.I. 23 at 654.) In the Court's view, the Bankruptcy Court's

9

decision was "factually substantiated upon the evidentiary record." In re Global Marine, Inc., 108 B.R. 998, 1002 (Bankr. S.D. Tex. 1987). Accordingly, the Court cannot conclude that the Bankruptcy Court abused its discretion in finding that Paul Hastings did not have an actual conflict of interest.

As for Magten's contention that the Bankruptcy Court erred in failing to disqualify Paul Hastings for its lack of candor in the employment application, the Court likewise concludes that the Bankruptcy Court did not abuse its discretion. As the Bankruptcy Court acknowledged, its discretion in determining whether to disqualify counsel for inadequate disclosure is broad. In re Best Craft Gen. Contractor and Design Cabinet, Inc., 239 B.R. 462, 470 (Bankr. E.D.N.Y. 1999). "A bankruptcy court may excuse the original failure to disclose" because "complete disclosure is for the Court's benefit so that it can scrutinize any adverse interests of the attorney." In re CGC Inv. Corp., 175 B.R. 52, 54 (Bankr. 9th Cir. 1994). In ruling on the Motion to Disqualify and the subsequent Motion for Reconsideration, the Bankruptcy Court, with all the facts before it, concluded that no conflict of interest existed. The Bankruptcy Court also concluded that Paul Hastings' communications with the United States Trustee were in the spirit of cooperation rather than secrecy. Magten

emphasizes that Paul Hastings' discussions with the United States Trustee were "secret," (D.I. 21 at 27), but the Bankruptcy Court heard the Trustee's testimony and was satisfied as to Paul Hastings' candor.  In the Court's view, the Bankruptcy Court's decision is substantiated by the record, and therefore, the Court cannot conclude that the Bankruptcy Court abused its discretion in declining to disqualify Paul Hastings on the basis of lack of candor in its initial disclosures.

**IV. CONCLUSION**

For the reasons discussed, the Court will affirm the Bankruptcy Court's July 23, 2004 Memorandum Decision and Order

An appropriate order will be entered.